**TA LEGAL GROUP PLLC**
Taimur Alamgir, Esq.
Matthew Daidola, Esq.
205 E. Main Street, STE 3-2
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com
matthew@talegalgroup.com
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUMMITBRIDGE WEALTH MANAGEMENT LLC and ARNA PREMIER PROPERTY SOLUTIONS,<br><br>　　　　　　　Plaintiff,<br><br>　- against -<br><br>LIGHTHOUSE ESTATES LLC, CEEKOU LLC, STARPOINT HOLDINGS LLC, AVS ESTATES LLC, BLUESTAR CAPITAL LLC, RED DOOR LEGACY LLC, TAIHE ESTATES LLC, REDWOODS REAL ESTATE LLC, HIDDEN GEMS VENTURES, HIDDEN GEMS TC SERVICES LLC, MARCIA DONALDSON, VAN LAURENCE BARKER, ARIEL MERMELSHTAYN BARKER, SIYUAN ZHENG, JOSHUA JAMES KENNEDY, UNIVERSITY TITLE COMPANY, MEMBERS TITLE, FIRST CLASS TITLE AGENCY, TRUE TITLE ESCROW AGENT, PERPETUAL TITLE OH, LEGACY TITLE AND ESCROW, and ELITE TITLE,<br><br>　　　　　　　Defendants. | **Case No.:**<br><br>**VERIFIED COMPLAINT** |

1

Plaintiff, Summitbridge Wealth Management LLC and Arna Premier Property Solutions, ("Plaintiffs"), by and through their undersigned counsel of record, TA Legal Group PLLC hereby files this Complaint ("Complaint") against Defendants Lighthouse Estates LLC, Ceekou LLC, Starpoint Holdings LLC, AVS Estates LLC, Bluestar Capital LLC, Red Door Legacy LLC, Taihe Estates LLC, Redwoods Real Estate LLC, Van Laurence Barker, Ariel Mermelshtayn Barker, Siyuan Zheng, Joshua James Kennedy (collectively, the "Lighthouse Defendants"), Hidden Gems Ventures, Hidden Gems TC Services LLC, Marcia Donaldson (collectively, "Transaction Coordinator Defendants"), University Title Company, Members Title, First Class Title Agency, True Title Escrow Agent, Perpetual Title OH, Legacy Title and Escrow, and Elite Title (collectively, "Title Company Defendants"), and allege as follows:

## INTRODUCTION

1. This action arises from a coordinated scheme to fraudulently induce Plaintiffs and other private money lenders to fund real estate transactions through material misrepresentations, concealment, and the misuse of investor funds in a manner consistent with a **Ponzi-style scheme**.

2. The Lighthouse Defendants, led by Defendant Van Laurence Barker, solicited funds purportedly for specific real estate acquisitions and renovations but instead diverted incoming lender funds to repay other investors, cover operating shortfalls, and conceal a failing business model—causing Plaintiffs substantial losses.

**3. There is imminent risk that assets of Plaintiffs - over 1 million dollars - will be dissipated or fraudulently conveyed by Defendants, absent immediate judicial action.**

4. This Complaint seeks, inter alia, **Order to Show Cause and Temporary Restraining Order** to prevent further dissipation of assets and spoliation of evidence.

5.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 18 U.S.C. § 1964(c) (Civil RICO) and 28 U.S.C. §§ 1331 and 1367. has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1337.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conducted business with New York–based Plaintiffs, directed fraudulent communications into this District, and caused harm herein.

## PARTIES

### Plaintiff

8. Plaintiff Summitbridge Wealth Management LLC is a New York limited liability company with its principal place of business at 338 Jericho Turnpike, Suite 106, Syosset, NY 11791.

9. Plaintiff Arna Premier Property Solutions is a New York entity with its principal place of business at 329 S. Oyster Bay Road, Suite 202, Plainview, NY 11803.

10. Plaintiffs both conveyed substantial funds to Defendants, which are at immediate risk of misappropriation absent prompt judicial action.

