UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUMMITBRIDGE WEALTH MANAGEMENT LLC and ARNA PREMIER PROPERTY SOLUTIONS,<br><br>　　　　　　　Plaintiff,<br><br>　- against -<br><br>LIGHTHOUSE ESTATES LLC, CEEKOU LLC, STARPOINT HOLDINGS LLC, AVS ESTATES LLC, BLUESTAR CAPITAL LLC, RED DOOR LEGACY LLC, TAIHE ESTATES LLC, REDWOODS REAL ESTATE LLC, HIDDEN GEMS VENTURES, HIDDEN GEMS TC SERVICES LLC, MARCIA DONALDSON, VAN LAURENCE BARKER, ARIEL MERMELSHTAYN BARKER, SIYUAN ZHENG, JOSHUA JAMES KENNEDY, UNIVERSITY TITLE COMPANY, MEMBERS TITLE, FIRST CLASS TITLE AGENCY, TRUE TITLE ESCROW AGENT, PERPETUAL TITLE OH, LEGACY TITLE AND ESCROW, and ELITE TITLE,<br><br>　　　　　　　Defendants. | Case No.: 26-CV-0141 (JMA) (ST)<br><br>DECLARATION OF PERUMAL R. THIYAGARAJAN IN SUPPORT OF MOTION FOR TRO |

I, Perumal R. Thiyagajaran, declare pursuant to 28 U.S.C. § 1746:

　　　1.　　I am at least 18 years of age and competent to testify to the matters stated in this Declaration. This Declaration is offered by me voluntarily and without duress. I affirm that the statements I am making in this Declaration are true, accurate to the best of my knowledge, and that they are based on personal knowledge.

　　　2.　　I am an authorized representative of Plaintiff ARNA Premier Property Solutions LLC (together with SummitBridge Wealth Management LLC, "Plaintiffs"). I submit this declaration in support of Plaintiffs' Emergency Ex Parte Motion for Temporary Restraining Order.

1

The facts set forth herein are based on my personal knowledge, my review of Plaintiffs' financial and transactional records, and communications with numerous other private money lenders ("PMLs") who funded transactions involving Lighthouse Estates LLC and its affiliated entities.

3. Plaintiffs are each PMLs with business operations in Nassau County, NY. Between November 2024 and December 2025, Plaintiffs wired approximately $1,129,000 to Lighthouse Estates LLC and affiliated entities, including Ceekou LLC, AVS Estates LLC, Redwoods Real Estate LLC, Taihe Estates LLC, and others (collectively, the "Lighthouse Defendants"). The Lighthouse Defendants solicited these funds for what were represented as short-term, secured real estate rehabilitation and bridge loans. Each loan was marketed as protected by a first-position, promptly recorded lien on specific properties, supported by conservative loan-to-value ratios, and repaid within three to six months through resale or DSCR take-out financing.

4. In reality, many of the properties purportedly securing Plaintiffs' loans were never rehabilitated and, in several instances, remained in the same or worse condition months after funding. Plaintiffs later learned that liens were frequently not recorded, recorded belatedly, or rendered effectively worthless through undisclosed transfers, refinancings, or additional encumbrances. Plaintiffs further learned that loan proceeds were misappropriated or diverted without their knowledge or consent, that borrowers were materially overleveraged, and that the true financial condition of the enterprise and use of proceeds were affirmatively misrepresented and concealed.

5. During 2025, as payment delays and transactional irregularities became increasingly apparent, the Lighthouse Defendants continued to transmit reassuring "updates," including photographs and descriptions of supposed construction progress. Based on information now known, Plaintiffs believe these communications were misleading, stale, or unrelated to the actual collateral securing their loans. At the same time, Lighthouse repeatedly pressured Plaintiffs

and other PMLs to roll principal into new transactions or refinancing structures, while withholding critical information concerning the true condition of the properties, the status and priority of liens, and the enterprise's rapidly deteriorating financial position. (See Exhibits A, B, and C, each of which are true and accurate copies of communications between Plaintiffs and Lighthouse/associated individuals).

