

WWW.TALEGALGROUP.COM

**TAIMUR ALAMGIR, ESQ.**
DIRECT: (914) 552-2669
EMAIL: tim@talegalgroup.com

**MATTHEW J. DAIDOLA, ESQ.**
DIRECT: (631) 942-7399
EMAIL: matthew@talegalgroup.com

**TA LEGAL GROUP PLLC**
205 EAST MAIN STREET, SUITE 3-4
HUNTINGTON, NY 11743

April 13, 2026

**VIA ECF**
Hon. Joan M. Azrack
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re:   *SummitBridge Wealth Management LLC et al. v. Lighthouse Estates LLC, et al.*
      **E.D.N.Y. Case No. 26-CV-0141 (JMA) (ST)**

Your Honor:

My firm represents Plaintiffs in the above-captioned matter. We respectfully submit this consolidated response[1] in opposition to the pre-motion conference letters filed by Defendants Hidden Gems TC Services LLC ("HG TC"), Hidden Gems Ventures LLC ("HGV"), and Marcia Donaldson (collectively, the " Defendants"), each of whom seeks leave to file motions to dismiss. For the reasons set forth below, Defendants' anticipated motions are meritless as a matter of law, and their requests to proceed with motion practice should be denied.

**Rule 9(b) Does Not Apply Because the Negligence and Fiduciary-Duty Claims Do Not Sound in Fraud**

Defendants' contention that Plaintiffs' claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) are misplaced. The Amended Complaint asserts claims for negligence/professional negligence (Count III) and breach of fiduciary duty (Count IV) against these Defendants. These claims are grounded in breaches of duties of care and loyalty, not the elements of common-law fraud. As such, Rule 8's more liberal pleading standard applies.

In *Gardner v. Major Auto. Cos.*, No. 11-CV-1664 (FB) (VMS), 2014 U.S. Dist. LEXIS 131747, at *5-6 (E.D.N.Y. Sep. 18, 2014), the court held that "[f]iduciary-duty claims not sounding in fraud are not subject to Rule 9(b)'s heightened pleading standard." The court noted that although a complaint may use terms often associated with fraud, such as "materially misleading," the core of the claim may still be for breach of fiduciary duty, which encompasses a broader range of conduct than common-law fraud. That is precisely the case here. While the Amended Complaint details a fraudulent scheme, the claims against the Transaction Coordinator Defendants are based

---

[1] We respectfully request that the Court permit this 6 page consolidated response to ECF No. 53, 54, and 56 in the interest of judicial economy.

on their negligent performance of professional services and breaches of loyalty, which are distinct torts.

HGV argues that Plaintiffs' claims must satisfy Rule 9(b) because they rest on alleged misstatements and are thus "premised on defendant's fraudulent conduct," citing *Wuhan Zhongxin Imp. & Exp. Co. v. Titan All. Imp. & Exp. Corp.*, 2020 WL 13851305, at *4 (E.D.N.Y. Nov. 3, 2020). This reliance is unavailing. The claims against the Transaction Coordinator Defendants are not simply repackaged fraud allegations. Instead, they are rooted in the duties these defendants assumed by their conduct—controlling the closing process, approving disbursements, and acting as the exclusive gatekeeper of information—and their subsequent breach of those duties through self-dealing, concealment, and a gross lack of professional care. These are breaches of duties of care and loyalty, not claims that depend on proving the elements of a fraudulent representation. Accordingly, as in *Gardner*, the claims do not sound in fraud and are not subject to Rule 9(b).

**Group Pleading Is Permissible Given the Interrelated Enterprise and Common Control Alleged**

Defendants each incorrectly argue that the Amended Complaint relies on impermissible "group pleading." However, courts in this Circuit routinely permit group pleading where, as here, the complaint alleges that defendants are closely affiliated entities acting collectively within a unified enterprise. In *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 405-06 (S.D.N.Y. 2010), the court permitted group pleading where the plaintiffs alleged that the defendants' operation "encompassed multiple interrelated entities that shared office space, management, names and goals.". The court explained that where a defendant is a "corporate insider, with direct involvement in day-to-day affairs," it is appropriate to attribute statements to them even if the exact source is unknown. Given the "tight weave of connections between the Fraud Defendants," the court found that "any misstatements that could reasonably be found to have issued from one, essentially issued from all." *Id.* at 406.

