UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Summitbridge Wealth Management LLC, Arna Premier Property Solutions, LLC; AAssistance Realty LLC; Adelino Amaral Oliveira; AF 401K Plan & Trust; AHR Consulting LLC; Aideninvestmentproperties llc; Altamont Solutions LLC; Kane Ventures Inc.; AMI Property Group LLC; AMPM Group Enterprise LLC; Angelica Maria Rivera; A & N Divine Solutions LLC; Arctic Fox LLC; ASH Dynamic Consulting LLC; Back Pocket Ops LLC; BCT Investments LLC; McCor Investments LLC, a Texas LLC; Bertrand C Blain; Beyond Tiny, Inc.; Bite Size Ventures LLC; BJ's Enterprises LLC; BLDR Investments LLC; Bmorehomebuyers LLC; Bridging Purpose LLC; Bulwark Automations, LLC; Caleb Ramsay EQRP 401k; Camden Harbor Ventures LLC; Capital Tree Ventures LLC; Casen Do REI Funding, LLC; CC Venture Innovations LLC; C2MM LLC EQRP 401K; CLR Innovations EQRP 401k; CN Investment Trust; Dawning Properties Team LLC; Dan Scott; ddot Realty LLC; Directed Trust Company FBO Lorelei Fara IRA; D&A Elite Ventures Group, LLC; Golden Ridge IRA LLC; Elevated Horizons LLC; Elizabeth Schwab EQRP 401k; Equity Trust Company, as custodian for the benefit of Kenneth Grove Hill ROTH IRA #200661697; Equity Trust Company, Custodian FBO Tinku Saha ROTH IRA; Equity Trust Company Custodian as custodian FBO Tinku Saha IRA; Equity Trust Company, as custodian for the benefit of the Elaina Tapscott IRA, managed by Elaina Renee Tapscott; Equity Trust Company, as custodian FBO Karen Dudich; Exceptional Holdings, LLC; KNJL INVESTMENT TRUST; Freya Fund LLC; Ferrara Invest LLC; Fire on the Mountain Ventures LLC; Golden Legacy Ventures LLC; GY Estates LLC; Heather Shoots 401K Plan; HL2304GLOBAL LLC; Huyen Nguyen Ngo; Horizon Trust FBO: Wang Sean lee Traditional IRA; H & L Investments, LLC; Horizon Trust FBO: Robert Bevis Traditional IRA Acct #5874101; IEM383 Ventures LLC; Inspira Financial Trust FBO Patricia Stank IRA #4607311; Invictus Capital LLC; IRA Club FBO Cynthia Lebron-Valle IRA 1005021; IRA Innovations, LLC as Custodian FBO David Dorris Roth IRA; JG49 Gators of NTX, LLC; | Case No. 26-CV-141 (JMA) (ST)<br><br>SECOND AMENDED COMPLAINT |

JDG Network Solutions LLC; JD Investor Loans LLC; Jennifer Wehmeyer EPSP 401K; eQRP at Solera National Bank; John R Otten; JM Property Concepts LLC; JTATX-1-PROPERTY LLC; The James Gasseau Roth IRA Trust (Solera National Bank, custodian); The Teresa Gasseau Roth IRA Trust (Solera National Bank, custodian); JT Real Estate LLC; Kareem Taye; Kamkodar HSA, LLC; Kamkodar III, LLC; KHW Funding LLC; Kingdom Legacy Group LLC; Kristin P. Beach; Boston C. Beach; LandWise Investments, LLC; Panda Group, LLC; Legatum Holdings LLC; Legacy Horizon Solutions LLC; LH401k Plan & Trust; Liberated Home Solutions LLC; Limitless Deal Funding LLC; Loock Enterprises LLC; Lucid Insight 401K; MDB Property Solutions LLC; MJ Strategic Funding, LLC; Chandler Horse, LLC (Directed Trust Company, f/b/o Jill Mathis ROTH IRA); Monolith Legacy Group LLC; Moon Calcs LLC; Marrs Ventures, LLC; Maasa LLC; Matchmaker Investments LLC; Mark Petrovich; MotherELM Partners LLC; Nathan Nolan Hillard; Neelema Solo 401k Plan; Okia Properties LLC; Outer LLC; Palm Ave LLC; Directed Trust Company FBO Christopher Adanene Roth IRA; Park Place Management, LLC; Panambi Investments LLC; Viama LLC; Pearl Creek Properties, LLC; Taylor Fort Trust - Chaney Kyle Burks; Peak Wealth LLC; Plum Crazy Capital LLC; PREMIER LINK LLC; Randy Ruth; Realife Real Estate, LLC; RS5 Enterprises LLC; Blue Merle Group LLC; Sandy Everglades LLC; Holding Wyoming LLC; SA99 Solutions LLC; S21 Concepts 401K PSP LLC; S21 Concepts LLC; Shelbert Solutions LLC; Staywithmi Real Estate LLC; Solid Foundation LLC; JustJourney LLC; Stacy M. Carpenter 401K Plan; Stephanie Vasquez; Steven Tran; Cliftview LLC; RAR Horizon LLC; Sunrise Real Estate Solutions LLC; Sapphire Solutions LLC; Swift Property Ventures LLC; Shellz Solutions LLC; Tall Poppy LLC; Ultimate Funding LLC; Unify Ventures Inc; Van Wehmeyer; VAS22 Solutions LLC; Vernon Creative Consulting LLC; JBJ 78 Capital LLC; RoJo Capital 25 LLC; JT Capital 415 LLC; We Fund Solutions LLC; Cedar IRA LLC; William B Short; WIC11 Unlimited LLC; Inspira Financial Trust FBO Deborah Higgins IRA 4221811; WNY MJA Solutions LLC; 2MR REI 401K Plan; 3 Eagle Brothers Ventures, LLC; 4G Creative LLC; and4G Investments LLC; and Rosco Investments LLC,

Plaintiffs,

- against -

Lighthouse Estates LLC, Starpoint Holdings LLC, Bluestar Capital LLC, AVS Estates LLC, Ceekou LLC, Red Door Legacy LLC, Redwoods Real Estate LLC, Taihe Estates LLC, Estella Management & Transactions LLC, Cornelius Consulting, LLC, GSA DR, LLC, Horizon View Investments LLC, RPKP Estates LLC, Vanguard Haven LLC, Wavewell Foundation Inc., Windmill Properties LLC, ZiraCo LLC, Van Barker, Ariel Mermelshtayn Barker, Siyuan Zheng, Cullen Barker; Joshua James Kennedy, Shannon Kennedy, Kentucky Private Lending, LLC, KYPL Holdings 1, LLC, Bear Capital LLC, Aaron Metten, Eric Payne, Ronald J. ("Ronnie") Harris, Jr., People's Bank of Lebanon, Marcia Donaldson, Hidden Gems Ventures, LLC, Hidden Gems TC Services LLC, Salty Fox Capital LLC, Maria Bock, Abundant Life TC Services, LLC, Buena Vida Properties, LLC, JAL Solutions LLC, True Title Service, LLC, Christopher Carl, Investors Title Company, Chicago Title Company, LLC, Continental Title Company, Millennial Title, LLC, DHR Properties LLC d/b/a Perpetual Title, Elite Title, LLC, Fidelity National Title Company, LLC, First Class Title Agency, Inc., Freedom Title LLC, Title Experts, LLC, Vision Title, LLC, Legacy Title & Escrow LLC, University Title Agency, LLC, Commonwealth Land Title Ins. Co, Essent Title Insurance, Inc., First American Title Insurance Company, General Title & Insurance Co., Westcor Land Title Insurance Co., WFG National Title Ins. Co., and Stewart Title Guaranty Co.,

Defendants.

Plaintiffs, by and through their undersigned counsel Hayes & Schanzer LLP, as and for their Second Amended Complaint in this action, aver as follows based on their personal knowledge and the documents and information available to them, and otherwise upon information and belief, as follows:

3

**Preliminary Statement**

1.     The action arises out of an admitted Ponzi scheme that has cost Plaintiffs over $20 million in losses on over 400 residential mortgage loans they made from 2024 through December 2025 for the benefit of Defendant Lighthouse Estates LLC ("Lighthouse") and a slew of alter ego LLCs, all of which were owned and managed by Defendant Van Barker ("Barker"), his immediate family, and a few others who knowingly helped further Barker's scheme, and were richly rewarded for doing so.   Given the number of parties involved and their overlapping motivations, this pleading begins with a summary of the facts and the principal claims, before setting out the details of the jurisdiction, venue, the parties, and the particulars of the misconduct alleged.

**Summary of the Case**

2.     From 2023 through 2025, Barker used Lighthouse as the flagship and focal point of a multi-headed business that cycled cash – including, according to its business records, the proceeds of interstate drug trafficking – through a large portfolio of often-dilapidated properties in the Midwest.   Defendants' business records show that they moved cash around freely between Lighthouse and a growing number of other LLCs without any regard for corporate formalities:   at one point Barker told his crew that they were all the owners of the LLCs they were using for their property business. Barker and his associates operated this "Lighthouse Enterprise" in this fraudulent manner to create a façade of success for a persistently money-losing business, enticing Plaintiffs to make new mortgage loans that were increasingly used to pay off loans from other lenders.   In short, the Lighthouse Enterprise was a classic RICO enterprise.

3.     Lighthouse soon found a ready lending partner in Defendant Kentucky Private Lending, LLC ("KYPL"), which itself was closely affiliated with a small community bank called People's Bank of Lebanon ("People's").   In about two years, Lighthouse borrowed over $25

4

million from KYPL, nearly all of which KYPL had borrowed from People's.

4.      KYPL was run by Defendant Aaron Metten, a protégé of Defendant Ronnie Harris Jr., ("Harris") who owns both People's *and* its accountants, King & Company.  Harris and Metten set up KYPL as People's high-volume, hard-money lender, yet operating in a way that concealed the bank's total exposure to KYPL on the bank's reports filed with state and federal bank regulators. People's had to conceal its exposure to KYPL's business, because state and federal banking laws strictly limit every bank's exposure to any one borrower, in a ratio that is based on the bank's regulatory capital.  People's, a small community bank with just three branches, had very little capital, and so it was not allowed to have more than $1.5 million in aggregate exposure to any borrower.  Thus KYPL's $25 million aggregate borrowing was 1,666 times the limit KYPL was permitted under Kentucky state law.

5.      Harris, himself, avoided scrutiny of his personal interest in KYPL by structuring it as a passive, 10% profit interest – not a membership interest.

6.      As Lighthouse's business grew, it soon came to rely on "Private Money Lenders" – the Plaintiffs – to provide mortgages on its properties, even as KYPL continued to make purchase money loans to Lighthouse on properties the PMLs were funding.

