UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| CRYSTAL CERVANTEZ-TKAC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3:26-cv-280-CHB |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| VAN LAURENCE BARKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on several motions. Plaintiffs have filed a Motion for Appointment of an Equity Receiver, [R. 9]; a Motion for Leave to File Supplement to Motion for Appointment of Receiver, [R. 13]; a Motion to File Exhibits A and B to Plaintiffs' Supplement to Motion for Appointment of an Equity Receiver Under Seal, [R. 14]; an Emergency Motion for Expedited Hearing, [R. 18]; a Motion to Certify a Class as to Defaulted Defendants Lighthouse Estates LLC and Starpoint Holdings LLC, [R. 23]; and a Motion for Clerk's Entry of Default Against Defendants Lighthouse Estates LLC and Starpoint Holdings LLC, [R. 24]. However, on May 15, 2026, the Court became aware of a related matter via a letter received from attorney Andrew W. Hayes, counsel for plaintiffs in the related lawsuit in the Eastern District of New York, *Summitbridge Wealth Mgmt., LLC v. Lighthouse Estates, LLC*, No. 2:26-cv-00141 (JMA) (ST)), (hereafter, the *Summitbridge* matter). *See* [R. 20]. The Court ordered Plaintiffs' counsel to respond to certain legal issues raised in the letter, including whether this matter should be stayed under the "first-to-file" rule, [R. 19], and a response has been filed. [R. 21]. Defendants were also afforded an opportunity to respond, but they have not yet appeared in this case and did not file a response. For the reasons set forth below, the Court will stay this matter pursuant to the first-to-file rule.

The Sixth Circuit has described the first-to-file rule as "a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). The rule "provides that, 'when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should *generally* proceed to judgment.'" *Id.* (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,* 511 F.3d 535, 551 (6th Cir. 2007) (citation modified). As such, the first-to-file rule "encourages comity among federal courts of equal rank." *Id.* (quoting *Zide Sport Shop of Ohio v. Ed Tobergte Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)) (internal quotation marks omitted); *see also Mack Industries of Kalamazoo, LLC v. J3 Engineering Group, LLC*, No. 1:18cv1806, 2018 WL 5994968, at *3 (N.D. Ohio Nov. 15, 2018) ("The first-to-file rule 'is a well-established doctrine that encourages comity among federal courts.'" (quoting *Certified Restoration*, 511 F.3d at 551)). The rule "also conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results." *Baatz*, 814 F.3d at 789 (citation omitted). A court may raise this rule sua sponte. *Mack Industries*, 2018 WL 5994968, at *4 (citations omitted).

To determine whether the first-to-file rule applies, courts within the Sixth Circuit "generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz*, 814 F.3d at 789 (citation omitted). The Sixth Circuit has also explained that, "[i]f these three factors support application of the rule, the court must also determine whether any equitable considerations, such as evidence of 'inequitable conduct, bad faith, anticipatory suits, [or] forum shopping,' merit not applying the first-to-file rule in a particular case."[1] *Id.* (quoting *Certified Restoration Dry Cleaning Network*,

---

[1] Some courts describe these equitable considerations as an additional element or factor. *See Mack Industries*, 2018 WL 5994968, at *3.

511 F.3d at 551–52); *see also Mack Industries*, 2018 WL 5994968, at *4. However, "[t]he rule is not strict, and district courts have discretion to rely on it when equity demands." *Mack Industries*, 2018 WL 5994968, at *3 (citation omitted).

As for the first factor, the chronology of events, "[t]he dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed." *Id.* at 790. The record is clear, and Plaintiffs do not disagree, that the *Summitbridge* matter was filed on January 9, 2026, while the present action was filed several months later, on April 17, 2026. *See* [R. 1]; [R. 21, p. 17 ("Summitbridge was filed January 9, 2026; this action was filed April 17, 2026. Plaintiffs do not contest the bare chronology.")]. Nevertheless, when discussing this first factor, Plaintiffs emphasize that the *Summitbridge* matter is "a two-plaintiff individual action," not a putative class action like the present matter (which currently has only two named plaintiffs). [R. 21, p. 17]. The Court notes, however, that the *Summitbridge* matter now involves well over one-hundred-fifty plaintiffs. *See Summitbridge*, No. 2:26-cv-00141 (JMA) (ST), at R. 101. Regardless, Plaintiffs fail to explain how or why this fact has any effect on the first factor, the chronology of events, which asks only when the relevant complaints were filed. *See Baatz*, 814 F.3d at 790 (noting that this "factor simply asks which of the two overlapping cases was filed first"); *Hubbard v. Papa John's International, Inc.*, NO. 5:19-CV-22-TBR, 2019 WL 6119242, at *3 (explaining that jurisdictional issues are not considered as part of the first factor and instead, this factor asks only which of the two overlapping cases was filed first). As such, and given that the *Summitbridge* matter was clearly filed first, the Court finds that this factor weighs in favor of applying the first-to-file rule.

