# HAYES & SCHANZER LLP

43 West 43rd St., Suite 195
New York, NY 10036-7424
(917) 770-0180 • ahayes@hayesschanzer.com

July 14, 2026

**VIA ECF**
Hon. Joan M. Azrack
United States District Court,
     Eastern District of New York
Long Island Federal Courthouse, 100 Federal Plaza
Central Islip, NY 11722

>    **Re:**    *Summitbridge Wealth Management LLC, et al. v. Lighthouse Estates LLC, et al.,*
>        No. 2:26-cv-00141 (JMA) (ST):  Plaintiffs' Response to the Pre-Motion Letter
>        Requests of Marcia Donaldson and Hidden Gems Ventures LLC

Dear Judge Azrack:

Plaintiffs respectfully submit this letter in response to both of the letters, dated July 7, 2026, seeking leave for Defendants Marcia Donaldson and her professional corporation, "Hidden Gems Ventures, LLC" (represented by the same counsel, and referred to collectively as "Donaldson") to move to dismiss the Second Amended Complaint against them.

### Summary:  Defendants' Stalling Tactics Should Not be Rewarded

Donaldson's request should be summarily denied until they produce (1) their bank statements, which they repeatedly promised to produce in compliance with the April 15, 2026, TRO, and (2) their insurance policy (admittedly required to produce under FRCP 26(a)), which they repeatedly claimed they had requested from their Berkshire Hathaway broker for more than a month – but which they were strangely unable to obtain.

If, *after* providing those required and promised disclosures, Donaldson re-files a letter motion, it should address the significant amount of details regarding Donaldson's work on behalf of the Lighthouse Enterprise set out in Plaintiffs' RICO Case Statement (ECF no. 126, which Donaldson knew would be filed July 13, 2026), given the settled law and practice in this circuit that courts in the Eastern District of New York should consider the detailed factual allegations in such a Case Statement, together with those in the operative Complaint, in resolving any motion to dismiss. *See, e.g., Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001); *McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir. 1992).

### Donaldson's Repeated Promises to Comply with the TRO

No Defendant did more to profess a good faith intention to comply with the TRO than Donaldson. Counsel (selected and paid for by the TC Company's insurer) repeatedly promised they would comply in good faith with the TRO by producing bank statements showing transactions with Lighthouse and its affiliates - yet they never managed to produce a single bank statement for Ms. Donaldson, or her "TC" company.  Indeed, they never produced their insurance policy.

2

By contrast, Donaldson's "venture investment" LLC, Defendant Hidden Gems Ventures LLC, represented by other counsel, managed to produce several months of that LLC's bank statements before that firm withdrew.

Donaldson, however, pursued a strategy of insisting they were going to comply with the TRO and their Rule 26(a) disclosures, and then failing to follow through. This is illustrated by the following June 11, 2026, message ("Ross" being the first name of Donaldson's counsel):

> Ross,
>
> First, thanks for this response, and for your written confirmation that your client's bank statements, reflecting funds transferred from any of the Lighthouse Defendants or any of the properties at issue in the action will soon be produced.  As a gesture of good faith, I would urge your client to start that production, now, with whatever has been redacted so far, and continue producing on a rolling basis.

A month later, Donaldson has produced nothing.

### On the Merits, Donaldson's Letters Simply Fail to Address the Salient Facts

On the merits, Donaldson offers cliché generalizations without bothering to address the details of the SAC, summarized and then backed with specifics in the RICO Case Statement, which sets out a detailed narrative of Donaldson's involvement in the Enterprise (ECF 126 at pp. 11-12):

> . . . a few dozen direct solicitation emails from Donaldson to various Plaintiffs, emails sent to Plaintiffs who reside in this District, and instructions to Plaintiffs who reside in this district to wire their money *to Donaldson's accounts* – suffice to include her among the members of the Lighthouse Enterprise.  Specifically, Donaldson played the key role of the purportedly 'independent' advisor and helper to the persons who the Ponzi scheme's targets.  To accomplish that goal, Donaldson personally solicited Plaintiffs with false personal guarantees ("I will pay you myself if this goes sideways") and false co-investor representations, while jealously enforcing her role as exclusive intermediary between Plaintiffs and borrowers.

> . . . Documents available to Plaintiffs show that Donaldson was very closely coordinating her work Barker and the Enterprise – and at Barker's direction, both Donaldson's "Transaction Coordinator" company and her "Ventures" company regularly received fees (typically $2000, though sometimes more) from closings on Plaintiffs' loans.

> One reason Donaldson was paid so much money was that she also personally prepared mortgage instruments – despite not being an attorney – to help the Enterprise close more loans, faster, than would otherwise be possible.  Donaldson then concealed her work by falsely stating on the form that it was "prepared by" an attorney.

> Donaldson also knew, no later than June 27, 2025, that the Enterprise was stealing Plaintiffs' funds through fictional closings that were simply done to extract fees (so-called "equity rollovers", where the closings were "notionally, not via actual wire"); and in September and October 2025 fabricated and transmitted documents by interstate wire — including a fabricated Joint Venture Funding Agreement procured from

3

SummitBridge on October 1, 2025 — to conceal the misappropriation of SummitBridge's funds. (SAC ¶¶ 175, 234–236.)

Additional details of Donaldson's work as an essential participant in the RICO Enterprise appear at pages 30-31 of the Case Statement:

> Bear Capital's per-closing disbursements could only be executed because HGTC, controlled by Donaldson, gatekept the closing process and prevented Plaintiffs from reviewing or objecting to those disbursements. The Funding  Defendants therefore depended directly on the Transaction Coordinators' conduct to extract value from Plaintiffs' closings — a relationship between two groups of defendants that had no intelligible explanation independent of the scheme.
>
> . . .
>
> On June 27, 2025, Barker transmitted an email to a title company copying Donaldson at both her HGV and HGTC addresses, describing a closing as an "equity rollover" in which the borrower would be funded "notionally, not via actual wire," and explicitly conditioned the transaction on Donaldson's confirmation, which she provided. (SAC ¶ 235.) Donaldson's co-authorization of that fraudulent transaction  structure demonstrates that she exercised independent decision-making authority over specific predicate acts — a direct bilateral relationship between a Transaction Coordinator Defendant and the Lighthouse hub that went beyond service provision.

## Conclusion

Donaldson and each of the other Defendants should be reminded that they need to make (at least) a good faith effort to comply with their obligations under the TRO, and under FRCP 26(a), before asking the Court to be dismissed from this action.  Donaldson, specifically, should be directed to produce both her personal bank statements and her TC company's statements for the past 24 months, before the Court will entertain any letter motion to dismiss.

We thank the Court for its consideration of this matter.

Respectfully submitted,

*Andrew W. Hayes*

Andrew W. Hayes, Esq.
**HAYES & SCHANZER LLP**
*Attorneys for Plaintiffs*

cc:   All counsel of record (via ECF)