# EXHIBIT B

# TITLE INSURANCE AGENCY AGREEMENT

Subject to the terms and conditions hereof, the attached pages of additional terms and conditions, and jurisdiction-specific addenda, if any, Agents National Title Insurance Company ("PRINCIPAL"), a Missouri corporation, and Elite Title Company, LLC, ("AGENT") a Missouri limited liability company, agree as follows:

I. **Appointment and territory.** PRINCIPAL appoints AGENT its limited agent solely for the purpose of issuing, on PRINCIPAL's forms, title insurance commitments, policies and endorsements on real estate located in the **State(s) of: Missouri and Illinois (but excluding the Illinois counties of Cook, DuPage, Kane, Lake, McHenry, and Will).**

[redacted]

[redacted]

*Additional Terms and Conditions*

1. **Limitation of AGENT's Authority.** Notwithstanding any provision hereof, AGENT's authority under this Agreement is expressly limited to the issuance of title insurance commitments, policies and endorsements and the collection of premiums as set forth herein. Without limitation, AGENT is not authorized and must not purport to:

a) Incur any obligation or liability on behalf of PRINCIPAL other than as expressly set forth in this Agreement;

b) Adjust, process or take any other action with respect to any claim for loss, other than to refer said claim immediately to PRINCIPAL;

c) Accept service of process on behalf of PRINCIPAL, but AGENT must immediately notify PRINCIPAL by telephone and regular mail of such attempted service;

d) Engage in any business in the name of PRINCIPAL except as specifically authorized herein;

e) Appoint any sub-agent or authorize any person to issue PRINCIPAL's title insurance commitments, policies or endorsements;

f) Receive in the name of PRINCIPAL any funds, including escrow and settlement funds;

g) Commit PRINCIPAL to a risk PRINCIPAL has determined to be an extra-hazardous risk without approval of PRINCIPAL or a risk that AGENT knows to be based on a disputed title;

h) Commit PRINCIPAL to insure title to property in which AGENT (or a member of immediate family, a partner, a major stockholder or a member of the family of such an individual, or an entity controlled by AGENT) has an interest without the express written consent by PRINCIPAL after full written disclosure by AGENT;

i) Issue any commitment, policy or endorsement which insures against or over any matter by reason of an escrow deposit, indemnity agreement, letter of credit, or bond without written authorization from PRINCIPAL.

2. **Obligations of AGENT.** AGENT must:

a) Be responsible for the collection of premiums for title insurance with respect to policies issued by AGENT. AGENT must not permit any delay or deferral of the payment of premiums except as expressly authorized by PRINCIPAL. Upon collection of premiums by AGENT, PRINCIPAL is the owner of the entire amount thereof, and AGENT must hold and maintain such premiums, as trustee for PRINCIPAL, strictly in accordance with the terms of this Agreement;

b) Comply with all requirements, bulletins, alerts, directives, policies and procedures established by PRINCIPAL regarding search and examination of title and the clearance of objections or exceptions to title prior to binding PRINCIPAL under any title commitment, policy or endorsement;

c) Maintain insurance agent, producer, or similar licenses required under the laws of the jurisdictions in which it operates and keep such licenses in full force and effect during the term of this Agreement; notify PRINCIPAL immediately of any termination, suspension, or expiration of any such license; and provide documentation of such licenses promptly upon request by PRINCIPAL;

d) Keep all funds, received by AGENT from any source in connection with transactions in which title insurance policies of PRINCIPAL are to be issued, in a federally insured financial institution, in an account separate from AGENT's individual accounts and designated as an "escrow" or "settlement funds" account and disburse such funds only for the purposes for which the same were entrusted. AGENT acknowledges that all such funds constitute trust funds and AGENT agrees that all such funds and accounts must be maintained and documented in accordance with all requirements and guidelines established by PRINCIPAL;

e) Immediately forward to PRINCIPAL by express or overnight delivery, all claims or demands of any kind or nature received by AGENT with respect to the business of PRINCIPAL or in connection with any of the title insurance policies of PRINCIPAL, including, without limitation, all legal process directed to PRINCIPAL and received by AGENT;

f) Maintain and carefully preserve for a period of not less than ten (10) years following termination of this Agreement or for such longer period as may be prescribed by law, in a manner and form prescribed or approved by PRINCIPAL, all records, books, books of account, files, documents, correspondence, bank records, commitments to insure, policies, endorsements, title reports, title searches, surveys, affidavits, underwriter approvals, letters of indemnification, additional title evidence, and material of all kinds in any way relating to the activities of AGENT under this Agreement, or to the Policies issued by AGENT (hereinafter termed "Documentation"); make Documentation available for inspection and examination by PRINCIPAL at any reasonable time; maintain such Documentation in accordance with applicable statutes, rules and regulations, and directives of PRINCIPAL; and not destroy or discard Documentation in violation of any applicable law and without first offering such Documentation to PRINCIPAL;

