FBT Gibbons

**Ricardo Solano Jr.**
Partner
+1 973.596.4471 (t)
rsolano@fbtgibbons.com

September 8, 2026

**VIA ELECTRONIC FILING**
The Hon. Joan M. Azrack, U.S.D.J.
U.S. District Court, Eastern District of New York
100 Federal Plaza, Courtroom 920
Central Islip, NY 11722

**Re: *SummitBridge Wealth Management LLC, et al. v. Lighthouse Estates LLC, et al.* Case No.: 2:26-cv-00141 JMA-ST**

Dear Judge Azrack,

We represent Defendant, Ronald J. Harris, Jr., in the above-referenced matter. We write to respectfully request a pre-motion conference in anticipation of moving to dismiss the Second Amended Complaint (the "SAC"), ECF No. 101, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2). The Complaint should be dismissed for the reasons set forth below.

## I. Harris is Not Subject to Personal Jurisdiction in New York

There is no personal jurisdiction over Harris, a non-domiciliary who works and is based exclusively in Kentucky. "A prima facie showing of personal jurisdiction requires: (1) procedurally proper service of process, (2) a statutory basis for personal jurisdiction that renders such service of process effective[,] and (3) that the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles." *Fire & Police Pension Ass'n v. Bank of Montreal*, 368 F. Supp. 3d 681, 693 (S.D.N.Y. 2019) (internal citations omitted).

Here, Plaintiffs have only attempted to assert grounds for this Court's personal jurisdiction over the so-called "Transaction Coordinator Defendants" (which does not include Harris) pursuant to New York's long-arm statute. *See* SAC ¶13. But the SAC fails to allege *any* Defendant's contacts with New York; indeed, it makes only two conclusory mentions of New York with respect to any Defendant's activities, neither of which apply to Harris (even accepting them as true). *See id.* ¶¶221, 236 ("The Lighthouse Enterprise . . . solicited investments from and directed communications to Plaintiffs in New York"; "Every fraudulent solicitation, lulling communication, and act of concealment directed at Plaintiffs in New York was personally orchestrated, executed, or ratified by Donaldson[.]").

To be clear, the RICO statute "does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998). Instead, "§ 1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs." *Pincione v. D'Alfonso*, 506 F. App'x 22, 24 (2d Cir. 2012). "Additional defendants may be subject to nationwide personal jurisdiction, but [t]his jurisdiction is not automatic[;] [it] requires a showing

that the 'ends of justice' so require." *7 W. 57th St. Realty Co., LLC v. CitiGroup, Inc.*, 2015 WL 1514539, at *7 (S.D.N.Y. Mar. 31, 2015) (internal citations omitted).

Significantly, even if the SAC's jurisdictional allegations with respect to the "Transaction Coordinator Defendants" passed muster, every entity with which Harris is associated is domiciled in Kentucky. *See* SAC ¶171 ("[Bear Capital] is a Kentucky limited liability company" with an office in Louisville, Kentucky); ¶169 ("[KYPL] is a Kentucky limited liability company with its principal place of business in Louisville, Kentucky."); ¶168 ("[People's] is a community bank chartered and operating from Kentucky"). Harris does not conduct business or derive substantial revenue from New York, nor did any of his business dealings in Kentucky foreseeably engender any effects in New York. Without more, Plaintiffs allegations simply do not justify exercising personal jurisdiction over a Defendant with no even tangential contacts with New York. *See Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 544 (S.D.N.Y. 2001) (dismissing alleged RICO co-conspirators for lack of personal jurisdiction, finding that exercising same "would offend due process . . . as neither has 'purposefully availed [himself] of the privilege of conducting activities' in New York such that '[h]e should reasonably anticipate being hauled into court [here].'") (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) and *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

## II. Plaintiffs Fail to State a RICO Conspiracy Claim Against Harris

The SAC also fails entirely to plead Harris's actual knowledge of or intent to participate in Barker's alleged scheme. It is well-established that "[t]he core of a civil RICO conspiracy is an agreement to commit predicate acts. Therefore, the Complaint must allege, at a minimum, an agreement among all defendants to commit the two requisite predicate acts." *Naso v. Park*, 850 F. Supp. 264, 275 (S.D.N.Y. 1994) (citing *Hecht v. Commerce Clearing House, Inc.*,897 F.2d 21, 25 (2d Cir. 1990)); *Abbott Lab'ys*, 2017 WL 57802, at *9 (plaintiffs are required to allege, "as to each alleged co-conspirator: (1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; (3) that the co-conspirator knowingly participated in the same") (internal citation omitted). Importantly, "[b]are or conclusory allegations of participation in a conspiracy under section 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy[.]" *Laverpool v. N.Y.C. Transit Auth.*, 760 F. Supp. 1046, 1060 (E.D.N.Y. 1991).

