GRAY ICE HIGDON

www.grayice.com
3939 Shelbyville Rd. Suite 201
Louisville, KY 40207

September 10, 2026

*VIA* **ELECTRONIC FILING**
The Hon. Joan M. Azrack, U.S.D.J.
U.S. District Court, Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

**Re:** ***SummitBridge Wealth Management LLC et al v. Lighthouse Estates LLC, et al*; Case No.: 2:26-cv-00141-JMA-ST**

Dear Honorable Judge Azrack:

This firm represents the "KPL Defendants", which include: (i) Kentucky Private Lending, LLC ("KPL"), (ii) KYPL Holdings 1, LLC ("Holdings"), (iii) Aaron Metten ("Metten") and (iv) Eric Payne ("Payne"). Pursuant to Your Honor's Individual Rule IV(B), the KPL Defendants request a pre-motion conference in anticipation of their motion to dismiss the Second Amended Complaint ("SAC") (ECF No. 101), pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

## I. The KPL Defendants Are Not Subject to Personal Jurisdiction in New York.

The SAC fails to establish personal jurisdiction over the KPL Defendants, which requires: (1) service of process, (2) a statutory basis for personal jurisdiction, and (3) that the exercise of personal jurisdiction comports with constitutional due process principles. *Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*, 368 F. Supp. 3d 681, 693 (S.D.N.Y. 2019). In determining whether personal jurisdiction may be exercised over a non-domiciliary under New York's long-arm statute, "a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*, 738 F. Supp. 3d 458, 464 (S.D.N.Y. 2024); CPLR 302(a). A non-domiciliary defendant "transacts business" in New York when "on his or her own initiative, the non-domiciliary projects himself or herself into this state to engage in a sustained and substantial transaction of business." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 138 (S.D.N.Y. 2023). This element requires "purposeful activity," meaning "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir. 2023). The plaintiff bears the burden to show jurisdiction exists. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).

Plaintiffs cannot meet that burden. KPL and Holdings are LLCs organized under Kentucky law. SAC, ¶¶169-70. The entities' members are Kentucky, Tennessee, or Texas citizens (or are wholly-owned LLCs whose members are Kentucky, Tennessee, or Texas citizens). Metten and Payne are Kentucky residents. None of the KPL Defendants reside, are organized, maintain an office, or otherwise conduct business in New York. The business KPL Defendant entities *does* conduct relates to assets (*i.e.*, mortgaged properties) located in Kentucky, Indiana, and Ohio, which are owned by non-New York defendants. Because none of the KPL Defendants are "at home" in

New York, Plaintiffs cannot establish general personal jurisdiction under CPLR § 301. *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014).

Nor can Plaintiffs establish specific jurisdiction. SAC invokes New York's long-arm statute, CPLR § 302, solely as to the "Transaction Coordinator Defendants" – an expressly defined group that does not include any KPL Defendant. (*See* SAC ¶¶13, 175-82.) The allegations related to the KPL Defendants stem solely from their alleged interactions with People's Bank of Lebanon ("People's"), "a small community bank" with no connections to New York (SAC, ¶ 4 ) and Ronnie Harris ("Harris"), who lives and works in Kentucky. (SAC, ¶ 174.) The only two paragraphs describing conduct remotely implicating New York address the "Lighthouse Enterprise" generally and Defendant Donaldson specifically. SAC, ¶¶221, 236. Notably, however, neither paragraph mentions any KPL Defendant. In fact, more broadly, the SAC fails to allege any relevant constitutionally mandated *minimum* New York contacts by the KPL Defendant.

The SAC also does not set forth allegations against the KPL Defendants that would support this Court's exercise of jurisdiction on any other basis, whether premised on an alleged nexus to claims against other defendants pursuant to the "RICO" Act, 18 U.S.C. § 1961 *et seq*., or otherwise. The RICO statute "does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found" *PT United Can Co. v. Crown Cork & Seal Co*., 138 F.3d 65, 71 (2d Cir. 1998). Rather, Section 1965(a) "grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs." *Id*. Jurisdiction over other defendants is not automatic, but rather can be obtained only "on a showing that the 'ends of justice' so require." *Elsevier Inc. v. W.H.P.R., Inc*., 692 F. Supp. 2d 297, 315 (S.D.N.Y. 2010).

