HAYES & SCHANZER LLP
43 West 43rd St., Suite 195
New York, NY 10036-7424
(917) 770-0180 • ahayes@hayesschanzer.com

September 17, 2026

**<u>VIA ECF</u>**

Hon. Joan M. Azrack
United States District Judge
United States District Court, Eastern District of New York
Long Island Federal Courthouse, 100 Federal Plaza
Central Islip, NY 11722

*Summitbridge Wealth Management LLC, et al. v. Lighthouse Estates LLC, et al.*, No. 2:26-cv-00141 (JMA) (ST) – Response to the KPL Defendants' Letter Seeking Leave to Move to Dismiss (ECF No. 196)

Your Honor:

The Sept. 10, 2026 letter of Defendants Kentucky Private Lending, LLC ("KPL"), KYPL Holdings 1, LLC ("Holdings"), Aaron Metten, and Eric Payne (together, the "KPL Defendants") repeats the same points as Defendant Harris' letter, without mentioning several damning facts regarding both personal jurisdiction and the merits of this action. Specifically:

1. <u>KPL chose to intervene in this action on Feb. 5, 2026</u>, opposing Plaintiffs' proposed TRO as a threat to KPL's own economic interests. *See* ECF nos. 28-35. KPL never withdrew that appearance. It is well-settled law that a party who intervenes to oppose a proposed injunction has voluntarily submitted itself to the personal jurisdiction of the Court. *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 37 (S.D.N.Y. 1992) ("by moving to intervene in this action, [the intervenor] has consented to personal jurisdiction"); *SEC v. Illarramendi*, 2012 WL 5832330, at *3 (D. Conn. Nov. 16, 2012) (same, quoting *County Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 483 (6th Cir. 2002), for the proposition that "a motion to intervene is fundamentally incompatible with an objection to personal jurisdiction"); *see generally Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60–62 (2d Cir. 1999) (a party may forfeit any personal-jurisdiction objection by conduct).

2. <u>Defendant Eric Payne was the sole Manager of Defendant Red Door Legacy, LLC</u> when Red Door signed the Stipulated TRO on Feb. 12, 2026. Payne was also a managing member of Defendants KPL and Holdings at that time, and Defendant Aaron Metten was also a manager and member of Defendants KPL and Holdings at that time. Under Fed. R. Civ. P. 65(d)(2), a TRO or injunction automatically binds not just the parties, but also their "officers, agents, servants, employees, and attorneys," or those in "active concert or participation" with them. Thus Payne is indisputably subject to the Court's jurisdiction regarding his role in the flouting of the TRO *over the past seven months* – new evidence of which continues to surface, week after week.

3. Indeed, this week, Plaintiffs discovered that over 30 Red Door properties have been listed for rent since August 31, 2026, along with two Lighthouse properties that were deeded to Defendant Holdings. Van Barker, his wife and other family members have all sworn they have not been involved in any way with Barker's properties since the Receiver's takeover. The KPL Defendants, by contrast, have refused to say whether they are behind these listings.

4. The KPL Defendants have failed to explain the numerous post-TRO transfers of Barker's properties to Holdings (over 40 by our count), and their ongoing collection of rent properties held in the name of Holdings, Red Door, Lighthouse, and other Barker LLCs.

Holdings' role in the post-TRO deed registrations and rent collection of properties deeded to it suffice to give the Court personal jurisdiction over that company, and indeed all the KPL Defendants, under *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 136–37 (2d Cir. 2014).

The sufficiency of Plaintiffs' RICO claims. The KPL Defendants' arguments on this point ignore the RICO Case Statement, as well as the many text chats between Barker, Metten, and Payne, which show that Barker made no secret of his plan to run his business as a Ponzi scheme – using loans from the Plaintiffs that were intended to purchase and fix up inexpensive houses to "take down" good quality urban and suburban houses that *Barker would own with Bear Capital* (in which each of Metten, Payne, and Harris were personally invested), and would finance with loans that Harris helped arrange from Defendant People's Bank.

