Allen Matkins

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law
One America Plaza
600 West Broadway, 27th Floor | San Diego, CA 92101-0903
Telephone: 619.233.1155 | Facsimile: 619.233.1158
www.allenmatkins.com

**Edward G. Fates**
E-mail: tfates@allenmatkins.com
Direct Dial: 619.235.1527 File Number: 398050.00002/4896-8070-0876.7

**<u>Via ECF</u>**

October 6, 2026

Honorable Joan M. Azrack, U.S.D.J.
United States District Court, Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

**Re: *SummitBridge Wealth Mgmt. LLC v. Lighthouse Estates LLC*, No. 2:26-cv-00141 (JMA)(ST) – Pre-motion Conference re Receiver's Motion to Terminate Receivership**

Dear Judge Azrack:

This firm represents Stephen J. Donell, the Court-appointed receiver (the "Receiver") in the above-referenced action. Pursuant to Your Honor's Individual Rules and Practices, the Receiver respectfully requests a pre-motion conference regarding the Receiver's anticipated motion to terminate the receivership, approve a wind-down and final accounting, allow the reasonable fees and expenses of the Receiver and his professionals, direct that those amounts be paid from available cash on hand and, to the extent necessary, by Plaintiffs, and discharge the Receiver upon completion of the wind-down.

## A. <u>Factual Background</u>

On July 8, 2026, the Court entered the Order Appointing Receiver [ECF No. 120] (the "Appointment Order"), appointing the Receiver over Lighthouse Estates LLC and the other entities and assets identified therein (collectively, the "Receivership Estate" or "Estate"). The Appointment Order contemplated that the Receiver would marshal, preserve, investigate, and, where appropriate, monetize the Estate's assets, including a substantial portfolio of real properties.

Following his appointment, the Receiver and his professionals promptly undertook efforts to identify and secure Estate assets and evaluate the financial condition of the entities subject to his administration under the Appointment Order (the "Receivership Entities"). The Receiver's efforts included (a) issuing demands to relevant parties for financial, property, and tenancy records relating to purported Estate assets, (b) notifying financial institutions of the pending receivership and demanding turnover of cash held by or for the benefit of the Receivership Entities, (c) analyzing property, lease, tenant, and bank account information in the Receiver's possession, and (d) contacting purported tenants and other third parties concerning rental income purportedly owed to the Estate.

The Receiver's investigation revealed circumstances materially inconsistent with his expectations at the time of his appointment. Plaintiffs' communications to the Receiver suggested a substantial multistate real-property portfolio and associated rental income, but the records Plaintiffs provided to the Receiver were materially incomplete and internally inconsistent. Among other things,

the tenant and lease information provided in Plaintiffs' records could be matched to only a handful of properties listed in Appendix A to the Appointment Order, making it difficult to determine which properties or rents actually belonged to the Estate and which purported tenants were actually associated with those properties. The Receiver's initial efforts to recover amounts held in Receivership Entity bank accounts likewise uncovered little available cash and virtually no rents coming in, and the Receiver's investigation revealed no dependable recurring rental income stream within his control sufficient to fund continued administration of the Estate.

The Receiver promptly advised Plaintiffs that the Estate faced a critical funding issue. Plaintiffs advised that they would soon provide significant additional funding to support efforts necessary to administer the Estate, but that financing did not materialize. The Receiver therefore endeavored to limit further expense to the Estate and, with Plaintiffs' knowledge and $10,000 in funding from them, focused his efforts on a targeted assessment of real property assets appearing most likely to generate funding through a sale or receivership financing. The Receiver's analysis ultimately demonstrated that none of the assessed properties could be utilized as a funding source sufficient to support continued administration of the Estate.

In the meantime, counsel for Plaintiffs has continued to pursue the recovery of purported rents from Estate properties from Defendants who may have received or diverted them. Those efforts, however, have yielded only $700, which was turned over to the Receiver.