### Defendants

11. Defendant Lighthouse Estates LLC ("Lighthouse") is a limited liability company that served as the nominal borrower and/or titleholder for numerous subject properties financed with Plaintiffs' funds. Lighthouse operated as a central hub within the fraudulent enterprise and was controlled and managed by individual Defendants Van Laurence Barker, Ariel Mermelshtayn Barker, and Joshua James Kennedy.

12. Defendant Ceekou LLC ("Ceekou") is a limited liability company used to originate, route, and control transactions within the scheme. Ceekou is owned and/or controlled by Defendants Siyuan Zheng and Lighthouse Estates LLC and functioned as an intermediary entity

3

for property acquisitions and fund transfers.

13. Defendant Starpoint Holdings LLC ("Starpoint") is a limited liability company controlled by Defendants Van Laurence Barker and Joshua James Kennedy, with ownership interests held through Ceekou LLC. Starpoint served as an operational and financial vehicle within the enterprise, including the pooling and redeployment of investor capital.

14. Defendant AVS Estates LLC ("AVS") is a limited liability company controlled by Defendants Van Laurence Barker, Ariel Mermelshtayn Barker, and Siyuan Zheng. AVS held title to and/or borrowed against properties funded by Plaintiffs and was used to conceal the commingling and misuse of lender funds.

15. Defendant Bluestar Capital LLC ("Bluestar") is a limited liability company used as a reserve and capital-backing entity for the enterprise. Bluestar is owned in substantial part by Brian Barker and Starpoint Holdings LLC and functioned as a secondary capital account to stabilize cash shortfalls caused by ongoing misappropriation of funds.

16. Defendant Red Door Legacy LLC ("Red Door") is a limited liability company controlled by Defendants Ariel Mermelshtayn Barker, Van Laurence Barker, and Joshua James Kennedy. Red Door held interests in properties financed with Plaintiffs' funds and operated as an additional shell entity within the enterprise structure.

17. Defendant Taihe Estates LLC ("Taihe") is a limited liability company that served as borrower and/or titleholder for certain transactions funded by Plaintiffs. Taihe was used to further disperse lender funds and obscure true ownership and control of the financed properties.

18. Defendant Redwoods Real Estate LLC ("Redwoods") is a limited liability company that held title to and borrowed against properties funded by Plaintiffs, including transactions involving title and escrow Defendants named herein. Redwoods functioned as part of the layered entity structure used to misrepresent lien status and property ownership.

19. Defendant Hidden Gems Ventures LLC ("Hidden Gems Ventures") is a Florida-based limited liability company controlled by Defendant Marcia Donaldson. Hidden Gems Ventures operated as a management, solicitation, and marketing arm of the enterprise and was used to induce Plaintiffs and other private lenders to fund transactions through false and misleading representations.

20. Defendant Hidden Gems TC Services LLC ("Hidden Gems TC") is a Florida-based limited liability company controlled by Defendant Marcia Donaldson and used as a transactional coordination and fund-routing entity. Hidden Gems TC participated in directing lender funds and communications related to the fraudulent scheme.

21. Defendant Marcia Donaldson is an individual who acted as a principal, agent, and control person in soliciting lender funds and transactional agent for the transfers in question.

22. Defendant Van Laurence Barker ("V. Barker") is an individual who exercised ownership and operational control over Lighthouse Estates LLC, Starpoint Holdings LLC, AVS Estates LLC, and related entities. Barker acted as a principal of the enterprise and directed the acquisition, financing, and disposition of properties funded with Plaintiffs' money.

23. Defendant Ariel Mermelshtayn Barker ("A. Barker") is an individual who held ownership interests and control positions in Lighthouse Estates LLC, AVS Estates LLC, and Red Door Legacy LLC, and who participated in enterprise decision-making related to property acquisitions and lender communications.

24. Defendant Siyuan Zheng ("Zheng") is an individual who owned and controlled Ceekou LLC and AVS Estates LLC and participated in the management and execution of transactions funded by Plaintiffs, including the routing and commingling of investor funds.