6. On December 17, 2025, Defendant Van Laurence Barker, the leader and controlling figure of the Lighthouse Defendants, was arrested by federal agents in connection with a nationwide child-exploitation investigation. Immediately following Barker's arrest, the Lighthouse Defendants effectively abandoned ordinary business operations. Social media accounts were deactivated, investor-facing websites went dark, and Plaintiffs' access to financial information and records was cut off. Communications from Plaintiffs and other lenders were ignored or met only with vague, non-responsive messages, heightening concern that assets and records were being concealed or dissipated. (Exhibit A).

7. In early January 2026, Defendant Joshua James Kennedy circulated a written statement to Plaintiffs and other lenders admitting that Lighthouse's purported BRRR strategy had devolved into a "temporary system" in which private money lender funds and loans from a hard-money lender, Kentucky Private Lending, were "effectively recycled internally," and that operating costs and debt service were paid by rolling retained capital forward into new transactions. Kennedy further acknowledged that this system depended on uninterrupted inflows and became "unsustainable" once new funding slowed and stopped. In substance, this was an admission that Lighthouse was operating a Ponzi-like structure, using new lender funds to satisfy existing obligations rather than applying those funds to the properties pledged as collateral. (Exhibit D, a true and accurate copy of Defendant Kennedy's statement).

3

8.   On January 6, 2026, Lighthouse Defendants hosted a Zoom call attended by Plaintiffs and approximately 130 other lenders. During that call, Defendants stated that they would not honor personal guarantees or promissory notes and made clear that they did not intend to repay PMLs in accordance with the originally promised terms. Defendants represented that the enterprise held approximately $51 million in assets against approximately $60 million in liabilities, reflecting a reported equity deficit of roughly $9 million. This disclosure, when combined with Kennedy's written admissions and Barker's arrest, confirmed that Plaintiffs' funds were in immediate jeopardy and that no viable plan existed to make lenders whole.

9.   In the days following Barker's arrest and the January 6 call, PMLs formed a private Facebook group to exchange documents and information. Through those communications, it became apparent that the Lighthouse enterprise repeatedly acquired properties without any genuine intent or financial capacity to complete rehabilitation, instead using those properties as pretexts to solicit additional PML funding and extract cash from investors.

10.   Settlement statements from multiple transactions reflect that loan proceeds were diverted at inception through undisclosed assignment fees, wholesaler fees, finder's fees, and payments to affiliated entities with no legitimate connection to rehabilitation costs or collateral value. In one instance, a fire-damaged property acquired for approximately $5,000 carried an assignment fee of approximately $50,000. In addition, transaction coordinator Marcia Donaldson appears to have paid herself twice on the same transactions, once through Hidden Gems TC Services LLC and again through Hidden Gems Ventures LLC, further draining funds that were supposed to be applied to property rehabilitation.

11.   This pattern of diversion, double dipping, and undisclosed insider payments, combined with Defendants' admissions and operational collapse, creates a grave and immediate

risk that any remaining assets will be sold, further encumbered, or transferred to insiders or third parties before Plaintiffs can obtain or enforce a judgment.

12. Plaintiffs' financial exposure is severe and ongoing. Plaintiffs funded Lighthouse loans using leveraged capital, including home equity lines of credit, and continue to incur substantial interest and carrying costs while receiving no payments, no reliable accounting, and no credible remediation plan. Each passing week deepens Plaintiffs' losses and increases the likelihood that their homes and businesses will be irreparably harmed..Since December 17, 2025, Defendants have shut down communications, blocked access to records, admitted to recycling lender funds in a Ponzi-like manner, and openly disavowed their repayment obligations. This conduct demonstrates an immediate and concrete risk of further asset dissipation and evidentiary spoliation. Without a TRO freezing assets, prohibiting transfers, preserving the status quo of real property, and requiring the preservation of records, Plaintiffs will suffer irreparable harm because the assets necessary to satisfy any judgment will likely disappear.

13. The relief requested is narrowly tailored to preserve the status quo. Plaintiffs seek only to restrain assets connected to the Lighthouse enterprise, prevent further concealment or dissipation, preserve documents and electronic records, and permit limited expedited discovery to identify and secure those assets. Given that the Lighthouse operation is effectively defunct and Defendants have admitted they cannot and will not perform as promised, the requested relief imposes minimal burden on Defendants while preventing catastrophic and irreparable loss to Plaintiffs and other victims.

I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the State of New York and the United States of America that the foregoing is true and correct.

Executed this 12th day of January, 2026
Syosset, New York.

_____
PERUMAL R. THIYAGAJARAN