The same "tight weave of connections" is alleged here. The ultimate test is simply whether Defendants have received adequate notice of the claims against them. *See Vantone Grp. LLC v. Yangpu NGT Indus. Co.*, No. 13CV7639-LTS-MHD, 2015 U.S. Dist. LEXIS 86653, at *14 (S.D.N.Y. July 2, 2015) (holding that where a complaint "alleges joint activity amongst the Moving Defendants; it need not elaborate extensively on the details with regard to each defendant to comply with Rule 8.").

The Amended Complaint provides far more than mere conclusory allegations. It specifically alleges that HGV and HG TC were solely owned and controlled by Defendant Donaldson, operated from the same principal place of business, used the same toll-free number, and shared the same website domain family. AC, ¶¶ 23, 45, 48. Donaldson allegedly operated the two entities "interchangeably, using HGV to solicit the investors and HG TC to control the subsequent transactions." AC, ¶ 45. Donaldson herself is alleged to be the "architect and operator" of this integrated enterprise, personally soliciting Plaintiffs and acting as the exclusive liaison between Plaintiffs and the borrowers. AC, ¶¶ 25, 57. This is not a case of vague, undifferentiated allegations against unrelated actors. It is a detailed pleading describing a unified operation where each Defendant played a specific, coordinated role in the conduct that harmed Plaintiffs. Therefore,

2

HG TC's assertion that Plaintiffs have failed to identify any specific negligent act is plainly wrong, and group pleading is entirely appropriate.

**The Amended Complaint Adequately Alleges Duties Owed by HG TC, HGV, and Donaldson**

Defendants' argument that they owed no duty to Plaintiffs beyond a generalized, and legally insufficient, obligation to protect them from third-party fraud mischaracterizes both the law and the detailed allegations in the Amended Complaint. Plaintiffs' claims are not based on a novel theory of vicarious liability; they are grounded in the duties of care and loyalty that the Transaction Coordinator Defendants directly and voluntarily assumed through their own conduct. The Amended Complaint alleges a pattern of behavior whereby these Defendants abandoned any arm's-length role and instead inserted themselves as indispensable fiduciaries who solicited Plaintiffs' trust, exercised superior control over their funds, and then betrayed that trust for personal gain.

The alleged breaches are specific and extensive. HG TC assumed total control over every closing, systematically isolating Plaintiffs from the Title Defendants and falsely representing that it had secured lender approval for disbursements. AC, ¶¶ 48-53. It then directed title companies to make numerous unauthorized disbursements, including undisclosed assignment fees that consumed entire loan amounts, payoffs to prior lenders, fictitious commissions, and duplicative fees to itself and its sister company, HGV. AC, ¶¶ 54, 58-64. HGV, for its part, acted as the primary marketing arm, inducing Plaintiffs' investments through false representations about the enterprise's track record and the security of the loans, and later sent "lulling" communications to suppress inquiry as the scheme collapsed. AC, ¶¶ 40-44, 47. At the center was Defendant Donaldson, who orchestrated the entire process, made personal guarantees to Plaintiffs to induce their investment, drafted legal documents without a license, and personally participated in concealing the misappropriation of funds. AC, ¶¶ 57-65.

This course of conduct creates an independent duty in tort, even where a contract exists. Under New York law, a plaintiff may maintain both tort and contract claims if an independent legal duty has been violated. *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012). Liability to a non-contractual party for negligence requires satisfying the three-part test from *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536 (1985): (1) awareness by the defendant that its work was for a particular purpose; (2) reliance by a known third party in furtherance of that purpose; and (3) conduct by the defendant linking it to the third party and evincing an understanding of that reliance. This creates a relationship "so close as to approach that of privity." *Id.* at 551. Here, as in *Bayerische Landesbank*, the test is met. The AC pleads that Defendants were aware their solicitations and transaction management were for the specific purpose of inducing and closing Plaintiffs' investments. AC, ¶¶ 40, 48. They knew Plaintiffs, as the funding partners, would rely on their representations and management of the closing process. AC, ¶¶ 49-52. Finally, their direct solicitations, personal guarantees from Donaldson, and assumption of the role of exclusive gatekeeper directly linked them to Plaintiffs and demonstrated a clear understanding of Plaintiffs' reliance. AC, ¶¶ 50, 58.