7.      Evidence from multiple sources, including Lighthouse itself, shows that KYPL and People's knew by early July 2025 that Lighthouse was insolvent.  KYPL and People's also knew that Lighthouse would only survive if KYPL and People's extended Lighthouse's credit – allowing Lighthouse to use those funds to obtain new loans from PMLs like Plaintiffs, and recycle those funds to pay off its debts to KYPL and People's. Thus in July 2025, with a clear understanding of the situation, Harris' persuaded People's and KYPL jointly set up a new credit facility for Lighthouse's benefit.  Harris, the bank, and KYPL new that Barker and his crew would

5

tell Plaintiffs about that new credit facility, calling it a vote of confidence by the Bank in Lighthouse's business, and a reason for the Plaintiffs to forbear, and to make even more loans to Lighthouse and its affiliates.  Indeed, KYPL actively helped sell that story, later in 2025, Metten himself spoke on a Zoom call with many of the Plaintiffs, and encouraged them to continue to trust Barker, and continue doing business with Lighthouse.

8.	These facts show that Harris, People's, and KYPL each made a choice, no later than July 2025, to actively fund the Lighthouse Enterprise's work, knowing their support would be used to engage in an ongoing pattern of racketeering that was intended to harm, and did harm, the Plaintiffs.  For this reason, Harris, People's, and KYPL are each liable under 18 U.S.C. § 1962(d), for conspiring with Lighthouse to fund its ongoing pattern of racketeering.

9.	Lighthouse's fraudulent loan scheme also required the assistance or acquiescence of dozens of licensed professionals (attorneys and escrow agents), and over a dozen title insurers. In two years, these parties closed hundreds of Lighthouse mortgages that paid out $2,000 per closing to finders (a/k/a "Transaction Coordinators"), unlicensed brokers (a/k/a, "wholesalers"), and sundry other persons with no clear role in the transaction, *all without a lender's power of attorney, without any lender's closing instructions, and without the lender's consent to those payments*.  Indeed, many of Lighthouse's closing statements were drafted by the same un-licensed 'Transaction Coordinators' who received $2,000 wire payments from each closing (many closings had two such $2,000 "Transaction Coordinator" payments).

10.	The title insurance underwriters on Lighthouse's closings did not exercise due care in checking their agent's work; they are also, themselves, careless at best.  For example, in nearly 200 Lighthouse closings in Indiana, Missouri, and Ohio, the title insurer failed to provide (or offer to provide) the "closing protection letters" that the state insurance code required them to provide

(or offer to provide) – insurance that is intended to protect Plaintiffs from the kind of fraud and theft that was taking place at their closings. Thus each of Lighthouse's escrow and closing companies, and each of the insurance underwriters, is liable to some or all the Plaintiff under various state laws, including the following:

(a) Conversion, given that Plaintiffs never approved – nor gave power of attorney or agency to anyone else to approve – the many third-party payments made by title companies (at the Transaction Coordinators' instructions) from Plaintiffs' loans. Thus each of the Transaction Coordinators, title companies, and the recipients of the transfers may be held liable for the converted funds;

(b) Negligence, including by failing to issue (or offer) Closing Protection Letters to Plaintiffs in connection with the over 200 closings that took place in states where "CPL" letters are required (Indiana, Missouri) or must be offered (Ohio). These state laws require the underwriter itself to issue the CPL; thus both it and the title company are liable; and

(c) Intentional torts under overlapping state laws, violating applicable state laws against civil theft, criminal conversion, and insurer bad faith – including the states where Plaintiffs' properties are located (*e.g.*, Indiana), *and* certain states that protect lenders who *reside* in that state (*e.g.*, California, Texas) from tortious conduct regarding properties in *other* states). Recoveries under these statutes may include double or treble damages plus fees – and some states permit recovery of 'benefit of the bargain' damages, when calculating single damages.

### Jurisdiction and Venue

11.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, as the claims arise under the laws of the United States, including the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. This Court has jurisdiction over the civil RICO claims pursuant to 18 U.S.C. § 1964(c).

12.    The Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy.

13.    This Court has personal jurisdiction over the Transaction Coordinator Defendants

7

pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 302, and principles of constitutional due process. These defendants purposefully availed themselves of the privilege of conducting activities within New York by, among other things:

a.      Transacting business within the state by repeatedly soliciting New York-based Plaintiffs through targeted social media campaigns, emails, and telephone calls; entering into agreements with New York residents; directing and controlling real estate transactions funded by Plaintiffs from New York; and wiring funds to the enterprise knowing or recklessly disregarding that the capital infusion was necessary to sustain a fraudulent scheme that was actively targeting and harming New York Plaintiffs, causing foreseeable financial injury in New York.

b.      Committing tortious acts without the state that caused foreseeable injury to person and property within the state. Specifically, these defendants made fraudulent misrepresentations and omissions from outside New York that were intended to, and did, induce reliance by Plaintiffs in New York, causing direct financial loss in this District. These defendants regularly solicit business and derive substantial revenue from interstate commerce and should have reasonably expected their acts to have consequences in New York.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Specifically, Defendants directed fraudulent communications into this District, entered into contracts with Plaintiffs located in this District, and caused direct and substantial financial injury to Plaintiffs within this District.

**Plaintiffs**

15.     Plaintiff Summitbridge Wealth Management LLC is a New York limited liability company with its principal place of business at 338 Jericho Turnpike, Suite 106, Syosset, NY 11791.

16.     Plaintiff Arna Premier Property Solutions is a New York entity with its principal place of business at 329 S. Oyster Bay Road, Suite 202, Plainview, NY 11803.

17.     Plaintiff AAssistance Realty LLC, managed by Shirley Hernandez-Schumacher,

an Indiana resident, sues in connection with a loan made to a Lighthouse property in Detroit, Michigan.

18.    Plaintiff Adelino Amaral Oliveira, a Texas resident, sues regarding loans made to Lighthouse properties located in Alabama and Missouri.

19.    Plaintiff AF 401K Plan & Trust, managed by Annemarie Fabesch, a Florida resident, made loans to Lighthouse properties located in Arkansas.

20.    Plaintiff AHR Consulting LLC, managed by Hemanth Kumar Rayapati, a California resident, made loans to Lighthouse properties located in Michigan and Ohio.

21.    Plaintiff Aideninvestmentproperties llc, managed by Kenneth Ayres, a Michigan resident, made loans to Lighthouse properties located in Alabama.

22.    Plaintiff Altamont Solutions LLC and Plaintiff Kane Ventures Inc., each managed by Brandon Kane Bice, a California resident, each sue in connection with loans to Lighthouse properties located in Alabama, Arkansas, Indiana, Michigan, Missouri, and Ohio.

23.    Plaintiff AMI Property Group LLC, managed by Amy Britt, a Delaware resident, made loans to Lighthouse properties located in Indiana.

24.    Plaintiff AMPM Group Enterprise LLC, managed by Andres Munoz, a New York resident, made loans to Lighthouse properties located in Indiana and Ohio.

25.    Plaintiff Angelica Maria Rivera, a Texas resident, made loans to Lighthouse properties located in Missouri.

26.    Plaintiff A & N Divine Solutions LLC, managed by Argyrios Gerazounis, a New York resident, made loans to Lighthouse properties located in Kentucky.

27.    Plaintiff Arctic Fox LLC, managed by Gary Clague, a Colorado resident, made loans to Lighthouse properties located in Michigan.

28.    Plaintiff ASH Dynamic Consulting LLC, managed in joint venture with BLDR Investments LLC by New Mexico residents Aaron Hoisington and Rob Halfacre, made loans to Lighthouse properties located in Kentucky.

29.    Plaintiff Back Pocket Ops LLC, owned by Dustin Vo, a North Carolina resident, made loans to Lighthouse properties located in Alabama, Kentucky, and Missouri.

30.    Plaintiff BCT Investments LLC and Plaintiff McCor Investments LLC, a Texas LLC, each managed by Brent McKenzie, a Texas resident, each sue in connection with loans made to Lighthouse properties located in Illinois, Indiana, and Missouri.

31.    Plaintiff Bertrand C Blain, a Virginia resident, made loans to Lighthouse properties located in Indiana, Michigan, and Ohio.

32.    Plaintiff Beyond Tiny, Inc., managed by Cheryl L Smith, a California resident, made loans to Lighthouse properties located in Indiana.

33.    Plaintiff Bite Size Ventures LLC, managed by Emmanuel Rodriguez, a Utah resident, made loans to Lighthouse properties located in Indiana and Missouri.

34.    Plaintiff BJ's Enterprises LLC, managed by Brandon Slaubaugh, a Michigan resident, made loans to Lighthouse properties located in Indiana.

35.    Plaintiff BLDR Investments LLC, managed in joint venture with ASH Dynamic Consulting LLC by New Mexico residents Aaron Hoisington and Rob Halfacre, made loans to Lighthouse properties located in Kentucky.

36.    Plaintiff Bmorehomebuyers LLC, a Maryland company, managed by Daniel Sachariah, a Maryland resident, made loans to Lighthouse properties located in Indiana and Ohio.

37.    Plaintiff Bridging Purpose LLC, managed by Douglas Sweeney, a Kentucky resident, made loans to Lighthouse properties located in Indiana.

10

38.    Plaintiff Bulwark Automations, LLC, managed by Ryan Hill, a Utah resident, made loans to Lighthouse properties located in Michigan.

39.    Plaintiff Caleb Ramsay EQRP 401k, managed by Caleb Ramsay, a California resident, made loans to Lighthouse properties located in Indiana.

40.    Plaintiff Camden Harbor Ventures LLC, managed by Lisa Ehrlich, a New York resident, made loans to Lighthouse properties located in Indiana.

41.    Plaintiff Capital Tree Ventures LLC, managed by Yamil Tapia, a Florida resident, made loans to Lighthouse properties located in Arkansas.

42.    Plaintiff Casen Do REI Funding, LLC, managed by Bruce T. Gibbs, a Virginia resident, made loans to Lighthouse properties located in Indiana and Michigan.

43.    Plaintiff CC Venture Innovations LLC, managed by Carlos Valle, a Florida resident, made loans to Lighthouse properties located in Arkansas and Indiana.

44.    Plaintiff C2MM LLC EQRP 401K, managed by Luke Finney, a Utah resident, made loans to a Lighthouse property in Alabama.

45.    Plaintiff CLR Innovations EQRP 401k, managed by Colin Reissing, a Tennessee resident, made loans to Lighthouse properties located in Indiana and Missouri.

46.    Plaintiff CN Investment Trust, managed by Nguyen Con, a Texas resident, made loans to Lighthouse properties located in Kentucky.

47.    Plaintiff Dawning Properties Team LLC, managed by Dawn Forster, a California resident, made loans to Lighthouse properties located in Missouri.

48.    Plaintiff Dan Scott, a Georgia resident, made a loan to a Lighthouse property located in Indiana.

49.    Plaintiff ddot Realty LLC, managed by Monica Torices Zavala, a Florida resident,

11

sues in connection with a loan to a Lighthouse property in Indiana.

50.      Plaintiff Directed Trust Company FBO Lorelei Fara IRA, managed by Lorelei Fara, a California resident, made loans to Lighthouse properties located in Indiana.

51.      Plaintiff D&A Elite Ventures Group, LLC, managed by Iowa resident Anne M. Hedrick, and Plaintiff Golden Ridge IRA LLC, managed by Anne M. Hedrick and David Hedrick, each sue in connection with loans to Lighthouse properties located in Indiana, Kentucky, and Missouri.