The Court next considers the similarity of the parties. As the Sixth Circuit has explained, "[t]he first-to-file rule applies when the parties in the two actions 'substantial[ly] overlap,' even if they are not perfectly identical." *Id.* (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947,

- 3 -

950–51 (5th Cir. 1997)). Plaintiffs acknowledge that the parties in the two cases overlap partially, and they "do not contest that this factor cuts somewhat" in favor of applying the first-to-file rule. [R. 21, p. 19]. Their position appears to be that only two defendants in the present action, Lighthouse Estates LLC and Starpoint Holdings LLC, are named in the *Summitbridge* matter, and the plaintiffs in the *Summitbridge* matter are not parties to this case. *Id.* This is incorrect. To be clear, the record in the *Summitbridge* matter makes clear that each of the defendants in the present matter—that is, Van Laurence Barker, Joshua James Kennedy, Siyuan Zheng, Lighthouse Estates LLC, and Starpoint Holdings LLC—are named as defendants in the *Summitbridge* matter, and indeed, were named in the original complaint, filed January 9, 2026. *See Summitbridge*, No. 2:26-cv-00141 (JMA) (ST), at R. 1, R. 101. The Court therefore finds the parties in these two actions substantially overlap. As such, this second factor weighs in favor of applying the first-to-file rule.

The third factor focuses on the "similarity of the issues or claims at stake." *Baatz*, 814 F. 3d at 791. As with the second factor, this factor requires only that the issues in the two cases "substantially overlap." *Id.* (citations omitted). Thus, while "[t]he issues need not be identical, . . . they must 'be materially on all fours' and 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Id.* (quoting *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)). Moreover, "[t]he presence of additional issues does not necessarily preclude a finding of substantial similarity where the core claim is the same." *Hubbard*, 2019 WL 6119242, at *3 (quoting *Honaker v. Wright Bros. Pizza Inc.*, No. 2:18-CV-1528, 2019 WL 4316797, at *1 (S.D. Ohio Sept. 11, 2019)) (internal quotation marks omitted) (citation modified).

The Court has reviewed the most recently amended complaint in the *Summitbridge* matter and the complaint in this case and finds that the issues in the two cases substantially overlap. In this case, Plaintiffs allege that they fell victim to "a Ponzi scheme operated through Lighthouse

[Estates LLC] and affiliated entities." [R. 1, ¶ 1]. Specifically, Plaintiffs allege that the case involves "an elaborate scheme through which Defendant Van Laurence Barker . . . , together with his family members, business associates, and affiliated entities, solicited at least $26 million from more than 125 private money lenders . . . across the United States to fund purported real estate investments." *Id.* ¶ 2. Plaintiffs further allege that the defendants promised the private money lenders a fixed return and represented that their funds "would be used to purchase and rehabilitate residential properties, when would then be refinanced for a profit." *Id.* In reality, Plaintiffs allege, the defendants used the funds to pay existing investors, and they "performed little or no rehabilitation on the properties through repeated transactions to generate the appearance of legitimate deal flow, and diverted investor funs to personal use and to affiliated entities controlled by Barker and his family." *Id.* They bring the following causes of action: Count I, a claim for "violation of KRS 292.480(1) – sale of securities by means of untrue statements of material fact or omissions"; Count II, a claim for "violation of KRS 292.340 – sale of unregistered securities"; Count III, a claim for "control person and secondary liability under KRS 292.480(4)"; Count IV, common law fraud; Count V, unjust enrichment; Count VI, breach of contract. *Id.* ¶¶ 184–271. Among other things, they seek "rescission and recovery of the full consideration paid for the [private money lender] notes,"; compensatory damages; alternatively, "restitution of all benefits unjustly retained by Defendants, and [imposition of] a constructive trust over Defendants' assets for the benefit of the class"; "the full unpaid balance of each promissory note"; and punitive damages. *Id.* at 78–79.[2]

Similarly, in the *Summitbridge* matter, those plaintiffs allege that they fell victim to a Ponzi scheme (that is, the same Ponzi scheme alleged in the present case), in which Lighthouse Estates

---

[2] The Court refers to the page numbers assigned by the Court's electronic docketing system.