g) Upon the request of PRINCIPAL, provide reasonable assistance in the defense of any claim in which PRINCIPAL is involved;

h) Conduct or participate in any settlements and closings of transactions in which title insurance policies of PRINCIPAL are to be issued in accordance with prudent practice, requirements, bulletins, alerts, directives, policies and procedures established by PRINCIPAL, the instructions of the parties and laws and governmental regulations applicable thereto;

i) Comply with all applicable statutes, rules and regulations, including licensing, relating to the conduct of AGENT's business;

j) Keep a policy register in a form approved by PRINCIPAL showing the disposition of all policies and pre-numbered forms provided by PRINCIPAL to AGENT, if any, in connection with business conducted pursuant to this Agreement;

k) Provide PRINCIPAL, annually or upon request, whichever is more frequent, with financial statements satisfactory to PRINCIPAL;

l) Cooperate fully with PRINCIPAL in the performance of quality assurance reviews, audits and other examinations of AGENT's activities. Although AGENT concedes that AGENT's escrow business is beyond the scope of the agency relationship created by this Agreement, AGENT agrees to permit PRINCIPAL to audit and examine all financial and business records relating to any escrow business conducted by AGENT at any reasonable time or times due to PRINCIPAL's legitimate concerns about closing protection letter liability (where applicable) and policy liability created by AGENT's closing services;

m) Provide PRINCIPAL the right to examine and reproduce all Documentation at any time during business hours. In the event AGENT refuses to permit PRINCIPAL to conduct such an examination or in any other way fails to cooperate with PRINCIPAL's efforts to conduct such an examination, PRINCIPAL has the right to immediately terminate this Agreement, the right to seek equitable remedies, including injunctive relief and the appointment of a receiver, and AGENT may not assert that PRINCIPAL otherwise possesses an adequate remedy at law;

n) Provide PRINCIPAL the right to request and examine credit reports and background reports of AGENT's principals and employees at PRINCIPAL's discretion in accordance with applicable law;

o) Segregate premium funds owed to PRINCIPAL in either a separate premium trust account or the escrow account of the agency;

p) Allow PRINCIPAL access to escrow audit reports of underwriters also under contract with AGENT. These reports may, at PRINCIPAL's discretion, be used to evaluate AGENT's escrow performance;

q) Upon the termination of any employees who have access to PRINCIPAL's policy issuance system, immediately notify PRINCIPAL so the employee's or employees' access may be disabled;

**3. Acts requiring prior written consent of PRINCIPAL. AGENT must not, without the express written consent of PRINCIPAL:**

a) Participate in any litigation or other activity which is detrimental to the interests of PRINCIPAL;

b) Complete or alter forms furnished by PRINCIPAL except pursuant to instructions promulgated by PRINCIPAL;

c) Utilize PRINCIPAL's forms for transactions not involving the issuance of PRINCIPAL's policies;

d) Dispose of a substantial portion of AGENT's assets which would be necessary for AGENT to fulfill its duties:

e) Issue any commitment, policy or endorsement which insures or commits PRINCIPAL to insure against or over any matter by reason of an escrow deposit, indemnity agreement, letter of credit or bond;

f) Commit PRINCIPAL to insure title to property in which AGENT (or a member of AGENT's immediate family, a partner, a major stockholder or a member of the family of such an individual, or an entity controlled by AGENT) has an interest;

g) Commit PRINCIPAL to a risk PRINCIPAL has determined to be an extra-hazardous risk or a risk which AGENT knows to be based on a disputed title;

**4. Closing Protection Letters.** Where allowed by law, PRINCIPAL may, as an accommodation to AGENT in the promotion of AGENT's title insurance agency business, issue its standard form of closing protection letter (hereinafter referred to as "CPL or CPLs") to prospective insureds. PRINCIPAL has developed and maintains an automated system for requesting and distributing CPLs. AGENT hereby agrees to request the issuance of CPLs by PRINCIPAL solely through the use of this automated system and not to alter such CPLs. The issuance and any termination of any CPL is in the sole and absolute discretion of PRINCIPAL.