The SAC asserts that "Harris, People's, and KYPL are each liable under 18 U.S.C. § 1962(d), for conspiring with Lighthouse to fund its ongoing pattern of racketeering." SAC ¶8. However, the totality of the SAC's allegations implicating Harris provide that: (i) Harris "owns" People's and People's outside accounting firm, King & Company, *id.* ¶4, 168, 174; (ii) People's loaned $25 million to KYPL, which in turn loaned those funds to Lighthouse, *id.* at ¶ 4, 7; (iii) Harris owns a "passive, 10% profit interest" in KYPL, *id.* ¶5, 174; and (iv) Harris is a registered agent of Bear Capital, LLC, which "received approximately $5,000 in wire payments from nearly every closing on Plaintiffs' loans to Lighthouse entities." *Id.* ¶171, 174, 213, 216. On these bases alone, Plaintiffs posit that Harris "agreed, no later than July 2025, to enter into an agreement and conspiracy with the Lighthouse Enterprise to allow it to continue its pattern of fraudulent property transactions." *Id.* ¶224.

The SAC's allegations plainly do not support that leap. First, passively "allow[ing]" a pattern of racketeering "to continue," as phrased in the SAC, is unequivocally insufficient to plead

a RICO conspiracy. *See Congregacion de la Mision Provincia de Venezuela v. Curi*, 978 F. Supp. 435, 451 (E.D.N.Y. 1997) ("mere knowledge of the scheme . . . coupled with personal benefit, is not enough to impose liability for a RICO conspiracy."). Equally important, the SAC at no point alleges any knowing and willful agreement between Harris and any other Defendant to facilitate Lighthouse's alleged Ponzi scheme, beyond bare, conclusory language. Instead, the SAC alleges, at most, that Harris was aware by July 2025 that Lighthouse was a distressed business. *See* SAC ¶7. The fact Harris supported extending further credit to a distressed company in which People's had already invested a significant sum unequivocally fails to demonstrate knowledge of Barker's illicit scheme, let alone a knowing and willful agreement to proactively facilitate it. *See id.* ¶¶212, 217 (alleging that in July 2025 People's did not "wind[] down" Lighthouse's loans, "or forc[e] Lighthouse itself to restructure," though "[b]y November 2025 . . . KYPL and People's discussed a restructuring"). Indeed, the SAC at no point alleges that Harris was in any way aware of the foundational components of Barker's scheme, such as Barker's "shell" companies, *see id.* ¶220 (listing the "Lighthouse Enterprise's" "array of alter ego LLCs"), or any of the "Transaction Coordinator Defendants," *see id.* ¶¶225-26 (alleging that the Transaction Coordinator Defendants "played an essential role in the RICO Enterprise's operations" and "in the Enterprise's use of multiple shell companies and commingled assets"), without which Harris can hardly be alleged to have affirmatively participated in the Lighthouse Enterprise's allegedly illicit ventures.[1]

For these reasons, and others, as may be more fully set forth in the moving papers, Defendant Ronald J. Harris respectfully seeks a pre-motion conference, or in the alternative, leave to file a motion to dismiss.

Respectfully,

*/s/ Ricardo Solano Jr.*
Ricardo Solano Jr.

cc: All counsel of record

---

[1] Plaintiffs' RICO conspiracy claim also fails given the absence of a viably pleaded substantive RICO claim. *See Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 424-25 (E.D.N.Y. 2017). Plaintiffs' RICO claim, predicated on alleged acts of wire fraud, must be pleaded with particularity under Rule 9(b). *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Plaintiffs fail to meet that threshold by, *inter alia*, grouping together subsets of Defendants without identifying which engaged in what specific actions in furtherance of Barker's illicit scheme, *see* SAC ¶¶175-182, 225-227 (grouping "Transaction Coordinator Defendants" without attributing specific predicate acts to any one); *see Abbott Lab'ys v. Adelphia Supply USA*, 2017 WL 57802, at *14 (E.D.N.Y. Jan. 4, 2017) (dismissing civil RICO claim where plaintiffs "cluster[ed] dozens of defendants by the nature of their businesses . . . [and] allege[d] no facts concerning the hierarchy or organization . . . of the alleged association.") (internal citation omitted), and by failing to allege more than independent, uncoordinated actions as between the separate subsets of Defendants. *See D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018) (affirming that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates, . . . [is] not . . . enough to show that the individuals were members of an enterprise" as necessary to make out a RICO claim) (quoting *Boyle v. United States*, 556 U.S. 938, 947 at n.4 (2009)).