Such "ends of justice" showing is neither pleaded nor available here, where no KPL Defendant is alleged to reside, transact business, or otherwise purposely avail itself of New York. The only allegation tying any of the claims to New York relate solely to communications made by another defendant (Donaldson) with zero connection to any of the KPL Defendants. *See* SAC, ¶¶175, 234-36. However, broad and conclusory allegations that a defendant "participated in the acts of the other defendants in New York" is not enough. *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co*., 165 F. Supp. 2d 514, 543 (S.D.N.Y. 2001). Even if there were national RICO statutory jurisdiction over the KPL Defendants, there can be little doubt that exercising such jurisdiction would not comport with due process. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 352 n.5 (S.D.N.Y. 2014). As such, the incantation of the RICO statute and threadbare allegations against the KPL Defendants is not sufficient to establish jurisdiction.

## II. The SAC Fails to State a Claim Against the KPL Defendants Under Rule 12(b)(6)

The SAC purports to assert claims against the KPL Defendants under the RICO Act (Count I), as well as a claim for fraud "in the alternative" (Count II). (SAC, ¶¶ 220-47.) To establish a RICO conspiracy claim, a plaintiff must allege as to each alleged co-conspirator: "(1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; (3) that the co-conspirator knowingly participated in the same." *Nasik Breeding & Rsch. Farm Ltd.*, 165 F. Supp. 2d at 541. "Bare or conclusory allegations of participation in a conspiracy under section 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate acts alleged are fraud." *Laverpool v. New York City Transit Auth*., 760 F. Supp. 1046, 1060 (E.D.N.Y.

1991). When alleging fraudulent activities as predicate RICO claim acts, a plaintiff must satisfy Rule 9(b). *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 420 (E.D.N.Y. 2017).

The SAC lacks any meaningful allegations against the KPL Defendants to establish the requisite "agreement" or predicate acts. The sparse allegations Count I *does* contain rest on layers of untenable speculation. Count I groups the KPL Defendants with Harris, People's, and Bear Capital as undifferentiated "Funding Defendants" that operated as an "association-in-fact" that, in turn, conspired with *another* "association-in-fact," the "Lighthouse Enterprise." (SAC, ¶¶220-24.) To tie the two "associations" together, the SAC baldly asserts that the Funding Defendants entered into an agreement "to allow" the Lighthouse Enterprise "to continue" its fraudulent property transactions." (SAC ¶224.)

That is precisely the conclusory, group-pleaded allegation Rule 8, Rule 9(b) and *Twombly*/*Iqbal* forbid. A RICO claim requires factual allegations, as to each defendant, of an actual agreement to further the racketeering scheme, not mere awareness of, or benefit from, another's wrongdoing. Indeed, "mere knowledge of the scheme, even coupled with personal benefit, is not enough to impose liability for a RICO conspiracy." *Congregacion de la Mision Provincia de Venezuela v. Curi*, 978 F. Supp. 435, 451 (E.D.N.Y. 1997). At most, the SAC alleges an arm's-length lending relationship; namely, that KPL made loans to Lighthouse, which the parties later allegedly discussed restructuring once repayment concerns arose, and that Payne subsequently became a manager of Red Door Legacy and formed KPL Holdings. (SAC ¶¶3-4, 217-18.) Yet nothing in the SAC plausibly alleges that Metten or Payne advanced or even knew of Barker's underlying fraud, the alter-ego LLC structure, or the Transaction Coordinators' conduct -- *none of which the SAC alleges was ever disclosed to the Funding Defendants*. Therefore, Count II's fraud claim, pleaded "in the alternative" against the same defendants (SAC ¶244), fails for the identical group-pleading deficiencies and independently fails Rule 9(b), since the SAC identifies no specific misrepresentation by any KPL Defendant to any Plaintiff.

### III. The Court Lacks Federal Subject Matter Jurisdiction Over the Remaining Claim

The SAC's sole basis for subject matter jurisdiction is the civil RICO claim in Count I. The state law fraud claim proceeds, if at all, only through supplemental jurisdiction under 28 U.S.C. § 1367. (SAC ¶¶11-12.) Because Count I fails to state a claim against KPL Defendants for the reasons above, and because the Court independently lacks personal jurisdiction over each KPL Defendant, no viable federal claim will remain against them to anchor jurisdiction over Count II. The Court should therefore decline to exercise supplemental jurisdiction over the remaining state-law claim against the KPL Defendants under § 1367(c)(3), and no other basis for subject-matter jurisdiction (e.g., diversity) is pleaded or available. For these reasons, and others to be set forth more fully in the moving papers, the KPL Defendants respectfully request a pre-motion conference or, in the alternative, leave to file their motion to dismiss the Second Amended Complaint.

Respectfully submitted,
GRAY ICE HIGDON, PLLC

ANDREW D. STOSBERG