Since Barker's plan involved multiple acts of wire fraud, mail fraud, and bank fraud (using straw buyers for many of his properties), Barker's active recruitment of Harris, Metten, Payne, KPL and (in December) Holdings to carry out that plan suffices to allege a viable RICO claim. If there is any doubt about that, here is yet another excerpt from Barker's own Signal messages. On July 19. 2025 – just after Bear Capital was formed, three days before his "Takedown Play" email to Payne and Metten, and two weeks before Barker's "four hour" strategy meeting with Harris and KPL – Barker explained his fraudulent scheme to a colleague who was pushing back on Barker's eagerness to buy run-down "crackhouses":

**Van Barker** (7/19/2025, 10:45:10 PM): We will always need crackhouses / Because of lending base . . . The crackhouses provide a forever easy lending base . . . You need to understand this / We cannot buy these nice houses / Without the crack houses . . . The crack houses regenerate the lending dollars / That we lose to buy the nice houses . . .

**Van Barker:** Think about this / I am going to tell Eric [Payne] this / All of these nice shiny houses these people are hogging on his books on the MLS that have been on the market for 40-50 days / Give us an additional lending boost to "buy" them, which just recirculates the same money on KPL's books . . ./ But then once in our hands / We just ruthlessly firesale them / And split the profits with Bear Capital, which is Eric and Aaron's personal $$ / So they can make a fast $500k off of their shitty MLS clients / Tell me they wouldn't lift our lending cap to do that . . .

**Van Barker:** So when we talk about those lending surges / You can't regenerate lending dollars easily on houses that HAVE NO REFURB BUDGET / You need refurb budgets on fix/flips to get liquid lending dollars back / Right? / So you in fact should be wanting to get the shittiest

shitballs ever . . . / So that you can accelerate regain of liquid lending dollars /And buy more nice houses / Because the refurb dollars from crackhouses / Allow us to buy down and eat lossss on the nice houses / So that we can then somersault into control of them / And ruthlessly firesale them to get their sweet nectar . . .

**Van Barker** (7/19/2025, 11:03:11 PM): So we need two lists that loop into each other / We need giant lists wherein we buy EVERY AWFUL CRACKHOUSE IN AMERICA [sic; original text is all caps]/ And get liquid refurb dollars off of them / Which regenerate the money we sink into the equity of nice houses so that we can take control of them / Our ability to buy massive amounts of crackhouses and service the associated refurb en masse Is what leads to the regeneration of our cash / That is why no one else is like us / You need to embrace the hood / To buy the suburbs

On August 9, 2025 – three days after the four hour strategy meeting with Harris – Barker sent a long text, forwarding what he described as a message from Payne regarding ways to increase Peoples Bank's lending limits, which were limiting what KPL could borrow from the Bank – and, thus, limiting what KPL could lend to Barker. Metten endorsed Barker's suggestions about trying to raise those limits, adding that KPL's members were meeting on August 12, to "get Mark and Dean [two non-manager members of KPL, who apparently provided its operating capital] on board with our plan to go full tilt on Lighthouse-KPL master plan."

In short, KPL, Metten, Payne and Holdings are *not* 'other lenders who were also defrauded by Barker', as they told the Plaintiffs for months after Barker's arrest. The KPL Defendants are the guys who heard Barker detail how his Ponzi scheme worked and *decided to invest in it* – to "go full tilt on Lighthouse-KPL master plan" – because their only concern was whether it would make *them* rich in the short term.

Respectfully,

**HAYES & SCHANZER LLP**

By: *Andrew W. Hayes*
Andrew W. Hayes, Esq.
43 West 43rd St., Suite 195
New York, NY 10036-7424
(917) 770-0180
ahayes@hayesschanzer.com
*Attorneys for Plaintiffs*

cc: All counsel of record (via ECF)