The Receiver's turnover demands to financial institutions have yielded limited additional cash (approximately $45,000), but these non-recurring recoveries remain insufficient to satisfy the accrued expenses of the receivership or provide a sustainable source of funding for continued administration. Further efforts to verify ownership and value of potential Estate assets, trace and recover purported rental income (if any), resolve property-level issues, or pursue additional assets would involve substantial additional expense, with no identified source of funding for such work.

Moreover, the practical difficulties of the Receiver's administration have been compounded by the July 28, 2026 filing of an involuntary bankruptcy petition against Lighthouse Estates LLC in the United States Bankruptcy Court for the Western District of Kentucky. The Estate lacked funding to retain Kentucky counsel to represent the Receiver in the bankruptcy proceedings. A chapter 7 bankruptcy trustee has recently been appointed for Lighthouse Estates and the Receiver is in the process of turning documents over to the trustee.

In light of the above-described circumstances, the Receiver's continued administration is unlikely to produce a meaningful benefit to the Estate or its stakeholders and would instead generate additional obligations the Estate has no ability to satisfy.

**B. <u>Basis for Relief Requested</u>**

A federal court has discretion to terminate a receivership when it no longer serves its purpose. *See Baliga v. Link Motion Inc.*, 2022 WL 2531535, at *16-19 (S.D.N.Y. Mar. 9, 2022) (recommending dissolution of the receivership and discharge of the receiver once the basis for the receivership had ended), *report and recommendation adopted*, 2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022). It is a long-standing principle that termination is appropriate where limited estate resources make the receivership's objectives impracticable. *See Mun. Fin. Corp. v. Bankus Corp.*, 45

F.2d 902, 906 (S.D.N.Y. 1930) (terminating receiverships where the estates had limited liquid assets and the receiver lacked sufficient funds to undertake his duties).

Here, the Receiver's investigation has identified no recurring income, no identified property portfolio capable of funding the administration of the receivership, and no source of outside funding. Although the Receiver has recovered limited cash, such funds are insufficient both to satisfy accrued administrative expenses and to finance the additional work necessary to assess the Estate's remaining assets or preserve and monetize them to the extent they have value. The Estate therefore cannot support the continued work required to satisfy the Receiver's duties under the Appointment Order.

Termination of the receivership should occur through an orderly wind-down process that includes approval of a final accounting, fixing and payment of the Receiver's fees and expenses, disposition of any remaining receivership property, and discharge of the Receiver. *See Baliga*, 2022 WL 3699339, at *8 (adopting recommendation to discharge the receiver following a full and final accounting of the activities performed and the costs thereof). The Receiver accordingly intends to seek authorization to complete the limited administrative tasks necessary to wind down the Estate, obtain approval of a final accounting and allowance and payment of the reasonable fees and expenses of the Receiver and his professionals, and be discharged upon completion of the wind-down. If, however, the Court determines that continued administration of the receivership is appropriate and a qualified receiver acceptable to the Court is prepared to serve, the Receiver has no objection to an orderly substitution and will cooperate in facilitating the transition, including by turning over relevant documents and information and taking such other appropriate steps as the Court may direct. The Receiver also intends to seek payment from Plaintiffs to the extent that Estate cash is insufficient to satisfy his and his professionals' fees and expenses. *See* Appointment Order ¶ 6 ("In the event the assets of the Receivership Estate are insufficient to pay the approved fees and costs of the Receiver and his professionals, The Receiver may apply to the Court for the payment of such fees and costs by the Plaintiffs"). The Receiver therefore respectfully requests a pre-motion conference or, in the alternative, leave to file the anticipated motion on a briefing schedule set by the Court. The Court's consideration is appreciated, and the Court is welcome to contact the Receiver's counsel should it require any additional information.

Respectfully submitted,

Allen Matkins Leck Gamble
Mallory & Natsis LLP

*/s/ Edward G. Fates*
EDWARD G. FATES
*Counsel for Receiver, Stephen J. Donell*

cc: All counsel of record (via ECF)