25. Defendant Joshua James Kennedy ("Kennedy") is an individual who exercised ownership and control over Lighthouse Estates LLC, Starpoint Holdings LLC, and Red Door

Legacy LLC and participated in the enterprise's acquisition, financing, and misrepresentation of subject properties.

26.     Defendants University Title Company, Members Title, First Class Title Agency, True Title Escrow Agent, Perpetual Title OH, Legacy Title and Escrow, and Elite Title (collectively, the "Title Defendants") are title and escrow companies that served as closing agents for one or more transactions at issue and, upon information and belief, facilitated the improper disbursement of lender funds, failed to ensure recording of liens, and/or processed transactions containing material irregularities.

## STATEMENT OF FACTS

27.     The Lighthouse Defendants, led by V. Barker, solicited Plaintiffs and other private lenders ("PMLs") to fund purported fix-and-flip real estate projects, promising first-position liens, regular updates, and repayment of principal with interest.

28.     The following funds and transactions by Plaintiffs were subject to Defendants' defrauding scheme, and consequently face imminent risk of misappropriation:

- From Summitbridge on 9/26/25 in the amount of $51,000 to Lighthouse Estates LLC through Legal Title and Escrow.

- From Summitbridge on 10/06/25 in the amount of $68,000 to Lighthouse Estates LLC through First Class.

- From Summitbridge on 10/13/25 in the amount of $70,000 to Lighthouse Estates LLC through Elite Title.

- From Summitbridge on 10/30/25 in the amount of $50,000 to Lighthouse Estates LLC through Members Title.

- From Summitbridge on 11/12/25 in the amount of $156,000 to Lighthouse Estates LLC through True Title.

- From Summitbridge on 11/27/25 in the amount of $55,000 to Lighthouse Estates LLC through True Title.
- From Summitbridge on 11/28/25 in the amount of $110,000 to Lighthouse Estates LLC through True Title.
- From Summitbridge on 11/28/25 in the amount of $84,000 to Lighthouse Estates LLC through True Title.
- From Summitbridge on 12/4/25 in the amount of $20,000 to CeeKou LLC through True Title.
- From Summitbridge on 12/4/25 in the amount of $14,000 to AVS Estates LLC through True Title.
- From Summitbridge on 12/16/25 in the amount of $50,000 to Lighthouse Estates LLC through First Class.
- From Summitbridge and Arna on 10/14/25 in the amount of $77,000 to Lighthouse Estates LLC through First Class.
- From Arna on 10/23/25 in the amount of $31,000 to Lighthouse Estates LLC through Perpetual Title OH.
- From Arna on 11/26/25 in the amount of $100,000 to Redwoods Real Estate LLC through True Title.
- From Arna on 11/27/25 in the amount of $55,000 to Lighthouse Estates LLC through University Title.
- From Arna on 12/6/25 in the amount of $43,000 to Taihe Estates LLC through True Title.
- From Arna on 12/11/25 in the amount of $95,000 to Lighthouse Estates LLC through Elite Title.

29. The total amount diverted from Summitbridge is $755,000 and the total amount diverted from Arna is $374,000. The total amount is $1,129,000.

30. The Lighthouse Defendants materially misrepresented and concealed facts from Plaintiffs, including:

- Failing to disclose that rehabilitation work had or never commenced;
- Requesting lenders to sign pre-mature releases of mortgage before repayment;
- Providing misleading or recycled photographs to falsely suggest progress;
- Concealing that properties were subject to municipal code violations and demolition orders;
- Failing to record liens without lender knowledge or consent.

31. As the Lighthouse Defendants' cash position deteriorated in 2025, the Transaction Coordinator Defendants, led by Defendant Marcia Donaldson, began promoting an additional "banking" product to Plaintiffs and other private money lenders as part of the same enterprise.

32. On or about August 27, 2025, Defendant Donaldson sent an email to the investor network with the subject line "A Secure, High Yield Banking Opportunity for Our Network," touting a so called partnership between Lighthouse Estates and "Peoples Bank," which she described as "the same bank that backs our Hard Money Lender, Kentucky Private Lending (KPL)." In that email, Donaldson encouraged recipients to "help… grow [Peoples Bank's] deposits and client base through our network."