Moreover, these allegations establish a fiduciary relationship. A fiduciary duty arises where "confidence is reposed on one side and there is resulting superiority and influence on the other." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 561 (2009). This is a fact-specific

3

inquiry. By holding themselves out as trusted intermediaries, demanding total control over the flow of funds and information, and inducing Plaintiffs to cede all oversight of the closing process, Defendants created exactly the kind of relationship of trust, confidence, and superiority from which fiduciary duties arise. AC, ¶¶ 49, 113-115. Like the defendant in *Muller-Paisner v. TIAA*, 528 F. App'x 37, 42 (2d Cir. 2013), who voluntarily assumed a duty to advise customers, these defendants voluntarily assumed duties of care, candor, and loyalty far exceeding any simple administrative role.

The breaches of these duties were committed in bad faith. As in *United States SBA v. Feinsod*, 347 F. Supp. 3d 147, 162 (E.D.N.Y. 2018), where defendants breached their duties by causing a company to enter into transactions for no consideration to benefit an affiliated entity, or Defendants allegedly directed Plaintiffs' funds to undisclosed parties and to themselves for duplicative fees, putting their own interests "ahead of the interest of" Plaintiffs. AC, ¶¶ 54, 116. The case of *Hartnett v. Liberty Ins. Corp.*, No. 24-CV-50 (KMK), 2024 U.S. Dist. LEXIS 171408 (S.D.N.Y. Sep. 23, 2024), cited by Defendants, is inapposite; a standard insurer-insured transaction does not involve the same assumption of trust and control as alleged here.

Finally, information that has come to light since the filing of the Amended Complaint further confirms the egregious breach of duty. In one transaction, Plaintiffs' funds were wired to a closing for a property with a nominal cost, with most of the proceeds disbursed as cash and side payments. The property, which served as the collateral, was later demolished. On the mortgage maturity date, Donaldson released the lien without authorization and simultaneously recorded a new mortgage in her own entity's name at an inflated amount through a "paper closing" with no actual funds. The settlement ledger for this sham closing shows a large payment to Donaldson's entity, a payment to the borrower, and a trivial payment to the Plaintiff lender. This conduct exemplifies the self-dealing and gross negligence that permeated the enterprise. The Court should permit further amendment rather than permit Defendants to pursue the baseless motion practice contemplated.

**The Claims Against Defendants Sound in Tort, Not Solely in Contract, and the Contractual Disclaimers Do Not Bar Relief**

Defendants HGV and HG TC cannot shield themselves from tort liability by hiding behind their service agreements. Their argument that Plaintiffs' claims are purely contractual and barred by exculpatory clauses fails for two reasons: (1) the Amended Complaint alleges that Defendants' conduct grossly exceeded the limited roles defined in the contracts, thereby creating an independent duty in tort; and (2) New York public policy forbids the enforcement of exculpatory clauses to insulate a party from its own gross negligence and willful misconduct.

The contracts defined Defendants' roles narrowly. The HGV agreement states its role is "solely as an intermediary, facilitating the connection between borrowers and funding partners". The HGTC agreement limits its involvement to "administrative transaction coordination". The Amended Complaint, however, alleges that their actual conduct went far beyond these limitations. HGV was not a mere intermediary; it was the "primary marketing and solicitation vehicle" that induced investment through false social media posts and actively sent "lulling" communications to suppress lender inquiry. AC, ¶¶ 40-47.