52.      Plaintiff Elevated Horizons LLC, managed by Eric Friedlander, a Colorado resident, made loans to Lighthouse properties located in Missouri.

53.      Plaintiff Elizabeth Schwab EQRP 401k, managed by Elizabeth Schwab, a Utah resident, made loans to Lighthouse properties located in Indiana.

54.      Plaintiff Equity Trust Company, as custodian for the benefit of Kenneth Grove Hill ROTH IRA #200661697, managed by Kenneth Grove Hill, a resident of California and Texas, made loans to Lighthouse properties located in Kentucky, Michigan, and Missouri.

55.      Plaintiff Equity Trust Company, Custodian FBO Tinku Saha ROTH IRA, and Plaintiff Equity Trust Company Custodian as custodian FBO Tinku Saha IRA, each managed by Tinku Saha, a North Carolina resident, each sue in connection with loans to Lighthouse properties located in Michigan.

56.      Plaintiff Equity Trust Company, as custodian for the benefit of the Elaina Tapscott IRA, managed by Elaina Renee Tapscott, a Texas resident with authority to sue on behalf of the IRA, made loans to Lighthouse properties located in Alabama.

57.      Plaintiff Equity Trust Company, as custodian FBO Karen Dudich, managed by Karen Dudich, a New York resident with authority to act on its behalf in this action, made loans

12

to Lighthouse properties located in Indiana.

58.     Plaintiff Exceptional Holdings, LLC and Plaintiff KNJL INVESTMENT TRUST, each managed by Khoi Nguyen, a Texas resident, each sue in connection with loans to Lighthouse properties located in Highland Park, Michigan and Louisville, Kentucky, respectively.

59.     Plaintiff Freya Fund LLC and Plaintiff Ferrara Invest LLC, each managed by Ekaterina Borisova, an Arizona resident, each sue in connection with loans to Lighthouse properties located in Indiana and Michigan.

60.     Plaintiff Fire on the Mountain Ventures LLC, managed by Mary T. Beamon, a North Carolina resident, sues in connection with loans to Lighthouse properties located in Kentucky, Michigan, and Indiana.

61.     Plaintiff Golden Legacy Ventures LLC, a North Carolina LLC managed by Kristin P. Beach and Mary T. Beamon, sues in connection with Lighthouse properties located in Indiana, Kentucky, Michigan, and Missouri.

62.     Plaintiff GY Estates LLC, managed by Billy Jovani Sevila, a Nevada resident, made loans to Lighthouse properties located in Missouri.

63.     Plaintiff Heather Shoots 401K Plan, managed by Heather Shoots, a Michigan resident, made loans to Lighthouse properties located in Indiana.

64.     Plaintiff HL2304GLOBAL LLC, managed by Hen Lang, a resident of Israel, made loans to Lighthouse properties located in Indiana.

65.     Plaintiff Huyen Nguyen Ngo, Trustee of Wonder Women Trust, a Texas resident, made loans to Lighthouse properties located in Indiana.

66.     Plaintiff Horizon Trust FBO: Wang Sean lee Traditional IRA, managed by Wang Sean Lee, a California resident, made loans to Lighthouse properties located in Missouri.

67.    Plaintiff H & L Investments, LLC, managed by Logan Bowers, a Louisiana resident, made loans to Lighthouse properties located in Indiana.

68.    Plaintiff Horizon Trust FBO: Robert Bevis Traditional IRA Acct #5874101, managed by Robert Bevis, a New Hampshire resident, made loans to Lighthouse properties located in Indiana and Missouri.

69.    Plaintiff IEM383 Ventures LLC, managed by Kimvy Iem, a California resident, made loans to Lighthouse properties located in Missouri.

70.    Plaintiff Inspira Financial Trust FBO Patricia Stank IRA #4607311, managed by Patricia Stank, a Pennsylvania resident, made loans to Lighthouse properties located in Ohio.

71.    Plaintiff Invictus Capital LLC, managed by Charles O'Dell, a Florida resident, made loans to Lighthouse properties located in Indiana and Ohio.

72.    Plaintiff IRA Club FBO Cynthia Lebron-Valle IRA 1005021, managed by Cynthia Lebron-Valle, a Florida resident, made loans to Lighthouse properties located in Kentucky.

73.    Plaintiff IRA Innovations, LLC as Custodian FBO David Dorris Roth IRA, managed by David Dorris, a Tennessee resident, sues in connection with a loan to a Lighthouse property in Missouri.

74.    Plaintiff JG49 Gators of NTX, LLC, managed by James Chavez, a Texas resident, made loans to Lighthouse properties located in Missouri.

75.    Plaintiff JDG Network Solutions LLC, managed by Dwayne Gathers, an Arizona resident, made loans to Lighthouse properties located in Michigan, Alabama, Indiana, Kentucky, and Ohio.

76.    Plaintiff JD Investor Loans LLC, managed by Jeremy T. Draggoo, a Washington resident, made loans to Lighthouse properties located in Kentucky and Missouri.

14

77.    Plaintiff Jennifer Wehmeyer EPSP 401K and Plaintiff eQRP at Solera National Bank, each managed by Jennifer Wehmeyer, a Texas resident, each sue in connection with loans to Lighthouse properties located in Indiana, Kentucky, Michigan, and Missouri.

78.    Plaintiff John R Otten, an Iowa resident, sues in connection with loans made to Lighthouse properties located in Indiana.

79.    Plaintiff JM Property Concepts LLC, managed by Jacob Scott, a Florida resident, made loans to Lighthouse properties located in Indiana.

80.    Plaintiff JTATX-1-PROPERTY LLC, managed and beneficially owned by California residents James Gasseau and Teresa Gasseau, on behalf of The James Gasseau Roth IRA Trust (Solera National Bank, custodian), as successor in interest to Equity Trust Company, and The Teresa Gasseau Roth IRA Trust (Solera National Bank, custodian), as successor custodians to Equity Trust Company, made loans to Lighthouse properties located in Arkansas, Indiana, and Ohio.

81.    Plaintiff JT Real Estate LLC, managed by Jingyu Yao, a Georgia resident, made loans to Lighthouse properties located in Indiana.

82.    Plaintiff Kareem Taye, a Texas resident, made loans to Lighthouse properties located in Alabama, Missouri, and Ohio.

83.    Plaintiff Kamkodar HSA, LLC and Plaintiff Kamkodar III, LLC, each managed by Tejpal S. Hansra, a Washington resident, each sue in connection with loans to Lighthouse properties located in Missouri.

84.    Plaintiff KHW Funding LLC, managed by Kasey Hilgers, a California resident, made loans to Lighthouse properties located in Indiana and Missouri.

85.    Plaintiff Kingdom Legacy Group LLC, managed by Heather Garcia, a North

15

Carolina resident, made loans to Lighthouse properties located in Indiana, Michigan, and Missouri.

86.    Plaintiff Kristin P. Beach and Plaintiff Boston C. Beach each sue in connection with loans made to Lighthouse properties located in Indiana, Michigan, and Missouri.

87.    Plaintiff LandWise Investments, LLC and Plaintiff Panda Group, LLC, each managed by Daniel Desrosiers, a Rhode Island resident, each sue in connection with loans made to Lighthouse properties located in Alabama, Indiana, Kentucky, Missouri, and Ohio.

88.    Plaintiff Legatum Holdings LLC, managed by Carolina Hernandez, a Texas resident, made loans to Lighthouse properties located in Missouri.

89.    Plaintiff Legacy Horizon Solutions LLC, managed by Maria Dydo, an Illinois resident, made loans to Lighthouse properties located in Alabama.

90.    Plaintiff LH401k Plan & Trust, managed by Laura A. Havlik, a California resident, made loans to Lighthouse properties located in Missouri.

91.    Plaintiff Liberated Home Solutions LLC, managed by Jacqueline Graber, an Indiana resident, made loans to Lighthouse properties located in Michigan.

92.    Plaintiff Limitless Deal Funding LLC, managed by Marcella M Wethington, an Arizona resident, made loans to Lighthouse properties located in Indiana and Kentucky.

93.    Plaintiff Loock Enterprises LLC, represented by its Manager Adelle Loock, a Texas resident, made loans to Lighthouse properties located in Alabama and Missouri.

94.    Plaintiff Lucid Insight 401K, managed by Stephen Friedlander, a Florida resident, made loans to Lighthouse properties located in Indiana.

95.    Plaintiff MDB Property Solutions LLC, managed by Deborah J Bandy, a North Carolina resident, made loans to Lighthouse properties located in Indiana.

96.    Plaintiff MJ Strategic Funding, LLC and Plaintiff Chandler Horse, LLC (Directed

16

Trust Company, f/b/o Jill Mathis ROTH IRA), each managed by Jill A Mathis, a Nebraska resident, each sue in connection with loans to Lighthouse properties located in Alabama and Kentucky.

97. Plaintiff Monolith Legacy Group LLC, managed by Darlene Rivera, a South Carolina resident, made loans to Lighthouse properties located in Indiana.

98. Plaintiff Moon Calcs LLC, managed by Emely Delgado, a California resident, made loans to Lighthouse properties.

99. Plaintiff Marrs Ventures, LLC, managed by Kevin Mitchell, a Texas resident, made loans to Lighthouse properties located in Indiana.

100. Plaintiff Maasa LLC, managed by Madhup Chandra, a California resident, made loans to Lighthouse properties located in Michigan and Ohio.

101. Plaintiff Matchmaker Investments LLC, managed by Rachel Kane, a Maryland resident, made loans to Lighthouse properties located in Michigan.

102. Plaintiff Mark Petrovich, a Rhode Island resident, made loans to Lighthouse properties located in Indiana.

103. Plaintiff MotherELM Partners LLC, managed by Nicole A. Outlaw, a Maryland resident, made loans to Lighthouse properties located in Missouri.

104. Plaintiff Nathan Nolan Hillard, a New York resident, made loans to Lighthouse properties located in Missouri.

105. Plaintiff Neelema Solo 401k Plan, by New York resident Neelema Sinha, as Trustee (the manager of Plaintiff ARNA Premier Property Solutions LLC), sues in connection with a loan to a Lighthouse property located in Indiana.

106. Plaintiff Okia Properties LLC, managed by Julie Asmussen, an Illinois resident,

17

made loans to Lighthouse properties located in Missouri and Ohio.

107.    Plaintiff Outer LLC, managed by Phillip Laven, an Arizona resident, made loans to Lighthouse properties located in Kentucky.

108.    Plaintiff Palm Ave LLC and Plaintiff Directed Trust Company FBO Christopher Adanene Roth IRA, each managed by Christopher Adanene, a California resident, each sue in connection with loans to Lighthouse properties located in Indiana, Kentucky, Michigan, and Missouri.

109.    Plaintiff Park Place Management, LLC, managed by C. Marshall Burridge, a Tennessee resident, made loans to Lighthouse properties located in Alabama, Indiana, Kentucky, and Missouri.

110.    Plaintiff Panambi Investments LLC and Plaintiff Viama LLC, each managed by Maria Elena Permuy Rivadavia, a Texas resident, each sue in connection with loans to Lighthouse properties located in Arkansas, Indiana, Kentucky, and Missouri.