LLC and related entities solicited investments from the plaintiffs and other private money lenders "across the country," and "acquired and purported to renovate properties in multiple states, including Indiana, Ohio, Kentucky, Alabama, and Missouri," but ultimately "misappropriate[ed] and commingl[ed] investor funds in a Ponzi-like scheme to pay earlier investors, cover operating shortfalls, and fund their own personal business interests." *See Summitbridge*, No. 2:26-cv-00141 (JMA) (ST), at R. 101, ¶¶ 221–22. The *Summitbridge* plaintiffs also name several other defendants, alleging that, among other things, these persons and entities conspired with Lighthouse Estates LLC and related defendants "to allow it to continue its pattern of fraudulent property transactions." *Id.* ¶ 224. The *Summitbridge* plaintiffs bring the following claims: Count I, a civil RICO claim under 18 U.S.C. §§ 1962, 1964; Count II, fraud; Count III, negligence/failure to supervise; and Count IV, conversion and accounting/breach of joint venture agreement. *Id.* ¶¶ 219–265. These plaintiffs seek actual damages and "the return of all property of the joint venture that is found to have been unlawfully conveyed or wasted." *Id.* at 51.

Clearly there is substantial overlap between the factual allegations in each case. The plaintiffs do not dispute this point. Instead, the plaintiffs again note that the present action is a putative class action, while the *Summitbridge* matter is not a class action. [R. 21, pp. 19–20]. They argue that, due to the "distinct procedural mechanisms," the cases involve "different governing standards, different binding effects on absent persons, and different distribution consequences," and "the relief sought [class-wide relief versus individual recovery] is materially different." *Id.* Plaintiffs also argue that "the legal theories differ." *Id.* at 20. Specifically, Plaintiffs note that the "core claim" in the *Summitbridge* matter is "a civil RICO claim under 18 U.S.C. §§ 1962(c) and 1964 against the Lighthouse Defendants, plus fraud, negligence, and breach of fiduciary duty against limited subsets of Defendants." *Id.* Rather than discuss the claims in this case, however,

the plaintiffs simply note that the current case involves "class-action numerosity, commonality, typicality, adequacy, and predominance analyses that have no counterpart in" the *Summitbridge* case. *Id.*

The fact that the plaintiffs in each case are pursuing different causes of action or remedies does not necessarily preclude application of the first-to-file rule. Indeed, in cases where "[t]he factual allegation underlying [the] claims are exactly the same," courts have found that differences in the causes of action and remedies sought "are insufficiently material to prevent application of the [first-to-file] rule." *Hubbard*, 2019 WL 6119242, at *5 (quoting *Catanese v. Unilever*, 774 F. Supp. 2d 684, 689 (D.N.J. 2011)). Those courts emphasis that "overlapping subject matter is key; exact identity of claims is not required." *Id.* (quoting *Catanese*, 774 F. Supp. 2d at 689); *see also id.* (collecting other cases).

In the present case, the relevant complaints rely on largely identical factual allegations about the alleged Ponzi scheme and many of the claims are based on the same theory, i.e., that these defendants (in concert with other persons and entities) deceived investors and misused invested funds in that alleged scheme. Moreover, while the *Summitbridge* matter includes some allegations and claims not present in this case, and while this case may ultimately involve an additional class certification analysis, the Court again notes that the issues in the two cases need not be identical, and "[t]he presence of additional issues does not necessarily preclude a finding of substantial similarity where the core claim is the same." *Hubbard*, 2019 WL 6119242, at *3 (quoting *Honaker*, 2019 WL 4316797, at *1) (internal quotation marks omitted) (citation modified). Furthermore, the plaintiffs in each case seek "substantially similar relief." *See id.* at *5.

Moreover, given the substantial overlap between the two cases, "failing to apply the first-to-file rule in this situation would defeat the purpose of the rule." *Id.* If both cases are allowed to

proceed, it presents "the possibility of inconsistent judgments and would frustrate the legitimate aim of preserving judicial economy." *Id.* And "[s]ubstantially similar evidence would be presented in both actions and the parties would be forced to duplicate the discovery efforts." *Id.* This point is demonstrated by the similarity in motions filed in these two cases. For example, in both cases, the parties have sought to protect and preserve the property and assets at issue by filing motions for receiverships. Accordingly, given the substantial similarity in the issues and claims involved in the two cases, the Court finds that this third factor weighs heavily in favor of applying the first-to-file rule.