**5. Liability of AGENT.** AGENT is liable to PRINCIPAL for, and hereby agrees to indemnify PRINCIPAL against, any loss, cost or expense, fine, penalty, order or award of restitution, including attorneys' fees and costs of litigation, sustained or incurred by PRINCIPAL, and arising from the fraud, defalcation, negligence, error, omission or misconduct of AGENT, or any agent, servant, employee, or service provider of AGENT, whether or not such loss, cost or expense results from any Policy issued by AGENT or CPL issued by PRINCIPAL to AGENT's customers, and whether or not AGENT consents or has consented to payment of the loss, cost, expense, fine, penalty, order or award of restitution.

**6. Termination.**

a) **Without Cause.** This Agreement may be terminated without cause in accordance with Paragraph II.

b) **For Cause.** This Agreement may be terminated by PRINCIPAL immediately upon notice in writing to AGENT if AGENT:

   i) Commits a breach of any term, condition or representation contained in this Agreement;

   ii) Exercises or attempts to exercise, any authority in conflict with this Agreement;

iii) Commits any act of fraud or misconduct, or becomes insolvent, or if AGENT or a principal, officer or partner of AGENT is indicted or convicted of a felony, or if AGENT or a principal officer or partner of AGENT is an attorney-at-law and has his or her license to practice law suspended, is disbarred, or voluntarily surrenders his or her license to practice law; or if AGENT or any employee of AGENT commits any act that adversely affects PRINCIPAL's business reputation, as determined by PRINCIPAL in its sole discretion;

iv) Files or has filed against it a petition in bankruptcy or a petition or pleading seeking or acquiescing in any reorganization or dissolution of AGENT or the appointment of a receiver, trustee, or liquidator for AGENT;

v) Ceases doing business, for whatever reason, as a title insurance agent;

vi) Causes unfavorable loss experience to PRINCIPAL by title insurance commitments, policies and endorsements issued by AGENT, or by reason of AGENT's loss history through issuance of title insurance, or performance of related services, such as escrow and closing functions, without regard to cause;

vii) Allows, causes, consents to, or otherwise experiences a change of ownership, change of AGENT officers, or a change of key employees without prior written approval of PRINCIPAL;

viii) Fails to timely remit premium in accordance with this Agreement or applicable law;

ix) Fails to cooperate and comply with PRINCIPAL in the performance of quality assurance reviews, audits and other examinations of AGENT's activities.

c) **Obligations of AGENT following Termination.** In the event of termination for any reason whatsoever, AGENT must:

i) Immediately cease holding itself out as an agent of PRINCIPAL;

ii) At the request of PRINCIPAL, deliver all title insurance policies in the possession of AGENT, including all forms, to PRINCIPAL;

iii) Account for and pay to PRINCIPAL immediately all premiums (including but not limited to any premiums which AGENT has collected pursuant to policies not yet issued), and all other outstanding indebtedness owed by AGENT to PRINCIPAL;

iv) Advise and cooperate fully as directed by PRINCIPAL in the completion of all such undertakings and transactions, including but not limited to the processing to completion, at PRINCIPAL's sole discretion and direction, any pending orders according to the provisions of this Agreement;

v) At the request of PRINCIPAL, provide PRINCIPAL with reasonable access to AGENT's environment (including, but not limited to, servers, workstations, files, software necessary to access such files, etc.) so that PRINCIPAL may maintain the records of AGENT and perform any finalization of AGENT's activity.

d) **Effect of Termination.** Termination of this Agreement does not affect any duties, obligations, or liabilities incurred prior to termination, except as expressly provided herein.

**8. Assignment Prohibited.** This Agreement and any rights or interest arising hereunder may not be transferred or assigned by either party, provided, however, that this Agreement inures to the benefit of any successor to PRINCIPAL.

**9. Amendments.** No amendment of this Agreement or any modification thereto, whether in conflict with this Agreement or otherwise, is valid unless it be in writing, dated and executed by both parties with the same formality as this Agreement is executed.

10. **Notices.** Any notice required or permitted to be given under this Agreement or otherwise, by either party to the other, is deemed given, if given in writing and forwarded to such party by certified mail or express delivery to the address shown below, or such other address hereafter designated in writing:

| PRINCIPAL | AGENT |
|---|---|
| Agents National Title Insurance Co. | Elite Title Company, LLC |
| 1207 W. Broadway Suite C | 222 South Central Ave., Suite 550 |
| Columbia, MO 65203 | St. Louis, MO 63105 |

AGENT further authorizes and agrees to receive such notices and communications from PRINCIPAL by electronic means at the email address provided in AGENT's Preliminary Agency Application, or such other email address hereafter designated by AGENT in writing.

11. **Captions.** The captions of the paragraphs of this Agreement are inserted for reference and convenience purposes only, and they are not to be deemed parts of this Agreement, and in no way do they define, limit, or describe the scope of this Agreement or the intent of any provisions thereof.