33. In the August 27, 2025 email, Donaldson represented that deposits placed with Peoples Bank through the Lighthouse network would be (a) "not used in deals," (b) "100% available to their holders, just like a traditional savings or money market account," and (c) eligible for an "additional 0.2% per week (~10% annualized)" return—purportedly a "fantastic return for funds that stay fully liquid and secure."

8

34. Donaldson further stated that increasing deposits at Peoples Bank would "strengthen[] all of us," because "a stronger relationship with Peoples Bank means more stability for KPL and continued growth for Lighthouse Estates and our entire PML network," and urged recipients to refer "friends or family who may not want the risk of private money lending but still want their money working harder than it would in a typical bank."

35. These statements were materially misleading and omitted key facts. At the time Donaldson sent this email, the Lighthouse Defendants and Transaction Coordinator Defendants knew, or recklessly disregarded, that: (a) the Lighthouse enterprise was already insolvent or functionally insolvent; (b) incoming funds—whether characterized as "deposits," "private money loans," or otherwise—were being commingled and used to service prior obligations and operating shortfalls, not kept "outside" the deals; and (c) there was no legitimate, disclosed mechanism by which Peoples Bank would pay "0.2% per week (~10% annualized)" on fully liquid deposits without exposing those funds to lending or investment risk.

36. By marketing this "secure, high yield banking opportunity" through the same Lighthouse/Hidden Gems network and tying it expressly to "more stability for KPL and continued growth for Lighthouse Estates and our entire PML network," Donaldson and the other Transaction Coordinator Defendants used the wires to solicit additional capital under false pretenses and to expand the pool of victims beyond existing private money lenders.

37. The August 27, 2025 email and similar communications from Donaldson constitute predicate acts of wire fraud within the meaning of 18 U.S.C. § 1343 and are part of the pattern of racketeering activity alleged herein, because they (a) formed a material part of the overall scheme to obtain money from Plaintiffs and other investors by means of false and fraudulent pretenses, representations, and promises, and (b) were transmitted in interstate commerce via email in furtherance of that scheme.

38. The Lighthouse Defendants further concealed a unilateral shift in business strategy starting in late 2025—rolling lender principal into new deals or refinancing structures—without lender disclosure or approval, depriving Plaintiffs of informed consent.

39. Investor funds were commingled and misappropriated, with incoming funds used to pay prior investors rather than for the designated properties, a hallmark of a Ponzi scheme. *See* SEC v. Loewenson, 290 F.3d 80 (2d Cir. 2002).

40. The Transaction Coordinator Defendants served as transaction coordinators for each of the transactions listed hereinabove. In serving as transaction coordinators, Donaldson and Hidden Gems were negligent and failed to exercise due diligence or anything resembling a reasonable duty of care.

41. The Transaction Coordinator Defendants, through negligence, facilitated above Defendants' unlawful actions in violation of the RICO Act.

42. The Title Company Defendants similarly, through negligence, facilitated the Lighthouse unlawful activities.

43. On December 17, 2025, federal agents arrested Defendant Van Laurence Barker in connection with a nationwide federal investigation known as "Operation Relentless Justice," a coordinated national child-exploitation enforcement initiative led by the Department of Justice and the Federal Bureau of Investigation and involving all fifty-six FBI field offices across the United States. Defendant Barker was taken into federal custody that same day.

44. The following day, on or about December 18, 2025, the United States Department of Justice publicly announced the results of the operation and identified Defendant Barker as one of the individuals targeted, charged, and arrested in connection with the operation arising from alleged attempted online enticement of a minor and related child-exploitation conduct. Those charges were brought by the United States Attorney's Office for the Western District of Kentucky

and are captioned United States of America v. Barker, Case Nos. 3:25-mj-00076-RSE and 3:26-cr-00002-RGJ, currently pending before the United States District Court for the Western District of Kentucky.

45. Following his arrest, Barker was remanded into federal custody and remains confined pending further proceedings in United States v. Barker, Case No. 3:26-cr-00002-RGJ.