Likewise, HGTC was no simple administrator; it seized "total and discretionary control over the closing process," acted as the "exclusive communication gatekeeper," and directed title companies to make millions in unauthorized disbursements based on its false representations of lender approval. AC, ¶¶ 49, 53-54]. This alleged conduct gives rise to a legal duty independent of the contract, and a breach of that duty supports a tort claim that is not duplicative. *See Bayerische Landesbank*, 692 F.3d at 58.

Furthermore, the contractual hold-harmless and disclaimer provisions are unenforceable as a matter of public policy. Under New York law, a party cannot contractually absolve itself of liability for its own gross negligence or willful misconduct – this public policy rule renders such exculpatory clauses unenforceable. *See Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 353 (2020). The Amended Complaint is replete with allegations rising to this level, including self-dealing through undisclosed fees to Donaldson's entities, active concealment of settlement statements, and the orchestration of sham closings. AC, ¶¶ 54, 56, 65.

As in *Commerzbank AG v. United States Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 498 (S.D.N.Y. 2017), where the complaint alleged a relationship "riddled with financial conflicts of interest," the allegations here are sufficient to sustain negligence and gross negligence claims. The Transaction Coordinator Defendants had "an independent duty to perform [their] nondiscretionary ministerial duties with due care and to avoid conflicts of interest". Their alleged self-dealing and active participation in the scheme to Plaintiffs' detriment cannot be waived by a boilerplate contractual provision. AC, ¶ 116.

**Marcia Donaldson Is Subject to Personal Jurisdiction and Individual Liability**

Defendant Donaldson's jurisdictional challenge is meritless. A defendant who purposefully directs tortious conduct into New York is subject to personal jurisdiction under N.Y. C.P.L.R. § 302(a) and constitutional due process principles. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169–70 (2d Cir. 2010). "The Amended Complaint alleges Donaldson personally authored and transmitted fraudulent solicitations, including the August 27, 2025, email, directly to Plaintiffs in New York. AC, ¶ 46. This is precisely the type of targeted conduct that satisfies statutory and constitutional standards.

Furthermore, where solicitation of business in New York is "substantial and continuous," very little more is required to establish jurisdiction under the "solicitation-plus" rule. *See Nelson v. Mass. Gen. Hosp.*, No. 04-CV-5382 (CM), 2007 U.S. Dist. LEXIS 70455, at *43 (S.D.N.Y. Sep. 20, 2007). The Amended Complaint alleges Donaldson engaged in a continuous campaign targeting New York-based Plaintiffs through social media, email, and personal text messages containing false guarantees. AC, ¶¶ 9, 40, 58. The "plus" factor is the consummation of numerous transactions causing direct financial injury in this District.

Specific jurisdiction as to Donaldson is also plainly established, as her contacts with the forum are the very basis of the claims against her. CPLR 302 (a) (1) does not require that every element of the cause of action pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business

5

transaction and the claim asserted supports specific jurisdiction under the statute. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339 (2012). Because Plaintiffs are suing Donaldson for negligence and breach of fiduciary duty unquestionably related to Donaldson's contacts with New York, the exercise of specific jurisdiction is proper.

Donaldson's argument that she is shielded from liability by her corporate entities also fails as Plaintiffs seek to hold Donaldson liable for her own tortious acts. A corporate officer is personally liable for torts in which she personally participates, regardless of her corporate capacity. *See Polonetsky v. Better Homes Depot, Inc.*, 97 N.Y.2d 46, 55 (2001). Alleging that an individual defendant "personally participated in and exercised dominion and control over the tort and fiduciary violations" is sufficient to state a claim. *Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 97 Civ. 5499 (DNE), 2000 U.S. Dist. LEXIS 2604, at *121-22 (S.D.N.Y. Mar. 8, 2000). The Amended Complaint details Donaldson's personal participation exhaustively, from inducing investment with personal guarantees to drafting and falsifying legal documents and actively concealing the misappropriation of Plaintiffs' funds. AC, ¶¶58, 61-62, 65. Donaldson's level of personal participation in the violations at issue is more than sufficient to hold her individually liable.

For the reasons stated herein, the Court should deny Defendants' applications.

Respectfully Submitted,
**TA LEGAL GROUP PLLC**

By: _____
Taimur Alamgir