111.    Plaintiff Pearl Creek Properties, LLC and Plaintiff Taylor Fort Trust - Chaney Kyle Burks, each managed by Chaney Burks, a Colorado resident, each sue in connection with loans to Lighthouse properties located in Missouri.

112.    Plaintiff Peak Wealth LLC, managed by John Delosreyes, an Oklahoma resident, made loans to Lighthouse properties located in Indiana, Kentucky, and Missouri.

113.    Plaintiff Plum Crazy Capital LLC, managed by Deborah Struller, a New Jersey resident, made loans to Lighthouse properties located in Kentucky and Michigan.

114.    Plaintiff PREMIER LINK LLC, managed by Vladimir Kiselev, a Texas resident, made loans to Lighthouse properties located in Indiana.

115.    Plaintiff Randy Ruth, a Pennsylvania resident, made a loan to a Lighthouse

18

property located in Michigan as a co-lender with Realife Real Estate, LLC.

116. Plaintiff Realife Real Estate, LLC, managed by Luke Scott, a Washington resident, made a loan to a Lighthouse property in Indiana and (with Randy Ruth) Alabama.

117. Plaintiff RS5 Enterprises LLC and Plaintiff Blue Merle Group LLC, each managed by Robert A Sislow, an Illinois resident, each sue in connection with loans to Lighthouse properties located in Arkansas, Indiana, Kentucky, Michigan, and Missouri.

118. Plaintiff Sandy Everglades LLC and Plaintiff Holding Wyoming LLC, each managed by Sebastian Roy, a Massachusetts resident, each sue in connection with loans to Lighthouse properties located in Indiana.

119. Plaintiff SA99 Solutions LLC, managed by Stephanie Aronesty, a Florida resident, made loans to Lighthouse properties located in Missouri.

120. Plaintiff S21 Concepts 401K PSP LLC and Plaintiff S21 Concepts LLC, each managed by Shannan A. Billings, a Tennessee resident, each sue in connection with loans to Lighthouse properties located in Indiana.

121. Plaintiff Shelbert Solutions LLC, managed by Shelley Fuentes, an Oklahoma resident, made loans to Lighthouse properties located in Missouri.

122. Plaintiff Staywithmi Real Estate LLC, managed by Mimi Truong, an Illinois resident, made loans to Lighthouse properties located in Indiana.

123. Plaintiff Solid Foundation LLC and Plaintiff JustJourney LLC, each managed by Monica Heredia, a Colorado resident, each sue in connection with loans to Lighthouse properties located in Indiana, Kentucky, and Michigan.

124. Plaintiff Stacy M. Carpenter 401K Plan, managed by Stacy M. Carpenter, a Texas resident, made loans to Lighthouse properties located in Indiana and Kentucky.

125.    Plaintiff Stephanie Vasquez, an Arizona resident, made loans to Lighthouse properties located in Kentucky, Michigan, and Missouri.

126.    Plaintiff Steven Tran, individually, and Plaintiff Cliftview LLC, managed by Steven Tran, a Virginia resident, sue in connection with loans to Lighthouse properties located in Missouri.

127.    Plaintiff RAR Horizon LLC, a Wyoming LLC acting at the direction of Horizon Trust Company, custodian FBO Rashmee Sinha IRA, a New York resident (and manager of Plaintiff SummitBridge Wealth Management LLC), sues in connection with a loan to a Lighthouse property in Indiana.

128.    Plaintiff Sunrise Real Estate Solutions LLC, managed by Narcisa Mikov, an Ohio resident, made loans to Lighthouse properties located in Alabama, Indiana, Kentucky, Michigan, Missouri, and Ohio.

129.    Plaintiff Sapphire Solutions LLC, managed by Errin Ford, an Idaho resident, made loans to Lighthouse properties located in Kentucky.

130.    Plaintiff Swift Property Ventures LLC, managed by Augusto Herbel, a resident of Argentina, made loans to Lighthouse properties located in Indiana.

131.    Plaintiff Shellz Solutions LLC, managed by Karina Zavala, a California resident, sues in connection with loans to Lighthouse properties located in Kentucky.

132.    Plaintiff Tall Poppy LLC, managed by Jamie R. Hoth, an Iowa resident, made loans to Lighthouse properties located in Michigan and Missouri.

133.    Plaintiff Ultimate Funding LLC, managed by Viktoriya Koleva, an Arizona resident, made loans to Lighthouse properties located in Indiana, Michigan, and Ohio.

134.    Plaintiff Unify Ventures Inc, managed by Matthew Seth Franklin, a Texas

20

resident, made loans to Lighthouse properties located in Illinois and Indiana.

135.    Plaintiff Van Wehmeyer, a Texas resident, made loans to Lighthouse properties located in Indiana, Kentucky, and Missouri.

136.    Plaintiff VAS22 Solutions LLC, managed by Sandeep C Ramannavar, a California resident, made loans to Lighthouse properties located in Michigan and Ohio.

137.    Plaintiff Vernon Creative Consulting LLC, Plaintiff JBJ 78 Capital LLC, Plaintiff RoJo Capital 25 LLC, and Plaintiff JT Capital 415 LLC, each managed by Solange Gearns, a Florida resident, each sue in connection with loans to Lighthouse properties located in Indiana and Kentucky.

138.    Plaintiff We Fund Solutions LLC and Plaintiff Cedar IRA LLC, each managed by Michael Williamson, a Kentucky resident, each sue in connection with loans to Lighthouse properties located in Kentucky.

139.    Plaintiff William B Short, a Texas resident, made loans to Lighthouse properties located in Indiana.

140.    Plaintiff WIC11 Unlimited LLC and Plaintiff Inspira Financial Trust FBO Deborah Higgins IRA 4221811, each managed by Deborah R. Higgins, a Virginia resident, each sue in connection with loans made to Lighthouse properties located in Alabama, Indiana, and Michigan.

141.    Plaintiff WNY MJA Solutions LLC, managed by Matthew Andersen, a New York resident, made loans to Lighthouse properties located in Missouri and Ohio.

142.    Plaintiff 2MR REI 401K Plan, managed by Marlene Romany, a Florida resident, made loans to Lighthouse properties located in Ohio.

143.    Plaintiff 3 Eagle Brothers Ventures, LLC, managed by Thomas A. Franklin, a

21

Texas resident, made loans to Lighthouse properties located in Illinois.

144.    Plaintiff 4G Creative LLC, Plaintiff 4G Investments LLC, and Plaintiff Rosco Investments LLC, each managed by George Gasaway, an Iowa resident, each sue in connection with loans to Lighthouse properties located in Indiana, Kentucky, Michigan, and Missouri.

## Defendants

### *The Lighthouse Enterprise Defendants*

145.    Defendant Lighthouse Estates LLC ("Lighthouse") is a limited liability company that served as the primary borrower and/or titleholder for numerous subject properties financed with Plaintiffs' funds. Lighthouse operated as a central hub within the fraudulent enterprise and was at different times controlled and managed by Defendants Van Barker, Ariel Mermelshtayn Barker, Joshua James Kennedy, and Curran Barker.

146.    Defendant Starpoint Holdings LLC ("Starpoint") is a limited liability company controlled by Defendants Van Barker and Joshua Kennedy, with ownership interests held through Ceekou LLC. Starpoint, together with Bluestar Capital, served as an operational and financial vehicle within the enterprise, including the pooling and redeployment of investor capital.

147.    Defendant Bluestar Capital LLC ("Bluestar") is a limited liability company used as a reserve and capital-backing entity for the enterprise.  Bluestar is owned in substantial part by Van Barker's father, Brian Barker, and Van Barker's original property company Starpoint Holdings LLC.

148.    Defendant AVS Estates LLC ("AVS") is a limited liability company controlled by Defendants Van Barker, Ariel Barker, and Zheng. AVS held title to and/or borrowed against properties funded by Plaintiffs and was used to conceal the commingling and misuse of lender funds.

22

149.    Defendant Ceekou LLC ("Ceekou") is one of the limited liability companies formed in early 2025 to hold properties that were purchased and purportedly renovated as part of the Enterprise's Ponzi scheme.  Ceekou was originally owned and/or controlled by Defendants Siyuan Zheng and Lighthouse Estates LLC.

150.    Defendant Red Door Legacy LLC ("Red Door") is a limited liability company controlled by Defendants Ariel Mermelshtayn Barker, Van Barker, and Joshua James Kennedy. Red Door held interests in properties financed with Plaintiffs' funds and operated as an additional shell entity within the enterprise structure.

151.    Defendant Taihe Estates LLC ("Taihe") is a limited liability company that served as a borrower and/or titleholder for certain transactions funded by Plaintiffs. Taihe was used to further disperse lender funds and obscure true ownership and control of the financed properties.

152.    Defendant Redwoods Real Estate LLC ("Redwoods") is a limited liability company that held title to and borrowed against properties funded by Plaintiffs, including transactions involving title and escrow Defendants named herein. Redwoods functioned as part of the layered entity structure used to misrepresent lien status and property ownership.

153.    Defendant Estella Management & Transactions LLC ("Estella") was held out by the Lighthouse Enterprise as a limited liability company; however as best Plaintiffs can tell, it is a fictitious business name that was used to extract funds from Plaintiffs' closings under the guise of property-management commissions. Moreover, Estella was paid purported management commissions on uninhabitable, untenanted properties on which no management services were or could be performed and operated as a conduit for the diversion of Plaintiffs' funds.

154.    Defendant Cornelius Consulting, LLC ("Cornelius"), is an LLC reportedly associated with Brad Forman, another member of the Lighthouse Enterprise. On information and

23

belief, Cornelius performed a variety of management and operational work in support of the enterprise's companies and properties and was well paid to do so.

155.    Defendant RPKP Estates LLC ("RPKP") is an anonymously held Wyoming limited liability company that, beginning in or about October 2025, received wire payments, in the thousands of dollars, from nearly every closing on Plaintiffs' loans to Lighthouse entities. Upon information and belief, RPKP is owned in whole or in part by Rianne Estella, who performed property management and book-keeping for the Lighthouse Enterprise, and it is sued here in part on the understanding that Estella was receiving payment of converted funds via Lighthouse's wires to RPKP.

156.    Defendant Wavewell Foundation Inc. ("Wavewell") is a purported non-profit Wyoming non-profit corporation associated with the Lighthouse Enterprise's branding and solicitation operations (including the "GoLighthouse" family of marks), and upon information and belief received or held funds derived from Plaintiffs' loans. If it is found that Wavewell did not do anything other than receive funds from the Enterprise, then it is sued here in the alternative as a nominal defendant.

157.    Defendant GSA DR, LLC is a limited liability company that, upon information and belief, held title to and/or received transfers of funds derived from properties financed with Plaintiffs' funds, and operated as an additional entity within the Lighthouse Enterprise's group of shell entities.

158.    Defendant Horizon View Investments LLC ("Horizon View") is another of the anonymous LLCs formed at Barker's direction and reportedly was involved in holding title to some of the Enterprise's properties.

159.    Defendant Vanguard Haven LLC is a Michigan limited liability company that,

24

upon information and belief, was formed in 2025 to hold title to a particular property that Van Barker was interested in acquiring. After forming the company, Barker persuaded a friend to act as its owner in connection with its acquisition by the Lighthouse Enterprise, in what amounted to a straw man transaction that operated as a fraud on the mortgage lender to the property.