Even though each of the three factors weighs in favor of applying the first-to-file rule, the Court must nevertheless "evaluate whether there are any equitable concerns that weigh against applying it." *Baatz*, 814 F.3d at 792. Indeed, "[c]ourts have repeatedly warned that the first-to-file rule 'is not a mandate directing wooden application of the rule without regard to extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Id.* However, the Sixth Circuit has also made clear that "deviations from the rule should be the exception, rather than the norm." *Id.* (citation omitted); *see also id.* at 793 ("[D]eclining to apply the first-to-file rule should be done rarely, and the equities do not clearly support finding that this is one of those rare cases.").

As to these equitable considerations, the plaintiffs first point to Mr. Hayes's "anticipatory aggregation." [R. 21, p. 21]. From the best the Court can tell, Plaintiffs take issue with Mr. Hayes issuing an engagement letter to the *Summitbridge* plaintiffs after this action was filed in the Western District of Kentucky, and the fact that the engagement letter contained an "opt out" clause, directing those clients to opt out of any related class actions. *Id.* Plaintiffs contend—without explanation—that this "fits the anticipatory-suit and forum-shopping categories" identified in the case law. The Court is at a loss as to how a standard "opt out" clause indicates that the

*Summitbridge* matter is an "anticipatory suit" or that counsel in that matter was forum shopping, particularly when the original *Summitbridge* complaint was filed several months before the present matter. And while Plaintiffs also point to Mr. Hayes's letter to this Court as inequitable conduct, *see* [R. 20], the Court is not convinced by Plaintiffs' characterization of that letter. While sending letters to the Court is unusual in this district, neither the form of that communication nor its content tips the equitable scale in favor of Plaintiffs. Without more, the Court declines to find that Mr. Hayes's conduct is inequitable or that the circumstances are otherwise so extraordinary as to preclude application of the first-to-file rule in this case. *See Baatz*, 814 F.3d at 793 ("[D]eclining to apply the first-to-file rule should be done rarely, and the equities do not clearly support finding that this is one of those rare cases.").

Having determined that the first-to-file rule applies in this case, the Court next considers the appropriate relief. The Sixth Circuit has previously stated that "[w]hen a federal court is presented with . . . a duplicative suit, it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit." *Baatz*, 814 F.3d at 793 (quoting *Smith*, 129 F.3d at 361) (internal quotation marks omitted). This is not an exhaustive list, however. *Id.* In addition to these options, "[d]ismissal may be an appropriate way to implement the first-to-file rule in some circumstances." *Id.* In sum, then, a district court applying the first-to-file rule typically "has four remedial options: (1) dismiss the case without prejudice; (2) transfer the case to the [court] where the first-filed case is pending; (3) stay the proceedings in [the case before it] while the [other] court decides the issues before it; or (4) proceed without interruption." *Mack Industries*, 2018 WL 599496, at *5.

However, a district court may abuse its discretion if it dismisses a case under the first-to-file rule "when doing so could adversely affect a party's interests." *Baatz*, 814 F.3d at 793–94

(citation omitted). Moreover, "dismissal of a lawsuit without prejudice is not favored when a transfer or stay of the second-filed suit is an available remedy." *Mack Industries*, 2018 WL 599496, at *5 (citation omitted). And other district courts within this circuit "favor staying a second-filed case pending resolution of the first-filed case." *Id.* (citations omitted).

In the present case, Plaintiffs argue that a stay is inappropriate because a party seeking a stay must make a showing of hardship or inequity, but Mr. Hayes, counsel in the *Summitbridge* matter, has made no such showing. [R. 21, pp. 22]. For support, Plaintiffs cite to a Supreme Court case from 1936 that did not involve application of the first-to-file rule. *See Landis v. North American Co.*, 299 U.S. 248 (1936). Plaintiffs fail to identify any cases applying the first-to-file rule that similarly require a showing of hardship or inequity. Indeed, in other cases where the district court stayed matters under the first-to-file rule, no such showing was required. *See, e.g.*, *Mack Industries*, 2018 WL 5994968, at *5; *Hubbard*, 2019 WL 6119242, at *6. Regardless, the Court has already considered the equities in this case and finds that they weigh in favor of applying the first-to-file rule and imposing a stay, as discussed in more detail below.