12. **Non-Waiver.** No failure by PRINCIPAL to insist on performance of any term of this Agreement, or to exercise any right, power, or remedy caused by a breach thereof, and no acceptance by PRINCIPAL of any payment or remittance from AGENT during continuance of any such breach, constitutes a waiver of such breach of any such term. No waiver of any breach affects or alters this Agreement or the rights of PRINCIPAL with respect to any other, then existing, or subsequent breach.

13. **Severability on Invalidity.** If any court declares any provision of this Agreement invalid, the remaining provisions of the Agreement are not affected thereby.

14. **Marketing.** AGENT's marketing activities are beyond the scope of its agency relationship with PRINCIPAL. As such, AGENT must not use any name, designation, emblem or logo of PRINCIPAL or its parent or affiliates, in any way, except with the express written consent of PRINCIPAL and only to the extent of such consent, provided, however, that letterhead, forms, advertising and display signs used by AGENT in connection with the business of AGENT, as contemplated hereunder, may indicate that AGENT is a policy-issuing agent of PRINCIPAL. AGENT and AGENT's agents, servicers or employees must be familiar with the scope of coverages of PRINCIPAL's commitments, policies, endorsements and closing protection letters and may not make deceptive or misleading statements, whether verbal or written, regarding the cost or scope of coverage of PRINCIPAL's commitments, policies, endorsements or closing protection letters.

15. **Privacy and Security.** AGENT must comply with applicable provisions of the Gramm-Leach-Bliley Financial Modernization Act of 1999, as amended from time to time, and any applicable laws and regulations adopted pursuant to Article V of GLB. This includes the implementation of administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of customer information.

16. **AGENT is an Independent Contractor.** AGENT is an independent contractor and not an employee of PRINCIPAL and is solely responsible for the payment of any federal, state or local taxes relating to the income or compensation of AGENT and for compliance with all laws and regulations relating to the business of AGENT.

17. **Late Payment.** In any case in which AGENT fails to remit rates and fees within ninety days of the invoice due date, the PRINCIPAL retains the right to assess a penalty charge of $20.00 per invoice per month.

18. **Law to Govern.** This Agreement is governed, construed, and enforced in accordance with the laws of the State of Missouri.

19. **Confidentiality.** In the performance of its obligations under this Agreement, AGENT may obtain access to or possession of PRINCIPAL's trade secrets, financial data, marketing strategies, or other information that is of confidential nature ("Confidential Information"). AGENT agrees that such Confidential Information may not be

released or disseminated to any other party. AGENT may not disclose or otherwise exploit for any benefit, or for the benefit of any other person or entity, any Confidential Information. Upon termination of this Agreement, AGENT must promptly return Confidential Information to PRINCIPAL at PRINCIPAL's request. Notwithstanding the foregoing, Confidential Information does not include a) information that becomes public or available to the general public other than through any act or default of AGENT, b) information that is used or disclosed with prior written consent of PRINCIPAL, or c) information that is required by law (i.e., an order of a court or data request from an administrative or governmental agency with competent jurisdiction) to be disclosed; provided, however, that AGENT must, if permitted under applicable law, provide PRINCIPAL with ten days' prior written notice before the disclosure of such information to such administrative or governmental agency.

20. **Arbitration.** Unless prohibited by applicable law or regulation, either PRINCIPAL or AGENT may demand arbitration pursuant to the Arbitration Rules of the American Arbitration Association. Arbitrable matters may include any controversy or claim between PRINCIPAL and AGENT arising out of or relating to this Agreement. Arbitration pursuant to this Agreement is under the rules in effect on the date the demand for arbitration is made. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

21. **Entire Agreement.** This Agreement, including any addenda attached hereto, constitutes an integration of the entire understanding and agreement of the parties and supersedes and replaces all prior agreements between the parties with respect to the subject matter hereof. Any representation, warranty, promise, or condition, whether written or oral, not specifically incorporated herein, is not binding upon any of the parties hereto, and each party acknowledges that in entering into this Agreement it has not relied on any representation, promise, or condition not specifically set forth herein.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES

**IN WITNESS WHEREOF,** PRINCIPAL and AGENT have executed this Agreement this 1 day of December 2022.

**PRINCIPAL**
**AGENTS NATIONAL TITLE INSURANCE COMPANY**

BY: Elizabeth Blake
Name: Elizabeth Blake
Title: CFO

**AGENT**

BY: Lisa Galeazzi
Name: Lisa Galeazzi
Title: CFO

[redacted]

[redacted]

[redacted]