46. Barker's arrest, prosecution, and present incarceration on serious federal felony charges coincided with, and materially exacerbated, Defendants' sudden cessation of communications with Plaintiffs, the shutdown of enterprise-related websites and social media accounts, and the obstruction of access to financial records and transaction information. These events further evidence Defendants' consciousness of wrongdoing, the instability of the enterprise, and the imminent risk that assets entrusted to Defendants by Plaintiffs would be concealed, dissipated, or fraudulently transferred absent immediate judicial intervention.

47. Barker's status as a federally charged defendant arising from a nationwide law-enforcement operation underscores the gravity of his unlawful conduct and the ongoing risk he poses to at least 100 other PMLS including Plaintiffs, who entrusted him and his controlled entities with substantial sums of money.

48. In early January 2026, the Lighthouse Defendants abruptly deactivated social media accounts, suspended access to professional websites, ceased communications, and blocked access to internal records, evidencing consciousness of guilt and risk of asset dissipation.

49. Plaintiffs began reaching out in desperation to other Lighthouse PMLs to figure out whether their life savings were gone. A private Facebook chat group quickly formed, revealing that lender after lender had been left in the dark and abandoned, most notably by Defendant Marcia Donaldson, who had suddenly vanished from the very network she had helped build and promote. This was not an isolated misunderstanding; it was a pattern of silence in the

face of looming, catastrophic loss.

50. In a scramble to contain what had become widespread panic over massive, unrepaid principal, the potential shock to Midwestern housing markets, and the looming collapse of the hard money platform itself, Defendants did not offer transparency or a concrete repayment plan. Instead, they brought in non-party Maria Bock of BuenaVida Consulting to stage-manage a Zoom meeting on January 6, 2026, designed to placate furious PMLs and preserve "buy-in," rather than to candidly disclose just how dire the situation truly was.

51. In the days leading up to that meeting, Defendant Kennedy circulated a written statement that amounted to a stunning admission that Lighthouse had been operating on a Ponzi-like chassis. Kennedy acknowledged that:

> Our BRRR strategy became constrained when DSCR takeout financing slowed significantly and underwriting timelines expanded. Properties that were intended to refinance quickly remained unfinished or overleveraged longer than planned.
>
> In mid-2025, we attempted to solve this through institutional DSCR financing via People's Bank, introduced by KPL. While promising, the process was slow and underwriting intensive and it did not produce liquidity fast enough to meet short-term obligations.
>
> To bridge that gap, a temporary system evolved where KPL and PML loans were effectively recycled internally. Operating costs and debt service were all supported by retained capital being rolled forward into new transactions. That system only works when inflows remain uninterrupted.
>
> Once inflows slowed and leadership disruption occurred, the model became unsustainable.

52. Stripped of euphemisms, this "temporary system" was nothing more than using new lender money to plug old holes: recycling PML and KPL loans to pay operating expenses and prior debt, while properties languished unfinished and overleveraged, and while PMLs were fed reassurances instead of truth.

53. On January 6, 2026, the Lighthouse Defendants informed Plaintiffs and 100 other PMLs over a Zoom call that they would not honor personal guarantees or promissory notes requiring prompt return of funds to Plaintiffs.

54. Plaintiffs are currently unaware of the full scope of StarPoint's investments or whether loan proceeds were diverted into non-real-estate or out-of-country ventures; however,

the opaque multi-entity structure, inter-company transfers, and absence of transparent accounting give rise to serious concern that investor funds have been moved beyond the reach of domestic creditors.

55. Plaintiffs file this lawsuit and seek a TRO and immediate injunctive relief to prevent misappropriate and dissipation of the considerable assets expended herein.

56. Plaintiff retained TA Legal Group PLLC as counsel to represent Plaintiffs in this litigation and agreed to pay the firm a reasonable fee for its service. Plaintiffs expressly reserve the right to amend this Complaint as additional facts, parties, and causes of action are discovered.