160. Defendant Windmill Properties LLC is a limited liability company that, upon information and belief, held title to and/or received transfers of funds derived from properties financed with Plaintiffs' funds, and operated as an additional entity within the Lighthouse Enterprise's layered structure of shell entities.

161. Defendant ZiraCo LLC is a limited liability company that was used in connection with certain of the Enterprise's property transactions in late 2025.

162. Defendant Van Laurence Barker ("Van Barker" or sometimes "Barker") is an individual who exercised ownership and operational control over the Lighthouse Enterprise generally, from the formation of Lighthouse Estates LLC to this day, despite being incarcerated. Van Barker acted as a principal of the enterprise and directed the acquisition, financing, and disposition of properties funded with Plaintiffs' money.

163. Defendant Siyuan Zheng ("Zheng") is Van Barker's wife. Zheng was used by the Lighthouse Enterprise as the owner of Ceekou LLC and AVS Estates LLC and participated in the management and execution of transactions funded by Plaintiffs, including the routing and commingling of investor funds. Zheng also has knowledge of the Enterprise's handling of money earned by Barker's associates who were engaged in drug trafficking.

164. Defendant Joshua James Kennedy ("Joshua Kennedy") is Barker's friend from their service together in the Army. Kennedy exercised ownership and control over Lighthouse Estates LLC, Starpoint Holdings LLC, and Red Door Legacy LLC and participated in the

25

enterprise's acquisition, financing, and misrepresentation of subject properties.

165.    Defendant Shannon Kennedy is Joshua Kennedy's wife.  Shannon Kennedy was an active operational participant in the Lighthouse Enterprise:  from the start of the enterprise's operations, she was a signatory on certain bank accounts and Lighthouse affiliated companies and knowingly helped Van Barker further the Ponzi scheme that he was leading.  Shannon Kennedy also appears to have also been involved in setting up companies related to property management (including carpet cleaning), which Barker saw as a good way to launder cash and save expenses.

166.    Defendant Ariel Mermelshtayn Barker ("Ariel Barker") is married to Barker's brother Curran Barker.  A. Barker held ownership interests and control positions in Lighthouse Estates LLC, AVS Estates LLC, and Red Door Legacy LLC, and who participated in enterprise decision-making related to property acquisitions and lender communications.

167.    Defendant Curran Barker ("C. Barker") is Van Barker's brother.  C. Barker worked very closely with his brother in managing the Lighthouse Enterprise throughout operations.  C. Barker was fully familiar with its shuffling of cash among its various LLCs, and its habit of re-assigning ownership of those LLCs among different people, depending on whether the LLC was looking for funding or for other reasons.

*The Funding Defendants*

168.    Defendant People's Bank of Lebanon, Kentucky ("People's") is a community bank chartered in and operating from Kentucky, regulated by applicable state and federal banking laws. People's is a subsidiary of King-Harris Bancorp., which is owned by Defendant Ronald J. ("Ronnie") Harris, Jr.  Ronnie Harris also owns and manages People's outside accountants King & Company and serves on People's Bank board of directors.

169.    Defendant Kentucky Private Lending, LLC ("KYPL") is a Kentucky limited

26

liability company with its principal place of business in Louisville, Kentucky. Funded by two of Ronnie Harris' business associates – and, according to Barker – by Harris himself, KYPL was managed by Defendants Aaron Metten and Eric Payne, with the plan of being People's high-volume, hard-money lending affiliate, operating in such a way as to skirt People's obligations under state and federal law to disclose the extent of its lending exposure to KYPL.

170.    Defendant KYPL Holdings 1, LLC ("KYPL Holdings") is a Kentucky limited liability company formed on or about December 10, 2025, by Defendant Eric Payne as a successor lending and portfolio-acquisition vehicle for the Lighthouse loan book.

171.    Defendant Bear Capital, LLC ("Bear Capital") is a Kentucky limited liability company formed on or about July 16, 2025, by Defendant Harris, who listed himself as its registered agent and listed its office as 3400 Dutchmans Lane, Louisville, Kentucky 40205—the same address as People's and King & Company, the bank's accountants. Bear Capital served as the vehicle for a backstop or warehouse credit facility extended to Lighthouse, and beginning in or about October 2025 received approximately $5,000 in wire payments from nearly every closing on Plaintiffs' loans to Lighthouse entities.

172.    Defendant Aaron Metten ("Metten") is an individual and the co-manager of KYPL along with Defendant Eric Payne. Described by Barker as a protégé of Defendant Ronnie Harris, Metten appears to have acted as the main point of contact between Barker and Lighthouse, on the one hand, and Harris and People's, on the other hand.

173.    Defendant Eric Payne ("Payne") is an individual and the co-manager of KYPL along with Defendant Metten. On or about December 10, 2025, Payne became a member and manager of Defendant Red Door Legacy, LLC and formed Defendant KYPL Holdings, which he also managed; Payne was managing the Lighthouse and KYPL portfolio entities at the time of Van

27

Barker's arrest on or about December 17, 2025.

174.    Defendant Ronald J. ("Ronnie") Harris, Jr. ("Harris") is an individual and a certified public accountant who owns People's and its outside accounting firm and serves on the bank's board, with offices at 3400 Dutchmans Lane, Louisville, Kentucky 40205. According to Barker's statements in 2025, Harris holds a 10% profit interest in KYPL, structured as a profit interest rather than a membership interest to avoid scrutiny of his personal interest in KYPL's lending to Lighthouse. Harris formed Bear Capital and, together with Metten, directed the funding decisions described herein.

*The "Transaction Coordinator" Defendants*

175.    Defendant Marcia Donaldson ("Donaldson") is an individual residing at 85030 Majestic Walk Boulevard, Fernandina Beach, Florida 32034.  Donaldson is the sole owner, manager, and principal of both HGV and HG TC, and later transferred her business to Defendant Salty Fox Capital LLC. Donaldson personally solicited Plaintiffs as private money lenders, made personal guarantees to Plaintiffs (e.g., "I will pay you myself if this goes sideways"), and enforced her role as the exclusive liaison between Plaintiffs and borrowers. In September 2025, Donaldson fabricated and transmitted documents via interstate wire to conceal the misappropriation of Plaintiff SummitBridge's funds. On multiple transactions, Donaldson personally prepared the mortgage instruments intended to secure Plaintiffs' investments without disclosing that she, not a licensed attorney, was drafting them.

176.    Defendant Hidden Gems Ventures LLC ("HGV") is a Florida limited liability company with its principal place of business at 7901 4th Street North, Suite 300, St. Petersburg, Florida 33702. At all relevant times, HGV's sole owner was Defendant Marcia Donaldson. HGV operated as the primary marketing, solicitation, and recruitment arm of the enterprise, inducing

28

Plaintiffs to invest by making false and misleading representations through targeted social media campaigns, national real estate investment communities, and direct email outreach. HGV and HGTC shared the same principal place of business, the same toll-free number, and the same website domain family, and operated as a single integrated enterprise under Donaldson's common control.

177.    Defendant Hidden Gems TC Services LLC ("HGTC") is a Florida limited liability company with its principal place of business at 7901 4th Street North, Suite 300, St. Petersburg, Florida 33702, identical to HGV. At all relevant times, HGTC's sole owner was Defendant Marcia Donaldson. While purporting to provide "transaction coordination services," in practice HGTC assumed total control over the closing process, inserting itself as the exclusive communication gatekeeper between Plaintiffs and title companies. HGTC instructed title companies that all communications must flow through it and affirmatively represented that it would obtain and convey lender approval for all disbursements, which was a condition precedent for funding. HGTC then approved disbursements, including undisclosed fees to itself, HGV, and other third parties, including, i.e. Salty Fox Capital LLC, without Plaintiffs' knowledge or authorization.

178.    Defendant Salty Fox Capital LLC ("Salty Fox") is a Florida LLC formed by Donaldson as the Lighthouse Enterprise was collapsing.  On information and belief, Salty Fox is the successor in liability to HGTC and Donaldson's other businesses, and it is sued here on that that successor liability basis.

179.    Defendant Maria Bock ("Bock") is another Transaction Coordinator who joined the work of the Lighthouse Enterprise in mid to late 2025, in addition to Donaldson. Like Donaldson, Bock had one LLC through which she purported to perform professional services related to property transactions, and another LLC that purported to be her personal investment company, and through which she received double-dipping payments from Plaintiffs' loan closings.

29

Among other things, Bock organized the January 6, 2026, Zoom meeting designed to placate furious PMLs regarding the status of their properties. During that meeting Bock made several patently false statements regarding Lighthouse's business, and Plaintiffs' properties.

180.    Defendant Abundant Life TC Services LLC ("Abundant Life") is a limited liability company that is reportedly owned and managed by Defendant Bock. Upon information and belief, Bock used Abundant Life as the company through which she provided her "transaction coordinator" services to the Lighthouse Enterprise and was paid from closings on Plaintiffs' loans.

181.    Defendant Buena Vida Properties, LLC ("Buena Vida") is a Florida limited liability company reportedly owned and managed by Defendant Bock. Upon information and belief, Bock used Buena Vida as her investment company, as she purportedly invested alongside the Plaintiffs.  Records from Plaintiffs' loan closings show that Buena Vida received 'double dipping' wire payments from Plaintiff's loan closings, without Plaintiffs' consent.

182.    Defendant JAL Solutions LLC is a limited liability company that appears to have acted as a finder, "wholesaler," or transaction coordinator within the Lighthouse Enterprise and received undisclosed fees paid from Plaintiffs' closing proceeds without Plaintiffs' knowledge or authorization. Its actual ownership is uncertain.

*The Title Company Defendants*

183.    Defendant True Title Service, LLC ("True Title") is an Indiana-licensed title insurance agent and closing/settlement agent (also appearing in the record as "True Title of Evansville"), with its principal place of business in Evansville, Indiana. Owned and managed by Christopher Carl, True Title served as the closing/settlement agent for 79 Lighthouse transaction(s) funded by Plaintiffs, in Indiana and Illinois.

184.    Defendant Christopher Carl is an Indiana attorney who reportedly owns and

operates Defendant True Title Service, LLC.

185.    Defendant Investors Title Company, Inc. is a Missouri-licensed title insurance agent and closing/settlement agent, with its principal place of business in St. Louis, Missouri. Its title insurance underwriter was Alliant National Title Insurance Company. Investors Title served as the closing/settlement agent for dozens of Lighthouse transaction(s) funded by Plaintiffs.

186.    Defendant Millennial Title, LLC is a Kentucky-licensed title insurance agent and closing/settlement agent, with its principal place of business at 130 St. Matthews Ave., Ste. 300, Louisville, Kentucky. Millennial Title served as the closing/settlement agent for 29 Lighthouse transactions funded by Plaintiffs in Kentucky.

187.    Defendant DHR Properties LLC d/b/a Perpetual Title is a licensed title insurance agent and closing/settlement agent in Kentucky and Ohio with its principal place of business in Louisville, Kentucky. Its title insurance underwriters were First American Title Insurance Company and Fidelity National Title Insurance Company. Perpetual Title served as the closing/settlement agent for 38 Lighthouse transactions funded by Plaintiffs, in Kentucky and Ohio.