Plaintiffs also argue that the Eastern District of New York lacks personal jurisdiction over the defendants in this case, and as a result, the first-to-file rule does not apply. [R. 21, pp. 15–16]. This Court considered similar arguments in *Hubbard* when considering whether to impose a stay. *See Hubbard*, 2018 WL 6119242, at *6. In that case, the other court (i.e., the first-filed case) found that it lacked personal jurisdiction over certain *Hubbard* claims, and the defendants argued that "a stay under the first-to-file rule is not appropriate when 'another district determines that it lacks jurisdiction over the parties and/or claims.'" *Id.* (citing the plaintiffs' brief). This Court disagreed, explaining that staying that action pending resolution of the first-filed lawsuit would not jeopardize the plaintiffs' ability to seek relief against the defendant later, if any such issues remained after the

first action concluded. *Id.* In reaching this decision, the Court discussed a similar ruling in *Buffalo Wild Wings, Inc. v. BW Rings, LLC*, No. 2:10-cv-335, 2010 WL 4919759 (S.D. Ohio Nov. 29, 2010), wherein that court explained,

> While the availability of jurisdiction in the first-filed forum is an important inquiry, here it is not the extraordinary circumstance that would weigh against enforcement of the first-to-file rule. This is because the court in the second-filed action can choose to stay or to dismiss. To avoid jeopardizing the rights of one of the parties involved, i.e., the ability of an aggrieved party to pursue relief against a party not subject to the first-filed court's jurisdiction, the court in the second-filed action will generally issue a stay pending resolution of the first-filed action.

*Id.* at *4. That court ultimately chose to impose a stay. *Id.*

As explained in *Hubbard* and *Buffalo Wild Wings*, a stay does not jeopardize the ability of the plaintiffs in this second-filed action from seeking relief against the defendants at a later date, in this Court, upon the conclusion of the first-filed action. Thus, the decision to impose a stay, rather than dismiss or transfer this action, resolves Plaintiffs' personal jurisdiction concerns. Moreover, the Court notes that each of these defendants, with the exception of Van Laurence Barker, have appeared by counsel in the *Summitbridge* matter, and the Court is not aware of any limited appearances made on behalf of those defendants in that action. Stated another way, it appears those defendants have *consented* to the personal jurisdiction of the *Summitbridge* court, thereby alleviating much of Plaintiffs' jurisdictional concerns.

For all of the reasons just stated, the Court finds that a stay is appropriate in this case. As for the other available remedies, dismissal without prejudice is generally disfavored (and may be inappropriate given Plaintiffs' jurisdictional concerns), and allowing both cases to proceed without interruption "is not prudent because there are motions pending in both courts and there is a risk that the two courts may rule inconsistently." *Mack Industries*, 2018 WL 5994968, at *5. By way of example, motions seeking the appointment of a receiver have been filed in both courts, with the

Eastern District of New York having granted that request in the *Summitbridge* case (in addition to also granting a temporary restraining order that freezes assets and enjoins the defendants from transferring assets and selling property, among other things).[3] *See Summitbridge*, No. 2:26-cv-00141 (JMA) (ST), at R. 7, R. 73, R. 120. Accordingly, the Court will stay the present matter pending resolution of the first-filed *Summitbridge* matter.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.      This matter is **STAYED** pending further order of the Court.

2.      All pending motions are **ADMINISTRATIVELY REMANDED**.

3.      Counsel for Plaintiffs **SHALL** file a copy of this Order with the Eastern District of New York, *Summitbridge Wealth Mgmt., LLC v. Lighthouse Estates, LLC*, No. 2:26-cv-00141 (JMA) (ST)), on or before **July 14, 2026**.

4.      On or before **January 11, 2027**, and for every six months thereafter, the plaintiffs **SHALL** file a status report with the Court advising of the status of the *Summitbridge* matter.

This the 13th day of July, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

---

[3] Some of the defendants in the *Summitbridge* matter entered into a stipulation in lieu of a temporary restraining order. *See Summitbridge*, No. 2:26-cv-00141 (JMA) (ST), at R. 38, Mar. 23, 2026 Docket Order. The Court understands that the stipulation, the temporary restraining order, and the receivership order in the *Summitbridge* matter serve to protect and preserve the property and funds that are the target of Plaintiffs' receivership-related motions in this case, and those motions are likely moot as a result.