## CLAIMS FOR RELIEF

### COUNT I
### CIVIL RICO (18 U.S.C. §§ 1962(c), 1964) AGAINST LIGHTHOUSE DEFENDANTS

57. The Lighthouse Defendants conducted and participated in an enterprise and/or cooperative legal entity affecting interstate commerce. The Lighthouse Defendants had a common purpose, with business relationships, existing sufficiently long enough to pursue the purpose of defrauding PMLs and Plaintiffs. United States v. Burden, 600 F.3d 204 (2d Cir. 2010).

58. The Lighthouse Defendants conducted and/or participated, directly and/or indirectly, in the conduct of an enterprise's affairs to a certain degree of control and direction. Dicicco v. Emigrant Bank (In re Dicicco), Nos. 1-22-42468-jmm, 1-23-01079-jmm, 2025 LX 321261 (Bankr. E.D.N.Y. Aug. 26, 2025).

59. The Lighthouse Defendants, in violation of 18 U.S.C. § 1961(1), executed repeated fraudulent communications, including but not limited to, mail fraud, wire fraud, bank fraud, obstruction of justice, and money laundering to induce investments, conceal misuse of funds, and lull lenders into inaction.

60. The Lighthouse Defendants' collective acts were related and open-ended continuity.

RJR Nabisco, Inc. v. European Cmty., 579 U.S. 325, 136 S. Ct. 2090 (2016).

61. Plaintiffs suffered concrete financial loss by reason and proximate cause of Lighthouse Defendants' RICO violations. *See* Yegiazaryan v. Smagin, 599 U.S. 533, 143 S. Ct. 1900 (2023).

## COUNT II
## FRAUD AGAINST THE LIGHTHOUSE DEFENDANTS

62. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

63. The Lighthouse Defendants knowingly made false statements and omissions of material fact, intending Plaintiffs' reliance.

64. Plaintiffs justifiably relied on the Lighthouse Defendants' representations and were damaged thereby. *See* Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996).

65. Plaintiffs' reliance was a substantial factor in causing actual harm and damages.

## COUNT III
## NEGLIGENCE AGAINST THE TRANSACTION COORDINATOR AND TITLE COMPANY DEFENDANTS

66. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein

67. The Transaction Coordinator and Title Defendants owed Plaintiffs a duty to exercise reasonable care in handling lender funds, recording liens, and providing accurate disclosures.

68. The Transaction Coordinator and Title Defendants breached that duty repeatedly.

69. Defendants' breach of duty was the proximate cause of Plaintiffs' losses.

14

## **INJUNCTIVE RELIEF**

70. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

71. Defendants' ongoing control over investor funds, loan proceeds, and real estate and non-real estate assets obtained through the Lighthouse enterprise presents an imminent risk of further dissipation and concealment of assets that should be available to satisfy judgments in favor of Plaintiffs and similarly situated PMLs. As Defendants themselves have admitted, for an extended period they "recycled" PML and KPL funds to pay operating costs and debt service, rolled capital forward into new transactions, and depended on uninterrupted inflows of new money to sustain an undisclosed, Ponzi-like structure.

72. Unless enjoined, Defendants are likely to: (a) transfer, encumber, or liquidate enterprise properties; (b) divert remaining cash or refinance proceeds to insiders and affiliated entities; (c) funnel funds through out-of-state or out-of-country accounts; and (d) destroy or alter books, records, and electronic data that would reveal the full extent of their racketeering activity. Such conduct would irreparably harm Plaintiffs by rendering any monetary judgment hollow and by frustrating meaningful tracing of funds.

73. Money damages alone are inadequate because: (a) the universe and location of assets subject to execution is presently unknown and deliberately obscured; (b) the enterprise used multiple entities, title companies, and lenders to move and recycle funds; and (c) once real property is transferred or encumbered in favor of new, allegedly bona fide parties, unwinding those transactions will be costly, uncertain, and in many cases impossible. Injunctive relief is therefore necessary to preserve the status quo and maintain the Court's ability to grant effective

final relief.