188.    Defendant Elite Title, LLC is a Missouri-licensed title insurance agent and closing/settlement agent, with its principal place of business at 12231 Manchester Road, Des Peres, Missouri. Elite Title served as the closing/settlement agent for 54 Lighthouse transactions funded by Plaintiffs, in Missouri.

189.    Defendant First Class Title Agency, Inc. is a Michigan-licensed title insurance agent and closing/settlement agent, with its principal place of business in Southfield, Michigan. Its title insurance underwriter was First American Title Insurance Company. First Class Title served as the closing/settlement agent for 49 Lighthouse transactions funded by Plaintiffs, in Michigan.

190.    Defendant University Title Agency, LLC is a Michigan-licensed title insurance agent and closing/settlement agent, with its principal place of business at 2635 Lapeer Rd., Auburn Hills, Michigan. Its title insurance underwriter was Westcor Land Title Insurance Company. University Title served as the closing/settlement agent for seven Lighthouse transaction(s) funded by Plaintiffs in Michigan.

191.    Defendant Legacy Title & Escrow, LLC is a Missouri-licensed title insurance agent and closing/settlement agent, with its principal place of business in Creve Coeur, Missouri. Its title insurance underwriter was WFG National Title Insurance Company. Legacy Title & Escrow served as the closing/settlement agent for six Lighthouse transaction(s) funded by Plaintiffs, in Missouri.

192.    Defendant Freedom Title LLC is a title insurance agent and closing/settlement agent that served as the closing/settlement agent for five Lighthouse transaction(s) funded by Plaintiffs, in Ohio, Indiana and Missouri.

193.    Defendant Chicago Title Company, LLC is an Indiana-licensed title insurance agent and closing/settlement agent, with its principal place of business in Indianapolis, Indiana. Its title insurance underwriter was Fidelity National Title Insurance Company.  Chicago Title served as the closing/settlement agent for three Lighthouse transaction(s) funded by Plaintiffs, in Indiana.

194.    Defendant Fidelity National Title Company, LLC is a Missouri-licensed title insurance agent and closing/settlement agent, with its principal place of business in St. Louis, Missouri. Fidelity National Title served as the closing/settlement agent for two Lighthouse transactions funded by Plaintiffs in Missouri.

195.    Defendant Title Experts, LLC is a Missouri-licensed title insurance agent and closing/settlement agent, with its principal place of business in St. Louis, Missouri. Title Experts

served as the closing/settlement agent for two Lighthouse transactions funded by Plaintiffs, in Missouri.

196.    Defendant Vision Title, LLC is a Missouri-licensed title insurance agent and closing/settlement agent, with its principal place of business in St. Louis, Missouri. Vision Title served as the closing/settlement agent for two Lighthouse transaction(s) funded by Plaintiffs, in Missouri.

197.    Defendant Continental Title Company is a Missouri-licensed title insurance agent and closing/settlement agent, with its principal place of business in St. Louis, Missouri. Continental Title served as the closing/settlement agent for one Lighthouse transaction funded by Plaintiffs, in Missouri.

*The Underwriter Defendants*

198.    Defendant General Title Insurance Company ("General") is a title insurance underwriter organized under the laws of Ohio. General Title Insurance Company underwrote title insurance policies issued in connection with 141 Lighthouse closings funded by Plaintiffs – many of them closed by True Title.  As the underwriter, General Title Insurance Company was obligated, in the states requiring it (Indiana and Missouri) or requiring that it be offered (Ohio), to issue or offer closing protection letters to Plaintiffs, and is liable for its policy-issuing agents' failure to do so and for the conduct of those agents within the scope of their agency.

199.    Defendant First American Title Insurance Company is a title insurance underwriter organized under the laws of California. First American Title Insurance Company underwrote title insurance policies issued in connection with 69 Lighthouse closings.  As the underwriter, First American Title Insurance Company was obligated, in the states requiring it (Indiana and Missouri) or requiring that it be offered (Ohio), to issue or offer closing protection letters to Plaintiffs, and is liable for its policy-issuing agents' failure to do so and for the conduct

of those agents within the scope of their agency.

200.    Defendant Essent Title Insurance, Inc. is a title insurance underwriter organized under the laws of Pennsylvania.  Essent Title Insurance, Inc. underwrote title insurance policies issued in connection with 24 Lighthouse closings funded by Plaintiffs.  As the underwriter, Essent Title Insurance, Inc. was obligated, in the states requiring it (Indiana and Missouri) or requiring that it be offered (Ohio), to issue or offer closing protection letters to Plaintiffs, and is liable for its policy-issuing agents' failure to do so and for the conduct of those agents within the scope of their agency.

201.    Defendant Westcor Land Title Insurance Company is a title insurance underwriter organized under the laws of California.  Westcor Land Title Insurance Company underwrote title insurance policies issued in connection with 11 Lighthouse closings funded by Plaintiffs. As the underwriter, Westcor Land Title Insurance Company was obligated, in the states requiring it (Indiana and Missouri) or requiring that it be offered (Ohio), to issue or offer closing protection letters to Plaintiffs, and is liable for its policy-issuing agents' failure to do so and for the conduct of those agents within the scope of their agency.

202.    Defendant WFG National Title Insurance Company is a title insurance underwriter organized under the laws of South Carolina.  WFG National Title Insurance Company underwrote title insurance policies issued in connection with seven Lighthouse closings funded by Plaintiffs. As the underwriter, WFG National Title Insurance Company was obligated, in the states requiring it (Indiana and Missouri) or requiring that it be offered (Ohio), to issue or offer closing protection letters to Plaintiffs, and is liable for its policy-issuing agents' failure to do so and for the conduct of those agents within the scope of their agency.

203.    Defendant Stewart Title Guaranty Company is a title insurance underwriter

organized under the laws of Texas. Stewart Title Guaranty Company underwrote title insurance policies issued in connection with eight Lighthouse closings funded by Plaintiffs. As the underwriter, Stewart Title Guaranty Company was obligated, in the states requiring it (Indiana and Missouri) or requiring that it be offered (Ohio), to issue or offer closing protection letters to Plaintiffs, and is liable for its policy-issuing agents' failure to do so and for the conduct of those agents within the scope of their agency.

## STATEMENT OF FACTS

### Overview of the Lighthouse Enterprise

204.    Defendant Lighthouse was formed in late 2023 by Defendant Van Barker and his fellow veteran, Defendant Joshua Kennedy, with the stated goal of using high-interest, short-term loans to buy, renovate, and refinance or sell residential properties in and around Louisville.

205.    As Lighthouse's business grew, it developed a relationship with KYPL, which was keen to pursue an aggressive plan of buying, renovating, and renting residential properties using short-term, high interest loans that would be refinanced once the renovation work was completed.

206.    As Lighthouse came to understand KYPL's business model – in which KYPL assigned its loans to People's upon the closing of each of those loans, Barker, Kennedy, and his sister Ariel began a program of forming additional LLCs, so that it would appear to the Bank's personnel that KYPL's loans were being made to a variety of different borrowers, instead of to the same, single borrower. These other LLCs were helpful in moving assets off Lighthouse's own balance sheet, so that it could appear to be profitable when in fact it was simply shifting its losses to its affiliates. By June 2025, Lighthouse's affiliated LLCs included Defendants AVS Estates LLC, Ceekou LLC, and Red Door Legacy, LLC. Barker considered these LLCs fungible; at one point Barker told his employees that they were, collectively, the owners of all the LLCs.

35

207. By June 2024, Lighthouse was closing purchases with loans by some of the Plaintiffs herein – and it was already using portions of those loans to pay tens of thousands of dollars to self-styled "Transaction Coordinators" and to businesses known as "wholesalers", who would transfer contracts to purchase properties to Lighthouse for tens of thousands of dollars in fees. Lighthouse was able to make those payments without Plaintiffs' knowledge or consent because it deliberately chose escrow agents and title companies who closed transactions that identified Plaintiffs as the lender, without obtaining the lenders' consent.

208. From early 2024 through December 2025, Lighthouse conducted over 450 closings on Plaintiffs' loans without a power of attorney, without any specific lender's closing conditions or instructions, and without the lender's signature on any settlement statement.

209. Plaintiffs were told at the time that the Transaction Coordinators were handling the closings on their behalf, and that they were protected by their joint venture agreements with the Barker and the other Lighthouse principals. When Plaintiffs asked for closing statements – as they did, with increasing urgency as months went by – and questioned the expenses on the closing statements they were given, they were given the typical excuses and assured that any concerns would be fairly addressed and adjusted.

210. Lighthouse's business model depended on refinancing or selling its properties for prices or at values high enough to turn a profit. That never happened. Instead, Lighthouse consistently failed to make a profit on its business model and continued to lose more money as it worked its way through its portfolio of dilapidated properties.

211. At first, the losses from Lighthouse's property business were not as much of a problem for Barker as one might expect: among his other business interests, Barker was also associated with persons who engaged in the interstate trafficking of illegal drugs – to the point

36

where Barker and his wife Zheng kept track of his associates' drug trafficking revenue as a part of Lighthouse's business records. Barker even joked with his family and friends about using Lighthouse's property business to launder the cash generated by that business.

212.    By early July 2025, however, KYPL and People's knew that Lighthouse was not renovating and refinancing or selling its properties quickly enough, or for high enough prices. Yet instead of winding down their loans, or forcing Lighthouse itself to restructure, People's responded to this bad news by agreeing to directly extend credit to Lighthouse, in the form of a credit facility or backstop loan of about $1.5 million, which – as Barker himself boasted at the time – was intended to allow Lighthouse so to continue to attract purchase money financing from PMLs such as the Plaintiffs.

213.    The public record shows that Harris was personally involved in People's decision to help bail out Lighthouse in mid-2025. On July 16, 2025, Harris himself formed Defendant Bear Capital, LLC, listing himself as its registered agent, and listing its office as the same address as his bank and accounting firm (3400 Dutchmans Lane, Louisville, KY 40205). Bear seems to have been the vehicle for People's backstop credit facility for Lighthouse.

214.    At the time, Barker told several PMLs that People's had loosened its underwriting rules for Lighthouse's loans at this time, allowing it to transact more quickly. Barker and his staff also told Plaintiffs at this time that Lighthouse itself was revising its strategy, shifting its business model from major renovations to minor 'fix and flip' transactions. In practice, however, these program changes in July 2025 simply made it easier for Lighthouse to use even more of the proceeds of new Plaintiffs' loans to pay off debts owed to KYPL and make payments to other Lighthouse affiliates – including payments nearly every week of $1,000 or more to Bluestar Capital, LLC (owned by Van Barker's father, Brian Barker) starting in July 2025.