74. Injunctive relief is warranted based on (1) a likelihood of success on the merits, (2) irreparable harm, which will not be possible to subsequently remediated, (3) the harm that Plaintiffs face outweighs the harm to Defendants from granting the relief sought, and (4) the public interest in ensuring that the egregious unlawful conduct here can be addressed by the civil judicial system.

75. Plaintiffs seek immediate injunctive relief to:

- Freeze Defendants' assets;
- Enjoin further transfers of lender funds;
- Preserve documents and electronic records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a. temporary restraining order and preliminary injunction prohibiting Defendants, and all persons acting in concert with them, from directly or indirectly transferring, encumbering, dissipating, concealing, or otherwise disposing of:

- any real property acquired, held, or marketed by Lighthouse Estates LLC, Red Door Legacy, Redwoods Real Estate LLC, and other identified enterprise entities; and
- any proceeds, loan funds, or investor monies traceable to the PML loans described in this Complaint.

b. An order requiring Defendants to provide, within a short, fixed period (e.g., 10 business days), a sworn, itemized accounting of:

- all PML and KPL funds received since the start of the Lighthouse program;
- all bank, brokerage, and other financial accounts used to receive or disburse those funds; and
- all transfers over a specified threshold (e.g., $5,000) to insiders, affiliates, or foreign accounts.

c. The appointment of a limited-purpose receiver or special master, at least on an interim basis, to:

16

- take control of specified enterprise bank accounts;

- oversee collection of loan payments and rents from properties funded by PML and KPL capital; and

- review and preserve accounting, escrow, and closing records held by the Title Defendants and other financial intermediaries.

d. An order compelling Defendants and the Title Defendants to preserve and not alter, conceal, or destroy any documents or electronically stored information relating to:

- PML loans, KPL loans, and collateral properties;

- closings, disbursements, and lien recording; and

- communications with PMLs, KPL, and Peoples Bank concerning refinancing, DSCR loans, or "deposit" programs marketed to investors.

e. An order authorizing immediate, expedited discovery limited to identifying and securing enterprise assets, including subpoenas to banks, title companies, and known counterparties.

f. compensatory and treble damages under RICO.

g. Costs, attorneys' fees, and such other relief as the Court deems just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:      Huntington, NY
                January 9, 2026

                            **TA LEGAL GROUP PLLC**
                            *Attorneys for Plaintiffs*

By:    _____
                            Taimur Alamgir, Esq.
                            Matthew Daidola, Esq.
                            205 East Main Street, Suite 3-2
                            Huntington, NY 11743
                            Tel. (914) 552-2669
                            tim@talegalgroup.com

## VERIFICATION

SUMMITBRIDGE WEALTH MANAGEMENT LLC, hereby respectively depose and states as follows:

1. I am a duly authorized representative of Plaintiff SummitBridge Wealth Management LLC and I am authorized to make this Verification on their behalf.
2. Plaintiff is a named Plaintiff in this action.
3. I have read the foregoing Verified Complaint.
4. On behalf of SummitBridge Wealth Management LLC, I hereby affirm that the contents of the Verified Complaint are true to my knowledge, except as to those matters therein stated to be alleged on information and belief, which I believe to be true; based on information available to me.

Dated: Syosset, NY
January 9, 2026

**SUMMITBRIDGE WEALTH MANAGEMENT LLC**

By: _Rashmee Sinha_ (signature)

Print: RASHMEE SINHA

# VERIFICATION

ARNA PREMIER PROPERTY SOLUTIONS LLC, hereby respectively depose and states as follows:

1. I am a duly authorized representative of Plaintiff ARNA Premier Property Solutions LLC and I am authorized to make this Verification on their behalf.
2. Plaintiff is a named Plaintiff in this action.
3. I have read the foregoing Verified Complaint.
4. On behalf of ARNA Premier Property Solutions LLC, I hereby affirm that the contents of the Verified Complaint are true to my knowledge, except as to those matters therein stated to be alleged on information and belief, which I believe to be true; based on information available to me.

Dated: __Syosset__, NY
January 9, 2026

**ARNA PREMIER PROPERTY SOLUTIONS**

By: ___SINHA___

Print: Neelema Sinha