37

215.    Notably, the amount of People's July 2025 credit line – reportedly $1.5 million – is about the maximum amount that the bank was allowed to loan to any one borrower, under Kentucky's banking regulations that prohibit banks for having too much exposure to any one borrower.  Moreover, Barker's pitch to the PMLs in July 2025 indicates that he was aware of the tight cap on People's lending limits:  Barker told PMLs that they should each open accounts at People's, as a kind of show of confidence and a way of earning the bank's goodwill for Lighthouse.  That particular pitch seems odd at first, to be sure – but it makes perfect sense if Barker had just been told that the bank's small amount of capital limited what People's could loan to Lighthouse - and that every additional dollar on deposit with the bank would increase the amount that the bank could lend him.

216.    Beginning in October 2025, Bear Capital received $5,000 wire payments from almost every closing on Plaintiffs' loans to a Lighthouse entity.  Around this same time, nearly every one of Plaintiffs' closings included a wire payment to an anonymous Wyoming LLC called RPKP Estates LLC, which Plaintiffs are reliably informed, and believe, to be closely related to the managers of the Lighthouse Enterprise.

217.    By November 2025, Lighthouse's business had continued to deteriorate.  This time, KYPL and People's discussed a restructuring.  According to Barker, he worked out a merger agreement with Metten of KYPL and Harris, for the bank, whereby KYPL would take over Lighthouse's portfolio and split itself into five or more new companies, each in a different state (*i.e.*, Ohio Private Lending LLC, Indiana Private Lending LLC, Missouri Private Lending LLC.  Coincidentally, one of KYPL's major investors – a private investor based in Texas – recently announced the opening of Texas Private Lending, LLC).

218.    The specifics of this agreement are not known, but again Barker's comments seem

38

to be reflected in public records, which show that on Dec. 10, 2025, Eric Payne (Metten's operating partner in KYPL) became a member and manager of one of Lighthouse's key alter egos (Red Door Legacy, LLC) – *and* he formed KYPL Holdings, naming himself the manager.  As a result of these moves, a large chunk of the Lighthouse Enterprise's properties were put under the management of KYPL – and they remained there through Van Barker's arrest on December 17, 2025, and through January 6, 2026, when (after a frank admission by Defendant Kennedy that Lighthouse's business model was, in fact, a Ponzi scheme) Lighthouse sent out a short email stating that the business had no more funds to continue operating, and was shutting down.

## CLAIMS FOR RELIEF

### COUNT I:  CIVIL RICO (18 U.S.C. §§ 1962, 1964)
(Against all Defendants other than the Title Company and Underwriter Defendants)

219.    Plaintiffs repeat and incorporate the allegations in the preceding paragraphs as if set forth fully herein.

### Additional RICO Allegations Regarding the Lighthouse Enterprise and its Members

220.    The "Lighthouse Enterprise" was an "association-in-fact" enterprise within the meaning of 18 U.S.C. § 1961(4), comprised of the three main Lighthouse companies (Lighthouse Estates LLC and its two internal funding companies, Starpoint Holdings LLC, and Bluestar Capital LLC), and the array of alter ego LLCs formed in 2024 and 2025 (AVS Estates LLC, Ceekou LLC, Red Door Legacy LLC, Redwoods Real Estate LLC, Taihe Estates LLC, Estella Management & Transactions LLC, Cornelius Consulting, LLC, GSA DR, LLC, Horizon View Investments LLC, RPKP LLC, Sapphire Ridge Estates LLC, Vanguard Haven LLC, Wavewell Foundation Inc., Windmill Properties LLC, and ZiraCo LLC.  These companies constituted an. The Enterprise was a group of individuals and legal entities associated together for the common purpose of carrying

on an ongoing fraudulent course of conduct.

221.    The Lighthouse Enterprise was engaged in, and its activities affected, interstate and foreign commerce. It solicited investments from and directed communications to Plaintiffs in New York and other private money lenders across the country; acquired and purported to renovate properties in multiple states, including Indiana, Ohio, Kentucky, Alabama, and Missouri; and utilized interstate wires, including email, social media platforms, and banking systems, to execute its fraudulent scheme.

222.    The members of the Lighthouse Enterprise shared the common purpose of enriching themselves by fraudulently inducing Plaintiffs and other PMLs to invest in a purported real estate business, and then misappropriating and commingling investor funds in a Ponzi-like scheme to pay earlier investors, cover operating shortfalls, and fund their own personal and business interests.

223.    The Lighthouse Enterprise had an ascertainable structure with defined roles, which persisted over time. The Lighthouse Defendants, led by V. Barker and Kennedy, controlled the borrower entities and directed the overall scheme.

### The Funding Defendants' Decision to Conspire with the Enterprise

224.    The "Funding Defendants" are an association-in-fact of the persons and companies who agreed, no later than July 2025, to enter into an agreement and conspiracy with the Lighthouse Enterprise to allow it to continue its pattern of fraudulent property transactions.  The Funding Defendants" are comprised of Defendants KYPL, KYPL Holdings, Bear Capital, Metten, Payne, Ronnie Harris, Jr., and People's Bank of Lebanon.

### The Transaction Coordinator Defendants' Participation in the Enterprise

225.    Each Transaction Coordinator Defendants played an essential role in the RICO enterprise's operations: after each of the Plaintiffs' closings, the Transaction Coordinator

Defendants either did not sent a copy of the closing file, as they were obligated to do, or they transmitted closing packages to Plaintiffs that systematically and intentionally omitted the settlement statements and escrow ledgers. This conduct (whether intention or not) ensured Plaintiffs received evidence of their purported security interest (e.g., a promissory note or mortgage) while being kept ignorant of the fact their money had been misappropriated at closing. But for the Transaction Coordinators' false confirmations of lender approval and its concealment of the settlement statements, the Title Defendants would not have disburse

226.   The Transaction Coordinator Defendants also played an essential role in the Enterprise's use of multiple shell companies and commingled assets by themselves commingled Plaintiffs' funds – which they often asked to be wired directly to them, and not the title companies. The Transaction Coordinator Defendants also worked hand in hand with Barker and Lighthouse to use incoming funds used to pay prior investors rather than for the designated properties, a hallmark of a Ponzi scheme.

227.   In the alternative, if it is found that either Donaldson and Bock were not intentional participants in the Lighthouse Enterprise's operations, then they (and their respective LLCs), were negligent and failed to exercise due diligence or anything resembling a reasonable duty of care.

228.   The actions and role of the Transaction Coordinators is illustrated by Hidden Gems Ventures LLC ("HGV"), though Maria Bock and her wholly owned companies engaged in the same conduct, on a smaller scale. HGV, controlled by Donaldson, induced Plaintiffs and other private money lenders nationwide to invest in the Lighthouse Enterprise. For example, on December 10, 2024, HGV, through its agent and an associate of Donaldson, published a post on Facebook announcing a partnership with Starpoint Holdings. This post, which identified Donaldson by name, was targeted at prospective private money lenders and falsely represented that: (a)

41

Starpoint had a "reputation for renovating homes and repaying lenders ahead of schedule"; (b) lenders would receive "1st liens"; and (c) loans would have "6-month terms with 15–20% returns."

229.    Each of these representations was false at the time Plaintiffs invested and contracted with HGV.  When HGV made these representations, it either knew or recklessly disregarded their falsity.

230.    HGV also served (either intentionally or unwittingly) as a primary vehicle for transmitting the RICO defendants' predicate acts of wire fraud.  For example, on August 27, 2025, Donaldson transmitted a mass email to the HGV investor network, including Plaintiffs, promoting a fraudulent "Secure, High Yield Banking Opportunity for Our Network." This email falsely represented that funds deposited would be "not used in deals," remain "100% available," and earn an annualized return of approximately 10%. These representations were made to solicit new capital to perpetuate the insolvent Enterprise.

231.    HGV continued to transmit fraudulent "lulling" communications to suppress lender inquiry as the Enterprise collapsed. On October 28, 2025, and again on December 10, 2025, Donaldson sent emails from her HGV email address to the investor network. These emails were designed to project stability by announcing new hires, citing fabricated performance metrics like "$500,000 in assets per week" being refinanced, and explaining away significant repayment delays as "purely administrative," when the Enterprise was insolvent and Plaintiffs' funds were unrecoverable.  Thus HGV's actions were a direct and proximate cause of Plaintiffs' decision to invest and their subsequent financial losses.

232.    In practice, and violation of the contractual agreements executed with Plaintiffs, HGTC controlled the closing process for many of the Plaintiffs' transaction funded by Plaintiffs. HGTC systematically inserted itself as the exclusive communication gatekeeper between Plaintiffs

42

and the Title Defendants.  Specifically, in standardized opening emails to title companies for transactions funded by Plaintiffs, HG TC issued the verbatim instruction: *"We will be your point of contact and request all communication goes through us. Please do not reach out to the Funding Partners; we will provide any details you may need."*

233.    By enforcing this communication blockade, HGTC ensured Plaintiffs were completely excluded from the closing process. *Plaintiffs were never provided with a settlement statement to review or approve prior to the disbursement of their funds*. They were not asked to sign closing documents, and they never spoke directly to the Title Defendants handling their funds. Instead, HGTC directed and approved the disbursement of Plaintiffs' funds for purposes that were undisclosed, unauthorized, and inconsistent with their lending agreements, such as:

a) Substantial assignment fees to undisclosed entities, such as a $55,000 fee to "Lab LLC" that consumed the entirety of one of SummitBridge's loans, and a $55,000 assignment fee on another loan, to "WTO Investors Group LLC";

b) Payoffs to prior lenders that were not disclosed in Plaintiffs' transaction documents;

c) Fictitious commissions to related entities, such as fees to "Estella Management LLC" on uninhabitable properties where no property management function was performed;

d) Numerous $5,000 transaction fees to Defendant Starpoint, as well as $5,000 payments to Defendant Bear Capital LLC.

e) Payment of dual invoices on the same closing for both HG TC and HGV, also without Plaintiff's knowledge or consent.

234.    Donaldson extended her personal control beyond solicitation and into the legal execution of the transactions.  On multiple transactions funded by Plaintiffs, Donaldson personally prepared the mortgage instruments intended to secure their investments. She did so without disclosing that she, rather than a licensed attorney, was drafting these crucial legal documents. Donaldson concealed her unauthorized role by falsifying the "prepared by" field on certain

43

recorded mortgages arising from Plaintiff transactions.

235.    As early as June 27, 2025, Donaldson had direct knowledge that Plaintiffs' funds were being misappropriated by the Lighthouse Enterprise. On that date, Defendant Barker emailed a title company—copying Donaldson at both her HGV and HG TC email addresses—stating that a closing was an "equity rollover" and the borrower would receive funds "'notionally,' not via actual wire." Barker conditioned the deal on Donaldson's confirmation, which she provided.

236.    Every fraudulent solicitation, lulling communication, and act of concealment directed at Plaintiffs in New York was personally orchestrated, executed, or ratified by Donaldson through interstate wires (email, social media, and text messages), providing a basis for personal jurisdiction. She has not repaid Plaintiffs or honored her personal guarantees.

237.    Each of the above groups of defendants (Barker's core management team, the Funding Defendants, and the Transaction Coordinator Defendants), and all of them severally, conducted or participated, directly or indirectly, in the conduct of the Lighthouse Enterprise's affairs through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1) and in violation of 18 U.S.C. § 1962(c) and (d).  The Lighthouse Enterprise was operated for a common purpose, with business relationships, existing sufficiently long enough to pursue the purpose of defrauding PMLs and Plaintiffs. The Lighthouse Defendants conducted and/or participated, directly and/or indirectly, in the conduct of an enterprise's affairs to a certain degree of control and direction.

238.    The pattern of racketeering activity consisted of numerous, repeated predicate acts, including but not limited to wire fraud (18 U.S.C. § 1343) and money laundering (18 U.S.C. § 1957). These acts were related and continuous, from at least June 2024 through December 2025, and would have continued indefinitely beyond then but for Barker's arrest.  The pattern of predicate acts was related to each other, as they shared the same purposes (to induce investment

and conceal the fraud), victims (Plaintiffs and other PMLs), and methods of commission (use of interstate wires to make material misrepresentations), and involved the same core participants.

239. The Lighthouse Enterprise Defendants' consciousness of guilt is shown by the events right after Barker's arrest:  In early January 2026, the Lighthouse Defendants abruptly deactivated social media accounts, suspended access to professional websites, ceased communications, and blocked access to internal records, evidencing consciousness of guilt and risk of asset dissipation.

240. Plaintiffs began reaching out in desperation to other Lighthouse PMLs to figure out whether their life savings were gone. A private Facebook chat group quickly formed, revealing that lender after lender had been left in the dark and abandoned, most notably by Defendant Donaldson, who had suddenly vanished from the very network she had helped build and promote.

241. In a scramble to contain what had become widespread panic over massive, unrepaid principal, Lighthouse brought in Defendant Maria Bock to stage-manage a Zoom meeting on January 6, 2026, designed to placate furious PMLs and preserve "buy-in," rather than to candidly disclose just how dire the situation truly was. Shortly before that meeting, Defendant Kennedy circulated a written statement that amounted to a stunning admission that Lighthouse had been operating on a Ponzi- like chassis. Kennedy acknowledged that:

> Our BRRR strategy became constrained when DSCR takeout financing slowed significantly and underwriting timelines expanded. Properties that were intended to refinance quickly remained unfinished or overleveraged longer than planned.
>
> In mid-2025, we attempted to solve this through institutional DSCR financing via People's Bank, introduced by KPL. While promising, the process was slow and underwriting intensive and it did not produce liquidity fast enough to meet short-term obligations.
>
> To bridge that gap, a temporary system evolved where KPL and PML loans were effectively recycled internally. Operating costs and debt service were all supported by retained capital being rolled forward into new transactions. That system only

works when inflows remain uninterrupted.

242. In short, this is the rare RICO case in which one of the main defendants admitted, just as their scheme fell apart, that they had been running a Ponzi scheme all along. No wonder, then, that on January 6, 2026, the Lighthouse Defendants informed Plaintiffs and 100 other PMLs over a Zoom call that they would not honor personal guarantees or promissory notes requiring prompt return of funds to Plaintiffs.

243. As a result of the actions of each of the above groups of defendants, Plaintiffs suffered concrete financial loss by reason and proximate cause of the operation of the Lighthouse Enterprise, in amounts to be determined at trial.

## COUNT II: FRAUD

(In the Alternative to Count I; Against the same Defendants)

244. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

245. Each of the Defendants in the RICO claim in this action (Count I) knowingly made false statements and omissions of material fact, intending Plaintiffs' reliance.

246. Plaintiffs justifiably relied on the Lighthouse Defendants' representations and were damaged thereby.

247. Plaintiffs' reliance was a substantial factor in causing actual harm and damages, in amounts to be determined at trial.

## COUNT III: NEGLIGENCE/FAILURE TO SUPERVISE

(Against the Transaction Coordinator Defendants, in the Alternative to Fraud;
Against the Title Company Defendants; and
Against the Underwriter Defendants)

46

248.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

249.    The relief sought herein is the result of a compound series of lapses, in which each of three sets of Defendants' each directly and proximately caused Plaintiffs' losses.  Specifically: if the Transaction Coordinators or the Title Defendants had done their job property, Plaintiffs would not have incurred the losses they did. If the Underwriter Defendants had properly supervised their agents or complied with the own obligation (in several states) to issue Closing Protection Letters, Plaintiffs would not have suffered the losses they did or would have already been compensated for those losses.  Taking each group in turn:

*The Transaction Coordinators' Negligence*

250.    Specifically, the Transaction Coordinator Defendants, and each of them, undertook to provide professional transaction coordination services in connection with the closings funded by Plaintiffs. By assuming this role and exercising control over the closing process, they owed Plaintiffs a duty to exercise the reasonable care and competence expected of professionals in their field.

251.    The Transaction Coordinator Defendants' obligations included, but were not limited to, the duties to provide Plaintiffs with all closing documents for review, including settlement statements; obtain Plaintiffs' informed consent prior to authorizing disbursements; accurately communicate Plaintiffs' instructions and approval status to title companies; and refrain from approving unauthorized or undisclosed disbursements inconsistent with Plaintiffs' lending agreements.

252.    The Transaction Coordinator Defendants breached their duties to Plaintiffs through numerous acts of negligence, gross negligence, and professional malfeasance, including:

47

a.  Systematically excluding Plaintiffs from the closing process and instructing title companies not to communicate with them.

b.  Failing to provide Plaintiffs with settlement statements for review and approval prior to closing.

c.  Falsely representing to the Title Defendants that Plaintiffs' approval for disbursements had been obtained when it had not.

d.  Authorizing and directing numerous disbursements of Plaintiffs' funds that were undisclosed, not authorized by Plaintiffs' lending agreements, and which diverted funds to themselves and other third parties.

e.  Defendant Donaldson's unauthorized practice of law in preparing mortgage instruments intended to secure Plaintiffs' loans and her falsification of the "prepared by" field to conceal her actions.

253.    As a direct result of the Transaction Coordinator Defendants' negligent acts, errors, and omissions in the performance of their services, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $20 million.

*The Title Defendants' Negligence*

254.    As for the Tile Defendants, each of them, as escrow and closing agents, owed Plaintiffs a duty to act as a neutral stakeholder, to handle Plaintiffs' funds with reasonable care, to ensure that liens securing Plaintiffs' investments were properly recorded, and – as required by one of the most basic rules of any escrow agent – to disburse funds *only* in accordance with the lender's authorization.

255.    Each Title Defendant breached their duty of care to the Plaintiffs by, among other things, facilitating the improper disbursement of Plaintiffs' funds in reliance on the unverified representations of HGTC, failing to communicate directly with the lenders whose funds they held in escrow, failing to ensure the proper recording of liens, and processing transactions containing material irregularities without obtaining direct confirmation from Plaintiffs.

256.    Indeed, the Title Defendants *consistently* failed to honor their obligations to the

48

lenders in each of their closings.  Without any power of attorney, and without any lender's closing instructions, the Title Defendants simply did whatever the Transaction Coordinators told them to do – even when doing so meant that the title companies sent out thousands of dollars of wire payments to the Transaction Coordinators themselves (often in double-dipping wires – i.e, a $2,000 wire to Maria Bock's TC company's account, and another $2,000 wire to Bock's "ventures" account, from the same closing.

257.    As a direct result of the Title Defendants' negligent acts, errors, and omissions in the performance of their services, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $20 million.

*The Underwriter Defendants' Negligence*

258.    The Underwriter Defendants each had a duty to ensure that their issuing agents following their own legal obligations and did not misrepresent the insurance that the agents were issuing to the Plaintiffs.  The Underwriter Defendants in Indiana, Missouri, and Ohio each also had their own, direct obligations to either issue, or offer to issue, Closing Protection Letters to the Plaintiffs.

259.    Given the facts set forth above regarding the chronic shortcomings in the closings the Title Defendants carried out for the Plaintiffs, the Underwriter Defendants breached their duty to supervise their issuing agents, in each of those closings.  The Underwriter Defendants also breached their own duties – clearly stated in the insurance codes of Indiana, Missouri, and Ohio – to either issue, or offer to issue, Closing Protection Letters to the Plaintiffs.

260.    But for that negligent conduct of each of the Underwriter Defendants in each of the Plaintiffs' loan closings, Plaintiffs would either have avoided the losses complained of herein or would have already been compensated for them. Thus, as a direct result of the Underwriter

49

Defendants' negligent acts, and omissions in the performance of their services, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $20 million.

### COUNT IV: CONVERSION AND ACCOUNTING/ BREACH OF JOINT VENTURE AGREEMENT

(Against the Title Defendants and the Joint Venture Agreement Signatories: Van Barker, Ariel Barker, Siyuan Zheng, Curran Barker, Josh Kennedy, Marcia Donaldson, and Maria Bock)

261.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

262.    A key inducement offered by the Lighthouse Enterprise to prospective lenders was that each of the borrower's purported members and managers, and one of the Transaction Coordinators, would sign a "Joint Venture Agreement" with the lender.  And indeed, all or nearly all of the Plaintiffs' loans included such a Joint Venture Agreement, typically signed by two or three Lighthouse managers (Van Barker, Ariel Barker, Siyuan Zheng, Curran Barker, and/or Josh Kennedy), and also Donaldson or Bock, or one of their associates, on behalf of their "TC" entity.

263.    By agreeing to provide services pursuant to a joint venture agreement, each signatory to that agreement obligated themselves to fully account for any joint venture funds they used, for whatever purpose, in a fiduciary accounting under the relevant state's joint venture or partnership law.

264.    Each joint venture signatory also became liable for conversion of any joint venture funds, for any purpose or person other than what was authorized by the joint venture agreement.

265.    Similarly, and in the alternative to liability for negligence under Count III, each of the Title Defendants may be held liable under state law for conversion of any funds entrusted to the Title Defendant that were transferred to any unauthorized recipient or used for any unauthorized purpose.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs  respectfully  request that a jury fund in Plaintiffs favor on

each of the above claims, and that the Court enter judgment in the following amounts:

A. On the First cause of action: an award of all of each Plaintiffs' actual damages, trebled as provided for under federal law, with interest thereon, plus an award of fees and costs;

B. On the Second cause of action: an award of all of each Plaintiffs' actual damages, calculated to include "benefit of the bargain" damages in the states where such damages are recoverable, and exemplary damages as may be permitted by state law, with costs, fees and interest thereon as permitted by state law;

C. On the Third cause of action: an award of all of each Plaintiffs' actual damages, calculated to include "benefit of the bargain" damages in the states where such damages are recoverable, together with costs, fees and interest thereon as permitted by state law;

D. On the Fourth Cause of Action, for the return of all property of the joint venture that is found to have been unlawfully conveyed or wasted, with interest thereon, and for an accounting of all of the joint venture's assets;

E. Together with such other and further relief as may be permitted based on the evidence adduced at trial – including evidence of any criminal conversion, or of actionable bad faith by any Underwriter Defendant; together with the costs of this action, attorneys' fees, and such other relief as the Court deems just.

Dated:  New York, NY
       June 22, 2026

HAYES & SCHANZER LLP
*Attorneys for Plaintiffs*

By:  *Andrew W. Hayes*
     Andrew W. Hayes, Esq.
     43 West 43rd St., Suite 195
     Tel. (917) 770-018
     ahayes@hayesschanzer.com

51